## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  21-cv-_____

DOUGLAS COUNTY SCHOOL DISTRICT RE-1,
C.B., by and through his parent and next friend, E.B.,
A.R., by and through his parent and next friend, L.R.,
J.G., by and through his parent and next friend, K.G.,
B.A., by and through her parent and next friend, J.A.,
M.M., by and through her parent and next friend, K.M.,
D.B., by and through his parent and next friend, J.B.,
R.P., by and through her parent and next friend, B.H.,
D.W., by and through his parent and next friend, G.W.,
A.L., by and through his guardian and next friend, C.L.

**Plaintiffs**;

v.

DOUGLAS COUNTY HEALTH DEPARTMENT,
DOUGLAS COUNTY BOARD OF HEALTH

**Defendants**.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

Plaintiff Douglas County School District RE-1 (referred to herein as "DCSD" or the "School District"), along with Plaintiffs C.B., A.R., J.G., B.A., M.M., D.B., R.P., D.W., and A.L., by and through their parents and/or guardians and next friends, bring this action for declaratory and injunctive relief for violations of their civil rights under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

### INTRODUCTION

This lawsuit is about protecting children from a raging pandemic and providing students with disabilities equal access to their public education. For nearly two years, the world has been

battling the spread of a deadly disease caused by the novel coronavirus, known as COVID-19. Contracting this virus can cause serious health problems, even death. People with underlying health conditions face even greater risk of harm. To date, over 720,000 people in the United States have died from COVID-19. In Colorado, over 8,000 people have died, including over 300 people in Douglas County alone. The new Delta variant of the virus has proven to be more contagious than prior strains, increasing sharply the number of newly reported cases, hospitalizations, and deaths due to COVID across Colorado and the nation. In Douglas County, there is now an average of 103 cases per day, up 31% from the average only two weeks ago.[1]

Contrary to the belief of some, children are getting sick and dying from COVID, too. Data shows children are infected with the Delta variant at much higher rates than was true with previous virus strains, especially those who are unvaccinated, including those under age 12 who are not yet eligible to be vaccinated. According to the American Academy of Pediatrics, "the Delta variant has created a new and pressing risk to children and adolescents across this country."[2] September 2021 "was the country's worst month for new cases and deaths" among children.[3] In Colorado, children now account for over 18% of all COVID-19 cases.[4] Sadly, hundreds of children have died

---

[1]    NYTimes, Tracking Coronavirus in Douglas County, Colorado, available at: https://www.nytimes.com/interactive/2021/us/douglas-colorado-covid-cases.html (last visited Oct. 11, 2021).

[2]    American Academy of Pediatrics, Letter to FDA, Aug 5, 2021, available at: https://downloads.aap.org/DOFA/AAP%20Letter%20to%20FDA%20on%20Timeline%20for%20Authorization%20of%20COVID-19%20Vaccine%20for%20Children_08_05_21.pdf.

[3]        https://www.nbcnews.com/news/us-news/data-shows-more-children-are-getting-sick-dying-covid-n1281616.

[4] CDPHE, Colorado COVID-19 Data, https://covid19.colorado.gov/data (last visited Oct. 11, 2021). For the week ending October 7, children were 24.8% of reported weekly COVID-19 cases (children, under age 18, make up 22.2% of the US population). American Academy of Pediatrics, Children and COVID-19: State-Level Data Report, Oct. 11, 2021, available at: https://www.aap.org/en/pages/2019-novel-

from COVID and "and millions of children have been negatively impacted by missed schooling, social isolation, and in too many cases, the death of parents and other caregivers."[5] This summer, a perfectly healthy five-year-old boy died of a stroke in his parent's arms after contracting COVID days earlier.[6] This child was not a number, he was a vibrant kid who loved horses, dogs, and being outdoors, and who had his whole life ahead of him; his family is wrought with grief in the wake of his death.[7] Earlier this month, a 10-year-old girl with no previous health issues died of COVID within five days of contracting the disease, and her parents are still trying to process "their abrupt and profound loss."[8] No one is safe from this disease.

So, what can we do in the face of this deadly disease that has taken so many lives, forced the closing of our schools, and shattered our sense of safety? There are options. One option is getting one of the three FDA-approved COVID vaccines. But vaccines are not an option for everyone: the FDA has not approved COVID vaccines for people under 12; and some people, regardless of age, cannot medically tolerate vaccines; and others have concluded that vaccines are not for them (or their kids). Even then, vaccines are not foolproof, as many people have reported so-called "breakthrough" infections, where vaccinated people have contracted COVID.

This is where masks come in. According to the Centers for Disease Control and Prevention ("CDC"), wearing a face covering over your nose and mouth is an effective means of preventing

---

coronavirus-covid-19-infections/children-and-covid-19-state-level-data-report/.

[5]    American   Academy   of   Pediatrics,   Letter   to   FDA,   Aug   5,   2021,   available   at: https://downloads.aap.org/DOFA/AAP%20Letter%20to%20FDA%20on%20Timeline%20for%20Authori zation%20of%20COVID-19%20Vaccine%20for%20Children_08_05_21.pdf.

[6]     https://www.nbcnews.com/news/us-news/5-year-old-georgia-boy-dies-covid-cases-surge-nationwide-n1274671.

[7] *Id.*

[8] https://www.cnn.com/2021/10/04/us/va-child-death-covid-trnd/index.html.

the transmission of COVID.[9] As the CDC puts it, "when you wear a mask, you protect others as well as yourself. Masks work best when everyone wears one."[10] Indeed, the CDC, the American Academy of Pediatrics, and the Colorado Department of Public Health and Environment ("CDPHE") all recommend universal indoor masking, regardless of vaccination status, in school settings for students, staff, teachers, and visitors.[11] A recent study shows that the odds of having a COVID-19 outbreak are 3.5 times higher in schools without a mask requirement.[12]

DCSD's 2021-22 school year began on August 9. At that time, the Delta variant of COVID had proven to be very contagious and, as a result, consistent with CDC, CDPHE and Tri-County Health Department ("TCHD") guidance,[13] the School District recommended that all individuals, regardless of vaccination status, wear a mask in indoor public places, including teachers, staff, students, and visitors to schools. Even though masks were recommended to be worn, less than 25 percent of students in District schools wore masks in class at the time.

Shortly after the school year began, because of the Delta variant leading to a marked rise in case rates among children in TCHD's jurisdiction, TCHD issued a Public Health Order requiring all children aged 2 to 11, as well as staff working with such children, to wear a mask while in an indoor school setting. This Order, however, allowed counties to opt-out of the application and enforcement of the Order, and Douglas County did just that. The School District, however, in alignment with its policy providing that its management of communicable diseases be done in

---

[9] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html.

[10] *Id.*

[11] Factual Allegations, *infra*, ¶¶ 46-49 and citations therein. The Tri-County Health Department, discussed below, also has recommended universal indoor masking.

[12] *See* Decl. of Dr. Lindsey Fish, **Ex. 3** to Motion for Temp. Rest. Or. and Prel. Inj., ¶ 41, n.29.

[13] At this time, TCHD provided health services for the District.

accordance with CDPHE or TCHD guidelines, required masks to be worn by all students in preschool through sixth grade. TCHD's Public Health Order and the School District's mask requirement for children in preschool through sixth grade was effective beginning August 23, 2021.

On August 31, 2021, TCHD issued another Public Health Order rescinding its August 23 Order and directed that "[a]ll individuals 2 years of age and older must wear a Face Covering while in any indoor School Setting…."[14] This TCHD Public Health Order became effective on September 1, 2021 and was to remain in effect for Douglas County through December 31, 2021. This Order did not allow for counties to opt-out of its requirements.

With masks required for all students after September 1, DCSD schools reported that approximately 97 percent of DCSD students wore masks while indoors in class. This rate of mask wearing significantly helped the District mitigate against the spread of COVID and furthered its efforts to keep schools open for in-person learning. This was particularly important for students with disabilities, such as those with health conditions who are at risk of serious harm if they contract COVID, and those who receive special education services at school that cannot be adequately replicated remotely if a COVID outbreak forced the closure of their school.

On September 7, 2021, days after TCHD's universal mask requirement became effective and was implemented in DCSD schools, the Board of Douglas County Commissioners withdrew from the governance of TCHD and established its own single-county health agency. One week later, on September 14, 2021, the Board of County Commissioners passed another resolution

---

[14] https://www.tchd.org/DocumentCenter/View/9457.

establishing and appointing members to the new Douglas County Health Department Board of Health. The Board of Health has six members, including three regular members, two County Commissioners, and one interim alternate member. Only one of the members of this Board is a physician (a radiologist) and another is a registered nurse.[15] Under Colorado law, the DCHD Board of Health has the power and duty to select a public health director. C.R.S. § 25-1-508(5)(c)(1). This public health director "may be a physician, physician assistant, public health nurse, or other qualified public health professional." *Id*. To date, the DCHD Board of Health has not selected a public health director.[16] To continue to provide public health services, the Douglas County Board of Commissioners approved an intergovernmental agreement with TCHD on September 28, 2021 to provide such services. The recent actions taken by the Board of Douglas County Commissioners allow the newly formed DCHD Board of Health to issue public health orders applicable to Douglas County, but the public health services, including services to address disease control and prevention, are provided by TCHD.

On October 8, 2021, the DCHD Board of Health—the public officials entrusted with community health policy—issued an order that effectively nullifies the School District's mask requirement for its students. DCHD's October 8 Public Health Order ("DCHD PHO" or "DCHD Order") allows parents and legal guardians of underage students to exempt their children from the School District's universal mask requirement if they feel that a mask has "a negative impact on that individual's physical and/or mental health." Furthermore, the DCHD PHO hinders efforts to

---

[15]   https://www.douglas.co.us/douglas-county-commissioners-adopt-resolution-creating-and-appointing-five-to-a-board-of-health-for-douglas-countys-public-health-department/

[16]   https://coloradosun.com/2021/09/14/douglas-county-health-department-director/.

contain the spread of COVID in DCSD schools since the DCHD Order prohibits the quarantine of students "because of exposure to a known COVID-19 positive case unless the exposure is associated with a known Outbreak." In other words, someone can come to school, knowing they have been exposed to COVID, and efforts to quarantine the student cannot be implemented even if the student is exempted from wearing a mask as allowed by the DCHD PHO.

To justify this Order, DCHD suggests that masks are causing a mental health crisis among youth, citing to a declaration by Children's Hospital of Colorado of "a state of emergency for youth mental health with suicide becoming the leading cause of child death in the state . . . ." This central premise is demonstrably false. Indeed, Children's Hospital itself has controverted this statement, explaining that "[t]here are no valid reports or scientific studies linking masks to mental health problems in children or any other group."[17] An administrator with the Hospital echoed this point during the public hearing on the Order, stating that Children's Hospital "wants to make it very clear that there are no valid reports or scientific studies linking masks to mental health problems in children or any other group."[18]

The DCHD PHO went into effect on Saturday, October 9, 2021. Since then, over the course of five school days, the rate of mask-wearing dropped from 97% to 83%, and over 4,500 students and over 500 staff were exempted from wearing a mask. The School District fears that it will not be long before the rate of mask wearing in DCSD schools will reach the extremely low levels the

---

[17] Children's Hospital Colorado, Masks for Kids: What You Need to Know About Face Coverings, Aug. 16, 2021, available at: https://www.childrenscolorado.org/conditions-and-advice/parenting/parenting-articles/masks-for-kids/

[18] Recording available at https://douglascounty.granicus.com/MediaPlayer.php?view_id=5&clip_id=730 (48:53 – 52:00) (emphasis added).

School District experienced at the beginning of the school year. This is alarming, especially when the DCHD PHO prohibits certain quarantining efforts that work to mitigate the spread of COVID.

The DCHD PHO is doing more than putting kids at risk of harm: it is also violating the civil rights of students with disabilities. The ADA and Section 504 prohibit discrimination based on a disability. Both statutes require that public entities or those receiving federal funds, like the School District, provide students with disabilities equal access to their programs and services. Under these laws, schools build ramps to accommodate students with physical limitations, scrub cafeteria kitchens of peanuts to accommodate children with peanut allergies, and give students with learning disabilities extra time on assignments and tests. Along these lines, protocols requiring universal masking and quarantining of students consistent with CDPHE and TCHD guidance are reasonable accommodations enabling disabled students with underlying health conditions to access their public education equally to their non-disabled peers.

The individual Plaintiffs are students with disabilities within the meaning of the ADA and Section 504 who have underlying health conditions that put them at greater risk of contracting COVID-19, such as intellectual, physical, and developmental disabilities, or a greater risk of severe illness and possibly death if they contract COVID-19, like asthma, cystic fibrosis, epilepsy, diabetes, and Down Syndrome. Universal masking and targeted quarantining of individuals exposed to COVID-19 are reasonable and necessary accommodations to enable these students to access their public education equally to their non-disabled peers. Because the DCHD PHO allows individuals to be easily exempted from the School District's mask requirement and effectively minimizes the ability to effectively quarantine students to mitigate against the spread of COVID-19, Defendants are illegally preventing the School District from complying with the ADA and

Section 504. Even worse, they are illegally forcing the parents of these students to choose between their child's education and their health and safety. No child or parent should face that dilemma.

The School District and the individually named Plaintiffs seek immediate and permanent relief against this illegal DCHD PHO and with it the ability to require universal masking in schools and to implement quarantines consistent with CDPHE and TCHD guidance. The health, lives, and civil rights of our students demand nothing less.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. 2201(a)-2202, the Americans with Disabilities Act, (ADA), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

2.      Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b) because all events giving rise to the claims in this matter occurred and continue to occur in this district.

## PARTIES

3.      Plaintiff Douglas County School District RE-1 ("DCSD" or the "School District") is a school district authorized by Article IX, Section 15 of the Colorado Constitution. DCSD's administrative offices are located in Douglas County, Colorado. The School District is a body corporate with the capacity to sue or be sued under C.R.S. § 22-32-101.

4.      Plaintiff C.B., by and through his parent and next friend, E.B., brings this action on behalf of himself. C.B. lives and attends school in the School District and is a student with a disability within the meaning of the ADA and Section 504.

5.      Plaintiff A.R., by and through his parent and next friend, L.R., brings this action on behalf of himself. A.R. lives and attends school in the School District and is a student with a disability within the meaning of the ADA and Section 504.

6.      Plaintiff J.G., by and through his parent and next friend, K.G., brings this action on behalf of himself. J.G. lives and attends school in the School District and is a student with a disability within the meaning of the ADA and Section 504.

7.      Plaintiff B.A., by and through her parent and next friend, J.A., brings this action on behalf of herself. B.A. lives and attends school in the School District and is a student with a disability within the meaning of the ADA and Section 504.

8.      Plaintiff M.M., by and through her parent and next friend, K.M., brings this action on behalf of herself. M.M. lives and attends school in the School District and is a student with a disability within the meaning of the ADA and Section 504.

9.      Plaintiff D.B., by and through his parent and next friend, J.B., brings this action on behalf of himself. D.B. lives and attends school in the School District and is a student with a disability within the meaning of the ADA and Section 504.

10.     Plaintiff R.P., by and through her parent and next friend, B.H., brings this action on behalf of herself. R.P. lives and attends school in the School District and is a student with a disability within the meaning of the ADA and Section 504.

11.     Plaintiff D.W., by and through his parent and next friend, G.W., brings this action on behalf of himself. D.W. lives and attends school in the School District and is a student with a disability within the meaning of the ADA and Section 504.

12.     Plaintiff A.L., by and through his guardian and next friend, C.L., brings this action on behalf of himself. A.L. lives and attends school in the School District and is a student with a disability within the meaning of the ADA and Section 504.

13.     Defendant Douglas County Health Department is a county public health agency created pursuant to Colorado law with jurisdiction over Douglas County, Colorado, and with its powers and duties defined by statute. C.R.S. § 25-1-506.

14.     Defendant Douglas County Board of Health is the county board of health for the Douglas County Health Department created pursuant to Colorado law and with its powers and duties defined by statute. C.R.S § 25-1-508.

## FACTUAL ALLEGATIONS

### COVID-19 is a Highly Contagious Disease

15.     An exhaustive body of evidence shows that COVID-19 is a highly communicable virus that spreads when an infected person breathes out droplets and very small particles that contain the virus and another individual breathes in the droplets or particles, or the droplets or particles land on the individual's eyes, nose, or mouth.[19]

16.     Individuals infected with COVID-19 who either do not exhibit symptoms ("asymptomatic") or have not yet exhibited symptoms ("pre-symptomatic") may be unaware that they are spreading COVID-19 because, for example, they feel perfectly fine.  Individuals who are asymptomatic and pre-symptomatic are estimated to account for more than 50% of transmissions.[20]

---

[19]     CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html.

[20] CDC, Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available

17.     Since the inception of the COVID-19 pandemic, more than 688,465 positive cases of COVID-19 in Colorado have been recorded, more than 39,450 Coloradans have been hospitalized, and more than 7,996 have died.[21] At least 1 in 9 Douglas County residents have been infected, a total of 38,196 reported cases, and at least 349 individuals have died.[22] Cases peaked in Colorado in December 2020.

18.     The number of deaths, hospitalizations, and infections began declining in early-to-mid 2021, reaching a low in July 2021, once vaccines became available. The medical landscape, however, drastically changed with the arrival of the highly contagious and virulent Delta variant of COVID-19.[23]

19.     The number of newly reported cases, hospitalizations, and deaths from COVID-19 have all increased sharply across Colorado, including in Douglas County. There, an average of 103 cases per day were reported, a 31% increase from the average only two weeks ago.[24] And the test positivity rate in Douglas County is high, suggesting that cases may be undercounted.[25]

---

[21] CDPHE, Colorado COVID-19 Data, https://covid19.colorado.gov/data (last visited Oct. 11, 2021).

[22] *Id.*

[23] CDPHE, Colorado COVID-19 Incidence, Oct. 8, 2021, available at: https://cdphe-data.shinyapps.io/twoweek_incidence/; CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

[24] NYTimes, Tracking Coronavirus in Douglas County, Colorado, available at: https://www.nytimes.com/interactive/2021/us/douglas-colorado-covid-cases.html (last visited Oct. 11, 2021).

[25] *Id.*

at                https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars cov2.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fmore%2Fmasking-science-sars-cov2.html (last visited Oct 10, 2021).

20.    The newest data on the Delta variant is particularly troubling for students and school districts. For example, data shows children are infected with the Delta variant at much higher rates than was true with previous virus strains, especially those who are unvaccinated (including those under 12 years old who are not yet eligible to receive a vaccine).[26] According to the American Academy of Pediatrics, "the Delta variant has created a new and pressing risk to children and adolescents across this country."[27]

21.    The view close to home is particularly disturbing. Children are now accounting for over 18% of all COVID-19 cases in Colorado.[28] As the American Academy of Pediatrics explained in a letter to the Food and Drug Administration on August 5, 2021, "[t]he higher proportion of cases in this population means this age group could be contributing in driving continued spread of COVID-19. Sadly, over 350 children have died of COVID-19 since the start of [the] pandemic and

---

[26]    CDC, Morbidity and Mortality Weekly Report Sept. 10, 2021, available at https://www.cdc.gov/mmwr/volumes/70/wr/mm7036e1.htm?s_cid=mm7036e1_w. Nationally, as of September 30, 2021, children represented 16.2% of all COVID-19 infections. American Academy of Pediatrics and the Children's Hospital Association, Children and COVID-19: State Data Report, Sept 30, 2021, available at https://downloads.aap.org/AAP/PDF/AAP%20and%20CHA%20-%20Children%20and%20COVID-19%20State%20Data%20Report%209.30%20FINAL.pdf. In Colorado, as of September 30, 2021, children represented 18.1% of all COVID-19 infections. https://downloads.aap.org/AAP/PDF/AAP%20and%20CHA%20-%20Children%20and%20COVID-19%20State%20Data%20Report%209.30%20FINAL.pdf.

[27]    American Academy of Pediatrics, Letter to FDA, Aug 5, 2021, available at: https://downloads.aap.org/DOFA/AAP%20Letter%20to%20FDA%20on%20Timeline%20for%20Authorization%20of%20COVID-19%20Vaccine%20for%20Children_08_05_21.pdf.

[28]    CDPHE, Colorado COVID-19 Data, https://covid19.colorado.gov/data (last visited Oct. 11, 2021). For the week ending October 7, children were 24.8% of reported weekly COVID-19 cases (children, under age 18, make up 22.2% of the US population). American Academy of Pediatrics, Children and COVID-19: State-Level Data Report, Oct. 11, 2021, available at: https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/children-and-covid-19-state-level-data-report/.

millions of children have been negatively impacted by missed schooling, social isolation, and in too many cases, the death of parents and other caregivers."[29]

22.     The increase in COVID-19 rates among children has also coincided with the start of school. As of September 30, pediatric cases represented over 16% of the total U.S. cases, with nearly 5.9 million children testing positive since the pandemic began.[30] Nearly 850,000 pediatric cases were added in the month of September, with over 173,000 added in the final week.[31] Unfathomably, 171 children died between the American Academy of Pediatrics reports of August 5 and October 7, 2021, bringing the total number of COVID-19 deaths of children to 542.[32]

### Individuals with Underlying Health Conditions Face Greater Risk of Severe Illness from COVID-19

23.     Individuals infected with COVID-19 may experience a range of symptoms, including but not limited to: fever or chills; cough; shortness of breath or difficulty breathing; fatigue; muscle or body aches; headache; new loss of taste or smell; sore throat; congestion or runny nose; nausea or vomiting; and diarrhea.

---

[29] American Academy of Pediatrics, Letter to FDA, Aug 5, 2021, available at: https://downloads.aap.org/DOFA/AAP%20Letter%20to%20FDA%20on%20Timeline%20for%20Authorization%20of%20COVID-19%20Vaccine%20for%20Children_08_05_21.pdf.

[30] American Academy of Pediatrics, *Children and COVID-19: State-Level Data Report*, (Oct. 4, 2021), available at: https://www.aap.org/en/pages/2019-novelcoronavirus-covid-19-infections/children-and-covid-19-state-level-data-report/.

[31] *Id.*

[32] Children and COVID-19: State Data Report at App'x Tab. 2C, Children's Hosp. Ass'n & Am. Acad. Pediatrics (Sept. 30, 2021), https://downloads.aap.org/AAP/PDF/AAP%20and%20CHA%20-%20Children%20and%20COVID19%20State%20Data%20Report%209.30%20FINAL.pdf.

24.     COVID-19 does not affect all groups equally. Some specific groups of individuals—including individuals with certain disabilities, particularly underlying medical conditions—are at an increased risk for severe illness.[33]

25.     "Severe illness" means that an individual with COVID-19 may require "hospitalization, intensive care, a ventilator to help them breathe or they may even die."[34] Nationally, as of October 8, 2021, 12% of all deaths over the past two years involved COVID-19—i.e., 703,699 of 5,822,909. In Colorado, as of October 8, 2021, nearly 10% of all deaths over the past two years involved COVID-19—i.e., 7,996 of 81,258.[35]

26.     The following medical conditions indicate an individual is at risk of severe illness from COVID-19: cancer; chronic kidney disease; chronic lung diseases, including asthma; dementia or neurological conditions; diabetes (type 1 and type 2); Down Syndrome; heart conditions; HIV infection; immunocompromised state; liver disease; obesity; sick cell disease or thalassemia; individuals who have had an organ or blood stem cell transplant; stroke or cerebrovascular disease.[36]

27.     Individuals with limited mobility, trouble understanding information, trouble practicing preventative measures, and a limited ability to communicate are also more likely to

---

[33] CDC, Specific Groups of People, Apr. 20, 2021; CDC, Medical Conditions, Aug. 20, 2021, available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[34] *Id.*

[35] CDC, Provisional Death Counts for [COVID-19], Oct 8, 2021, available at: https://www.cdc.gov/nchs/nvss/vsrr/COVID19/index.htm.

[36] CDC, Medical Conditions, Aug. 20, 2021, available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

become infected with COVID-19 or have unrecognized illness.[37] A recent study showed that children with Down Syndrome who contract COVID-19 are four times more likely to be hospitalized and ten times more likely to die than the general population.[38]

28.     According to Dr. David Beuther, M.D., Ph.D., F.C.C.P., a practicing adult pulmonary and critical care physician and Chief Medical Information Officer at National Jewish Health in Denver, Colorado, and Associate Professor at the University of Colorado, people with cancer, cystic fibrosis and chronic lung disease, asthma, diabetes (Type-1 or Type-2), heart disease, primary immune-deficiency disorders, developmental, physical, or intellectual disabilities, seizure disorders like epilepsy (with inflammation basis of seizures), obesity, and those taking immunosuppressive drugs are at greater risk of contracting and/or experiencing severe illness or even death if they contract COVID-19.[39]

29.     While adults are often more affected by COVID-19 compared to children, children with disabilities, like adults with disabilities, are at an increased risk of severe illness compared to those without disabilities. According to the CDC, "[c]urrent evidence suggests that children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[40] And as with adults who face

---

[37]     CDC,     People     with     Disabilities,     June     21,     2021,     available     at: https://www.cdc.gov/ncbddd/humandevelopment/covid-19/people-with-disabilities.html.

[38] https://www.yalemedicine.org/news/down-syndrome-covid-19.

[39] Decl. of Dr. David Beuther, Ex. 2 to Motion for TRO and Prel. Inj., at 9-11.

[40] CDC, Medical Conditions, Aug. 20, 2021, *supra*.

increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[41]

### The District Serves Thousands of Students with Health Conditions Putting Them at Greater Risk of Contracting COVID-19 or Severe Illness If They Contract COVID-19

30.     Many School District students have health conditions that put them at greater risk of contracting COVID-19 or experiencing severe illness if they contract COVID-19.[42]

31.     Within DCSD, 5,490 students report having asthma.

32.     Over 160 DCSD students report having immunodeficiency disorders.

33.     Nearly 200 DCSD students report having Type-1 or Type-2 diabetes.

34.     Forty DCSD students report having a severe respiratory condition like cystic fibrosis, bronchomalacia, or tracheostomy.

35.     The School District also serves many students with developmental, physical, and intellectual disabilities, as well as those with heart conditions, seizure disorders, and other conditions that put students at greater risk of either contracting COVID-19 or experiencing severe illness if they contract COVID-19.

### The School District Also Serves Students Who Have Significant Needs Requiring More Intensive Services that Currently Cannot Be Replicated Remotely

36.     While the District was able to provide specialized instruction and related services for those students with significant needs remotely when the school district was serving all students remotely, effective remote programming requiring intensive services is no longer readily and

---

[41] *Id.*

[42] These students may or may not also be eligible for special education services under the IDEA based on whether they require specialized instruction given their disability.

currently available for students. Furthermore, effective remote educational programming is not as effective as in-person learning and many students with intensive and significant needs, such as students with intellectual disabilities, significant physical limitations, or behavioral challenges, have difficulty learning outside of the school setting without direct and continuous instruction from specially trained staff.[43] For those students, they cannot fully benefit from their education program through the remote instruction currently available in the District.[44]

37.     For example, there are over 700 students in DCSD receiving their instruction within the Significant Support Needs (SSN) classroom setting, designed for students with intellectual disabilities or multiple disabilities who require more intensive services throughout the day.

38.     Learning in-person is preferable to learning remotely for a variety of reasons, including the instructor's ability to read and interpret body language and other non-verbal cues associated with the learning process, fluid formative assessments related to progress monitoring, and critical interpersonal connections that facilitate learning.

### Masks and Targeted Quarantining Help Prevent the Spread of COVID-19 and Help Ensure Continued Access to In-person Learning

39.     The CDC, American Academy of Pediatrics, Colorado Department of Public Health and Environment ("CDPHE"), and Governor Jared Polis, among others, refer to in-person learning as a high priority for this 2021-22 school year.

40.     COVID-19 forced the School District to provide entirely remote instruction between March 16 and May 26, 2020 (2019-2020 school year) and November 30, 2020 and January 5, 2021 (2020-2021 school year). From January 5, 2021 through the remainder of the

---

[43] *See* Declarations of Sarah Cannon and Sid Rundle, Exs. to Mot. for Temp. Rest. Or. and Prel. Inj.
[44] *Id.*

2020-2021 school year, District elementary, middle, and high schools returned to a mixture of in-person and hybrid learning, where students were learning in-person and remotely 50 percent of the time.

41.     The Colorado Chapter of American Academy of Pediatrics made clear that "[t]he most important thing we can do for children's mental health and well-being is to keep them safely in their classrooms."[45] CDC, American Academy of Pediatrics, CDPHE, and TCHD, among others, have published guidance regarding returning safely to in-person learning.

42.     The Colorado Department of Education ("CDE") has explained that "[v]accines are our best defense against COVID-19" and help schools operate fully in-person.[46] However, children under the age of 12 are not yet eligible to be vaccinated. And, while children 12 and older can be vaccinated, many are not, and those who are vaccinated may still spread COVID-19, including to younger children and others who either cannot be or are not vaccinated.

43.     Thus, to mitigate the risk of COVID-19, experts recommend following "a multi-pronged, layered approach," which includes universal masking and appropriate quarantining, "mak[ing] in-person learning safe and possible."[47]

---

[45] Colorado Chapter of American Academy Pediatrics, Letter to Governor Polis, Aug. 10, 2021, available at: https://mcusercontent.com/35ee0fa27d80895fef237e0b2/files/87ce87ef-f2e4-21fb-c547-4139d5abe96d/UniversalMaskingLtr.pdf.

[46] CDE, Best Practice Recommendations, Sept. 14, 2021, available at: https://www.cde.state.co.us/schoolguidance21-22/bestpractices#encouragingvaccinations.

[47] American Academy of Pediatrics, COVID-19 Guidance for Safe Schools, July 18, 2021, available at: https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/ (explaining that combining "vaccination, universal mask use, ventilation, testing, quarantining, and cleaning and disinfecting . . . will make in-person learning safe and possible.").

44.     Indeed, CDC, American Academy of Pediatrics, CDPHE, and TCHD, among others, <u>all recommend (or require) universal indoor masking</u>, regardless of vaccination status, in school settings for students, staff, teachers, and visitors.

45.     The CDC has explained that "[m]asks are primarily intended to reduce the emission of virus-laden droplets . . . , *which is especially relevant for asymptomatic or presymptomatic infected wearers* who feel well and may be unaware of their infectiousness to others, and who are estimated to account for more than 50% of transmissions."[48] Children's Hospital Colorado also makes clear that "masks are a key step on the road to getting back to normal and providing kids the support systems they need to thrive mentally, emotionally and physically." Ultimately, "[w]hen teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves" and that "protection against exposure remains essential in school settings."[49]

46.     In fact, if universal masking is implemented, students can continue safely learning in-person—even if they have been exposed to COVID-19 at school. According to CDPHE, "[u]nvaccinated students can also avoid quarantine following a typical classroom exposure if both the infected individual and the exposed student were correctly wearing masks."[50] However, if

---

[48] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, Ctrs. for Disease Control & Prevention (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

[49] CDC, Guidance for COVID-19 Prevention in K-12 Schools, Aug. 5, 2021, available at: https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

[50] CDPHE, Practical Guide for Operationalizing CDC's School Guidance, Sept. 10, 2021, available at: https://covid19.colorado.gov/practical-guide-for-operationalizing-cdc-school-guidance. *See also* Tri-County Health Department, Rationale for Issuing a Public Health Order Requiring Masking in Schools and Child Care Facilities, https://www.tchd.org/DocumentCenter/View/9251/Public-Health-Order-rationale-for-face-coverings-in-school-and-child-care-settings?bidId= (last visited Oct. 12, 2021).

unvaccinated students are not wearing masks during an exposure to COVID-19, these students should quarantine.

47.     The CDC, CDPHE, and TCHD all recommend that unmasked students quarantine following close contact with an individual infected with COVID-19 to reduce transmission and increase school safety, and to avoid disruptions to in-person learning.[51] After all, quarantines "help protect the public by preventing exposure to people who are sick or have been exposed to people who are sick."[52] Quarantines also help prevent asymptomatic and pre-symptomatic individuals—who account for more than 50% of all transmission—from transmitting COVID-19.[53]

48.     Following "a multi-pronged, layered approach," which includes universal masking and appropriate quarantining, "make[s] in-person learning safe and possible."[54]

---

[51] *See* CDPHE, Practical Guide for Operationalizing CDC's School Guidance, Sept. 10, 2021, available at: https://covid19.colorado.gov/practical-guide-for-operationalizing-cdc-school-guidance ("CDPHE recommends quarantine for unvaccinated close contacts that were within six feet for 15 minutes or more of an infected individual if either the infected individual or the contact were unmasked during the exposure."); Tri-County Health Department, Parents of School-Aged Children, https://www.tchd.org/862/Parents-of-School-Aged-Children (explaining TCHD will follow CDPHE guidance for quarantines in schools) (last visited Oct. 13, 2021).

[52] CDPHE, Isolation and Quarantine, March 11, 2021, https://covid19.colorado.gov/isolation-and-quarantine.

[53] CDC, Science Brief: Options to Reduce Quarantine for Contacts of Persons with SARS-CoV-2 Infection Using Symptom Monitoring and Diagnostic Testing, Dec. 2, 202, available at: https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/scientific-brief-options-to-reduce-quarantine.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fmore%2Fscientific-brief-options-to-reduce-quarantine.html ("Quarantine helps prevent spread of disease that can occur before a person knows they have the virus.").

[54] American Academy of Pediatrics, COVID-19 Guidance for Safe Schools, July 18, 2021, available at: https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/.

**The School District's COVID-19 Protocols for the 2021-2022 School Year**

49.      The School District's policy for managing communicable diseases and long-term illnesses (Policy JLCC) should be in accordance with CDPHE or TCHD guidelines.[55]

50.      Classes began for the 2021-2022 school year on August 9, 2021.

51.      At that time, the School District recommended that all individuals, regardless of vaccination status, wear a mask in its indoor public places, including students, staff, and visitors to schools.

52.      On August 18, 2021, TCHD issued a new mask order requiring masks for anyone aged 2-11 years-old in any school setting.[56] The order went into effect on August 23. TCHD allowed counties to opt out of this order, which Douglas County did.

53.      DCSD, however, in alignment with its policy providing that its management of communicable diseases be implemented in accordance with CDPHE or TCHD guidelines, announced that it would require masks inside school buildings for all students under the age of 12, preschool through sixth grade.[57] Thus, starting August 23, 2021, when the TCHD Public Health Order ("TCHD PHO") took effect, the School District required masks for everyone from preschool to sixth grade consistent with the TCHD PHO and its Policy JLCC.

---

[55] https://www.dcsdk12.org/common/pages/DisplayFile.aspx?itemId=12496688.

[56] https://www.tchd.org/DocumentCenter/View/9241/MaskOrderSchools_081821_FINAL.

[57] https://coloradocommunitymedia.com/stories/douglas-county-schools-to-require-masks-for-students-in-preschool-through-sixth-grade,380767.

54.     On August 31, 2021, TCHD rescinded its August 18 order (effective August 23) and replaced it with a new PHO requiring masks in school settings for all people aged two years and older.[58] The order took effect on September 1, 2021 and did not allow opt-outs.

55.     Thus, starting September 1, 2021, the School District required masks for all students and staff, aged two years and older, regardless of vaccination status.[59]

56.     The School District collected data showing that the COVID-19 positivity rate decreased among DCSD students between September 8 and October 8, 2021.

57.     The School District maintained this multi-pronged, layered approach for masking, isolation, and quarantining, consistent with TCHD and CDPHE guidance, until the newly created Douglas County Board of Health issued its PHO on October 8, 2021.

### Douglas County and the Tri-County Health Department

58.     Colorado law requires each county by resolution of its board of county commissioners to establish and maintain a county health agency or to participate in a district public health agency. C.R.S. § 25-1-506(1).

58.     Colorado law also permits any two or more contiguous counties to establish and maintain a district public health agency. *Id.*

59.     TCHD is a public health agency with powers and duties established by Colorado law. TCHD, until recently, was the public health agency for Douglas County, Adams County, and Arapahoe County.

---

[58] https://www.tchd.org/DocumentCenter/View/9457.

[59] https://www.dcsdk12.org/about/leadership/superintendent/superintendent_messages/face_coverings_required_for_p-_k12.

60.     A county may withdraw from a public health agency if it meets certain statutory requirements. C.R.S. § 25-1-513(2).

61.     On September 7, 2021, Douglas County's Board of County Commissioners voted to part ways with TCHD adopting a resolution to withdraw from TCHD and to create its own public health department.

62.     On September 14, 2021, Douglas County's Board of County Commissioners passed a resolution establishing the Douglas County Health Department Board of Health.

63.     On September 28, 2021, Douglas County's Board of County Commissioners approved an intergovernmental agreement with TCHD to provide public health services to Douglas County, including services to address disease control and prevention.

64.     The Board of Health has six members, including three regular members, two County Commissioners, and one interim alternate member. Only one of the members of this Board is a physician (a radiologist) and another is a registered nurse.[60]

65.     The Douglas County Health Department does not currently have a Director.[61]

**Defendants Issue a Medically and Scientifically Baseless PHO Requiring Exemptions for Masks and Limiting Instances When People May Be Quarantined**

66.     On October 8, 2021, Douglas County's newly created health department issued an order entitled, "Public Health Order Allowing Exemptions from Facial Coverings and Preventing Quarantining of Asymptomatic Individuals," effective as of 12:01 a.m. on October 9, 2021, and

---

[60]     https://www.douglas.co.us/douglas-county-commissioners-adopt-resolution-creating-and-appointing-five-to-a-board-of-health-for-douglas-countys-public-health-department/.

[61] https://coloradosun.com/2021/09/14/douglas-county-health-department-director/.

contravening well-settled science and guidance regarding COVID-19 mitigation, including masking and quarantining.

67.    The DCHD PHO declares that students, teachers, and staff members are no longer required to wear masks if they simply exempt themselves by declaring that wearing a mask has a negative impact on their physical and/or mental health, even if the School District has a universal masking policy.[62] Specifically, despite national and state guidance urging universal masking in school settings and the rising cases of COVID-19 in Colorado and Douglas County, the DCHD PHO states that if a parent or legal guardian of an underage student feels that a face covering has "a negative impact on that individual's physical and/or mental health," they can give to school officials a "written declaration" of their desire for a mask exemption. Adults (those over 18) may exempt themselves without a written declaration.

68.    The DCHD cited Children's Hospital Colorado to suggest that masks adversely impact the mental health of children. However, Children's Hospital Colorado itself has controverted this statement, explaining that "[t]here are no valid reports or scientific studies linking masks to mental health problems in children or any other group."[63] In fact, Children's Hospital Colorado makes clear that "masks are a key step on the road to getting back to normal and providing kids the support systems they need to thrive mentally, emotionally and physically."[64]

---

[62] *See generally* Public Health Order Allowing Exemptions from Douglas, available at: https://www.douglas.co.us/documents/public-health-order-oct-9-2021.pdf/.

[63] Children's Hospital Colorado, Masks for Kids: What You Need to Know About Face Coverings, Aug. 16, 2021, available at: https://www.childrenscolorado.org/conditions-and-advice/parenting/parenting-articles/masks-for-kids/

[64] *Id.*

69.     In fact, during the public hearing on the Order, an administrator from Children's Hospital Colorado publicly commented that Children's Hospital "wants to make it very clear that there are no valid reports or scientific studies linking masks to mental health problems in children or any other group."[65]

70.     The DCHD also cites the American Academy of Pediatrics for the proposition that "cases per 100,000 between states with mask mandates, no mask mandates and prohibition on mask mandates are inconclusive." However, the American Academy of Pediatrics, including the Colorado Chapter, unequivocally recommends universal masking in school settings "because a significant portion of the student population is not yet eligible for vaccines, and masking is proven to reduce transmission of the virus and to protect those who are not vaccinated."[66]

71.     According to CDPHE, students in Colorado school districts that have not instituted mask mandates are infected with COVID-19 at higher rates than those in districts that have face-covering requirements.[67] "The lower rates of COVID-19 are associated with school districts that are requiring masks in schools," said Dr. Rachel Herlihy, the state epidemiologist, "again showing a clear impact that masks are having in decreasing transmission in our school settings."[68]

---

[65] Recording available at video (48:53 – 52:00) (emphasis added).

[66] American Academy of Pediatrics, AAP Updates Recommendations for Opening Schools in Fall 2021, July 19, 2021, available at: https://www.aap.org/en/news-room/news-releases/aap/2021/american-academy-of-pediatrics-updates-recommendations-for-opening-schools-in-fall-2021/ (emphasis added).

[67] Tabachnik, Sam, Denver Post, Colorado schools without mask mandates have higher COVID transmissions, state data shows, Sept. 23, 2021, available at: https://www.denverpost.com/2021/09/23/colorado-school-mask-mandates-covid-transmission/.

[68] Ingold, John, Colorado Sun, Colorado schools that require masks have lower coronavirus case rates, state says, Sept. 23, 2021, available at: https://coloradosun.com/2021/09/23/coronavirus-rates-school-mask-mandates/.

72.     The DCHD PHO also makes it impermissible in most cases to quarantine a child within Douglas County due to actual, suspected, or potential exposure related to COVID-19 if the individual is asymptomatic—even though the data shows that asymptomatic and pre-symptomatic individuals contribute to at least 50% of transmissions. While these individuals may feel healthy despite having COVID-19, those they subsequently infect—particularly those with underlying health conditions—are at a far greater risk of severe illness.

73.     The DCHD PHO does not meaningfully support the safety of children or adults, particularly those with disabilities. Yet, if the School District "violates" the public health order to protect our most vulnerable populations, it is subject to potential civil and criminal penalties provided in C.R.S. § 25-1-516 and C.R.S. § 18-1.3-501.

**Since the Public Health Order Went into Effect, Thousands of District Students and Hundreds of District Staff have been Exempted from Wearing Masks and the District has Lacked Authority to Request that Individuals Exposed to COVID-19 be Quarantined**

74.     The consequences of the DCHD PHO are already unfolding at the School District.

75.     Since the PHO went into effect on October 9, the parents of thousands of District students have exempted their children from wearing masks under the Order. As of the filing of this Complaint, over 4,500 students have been exempted from wearing masks.[69] This number does not include students at the School District's charter schools, which are also subject to the Order.

76.     Further, as of the filing of this Complaint, over 500 District staff members have exempted themselves from wearing masks.[70] This number does not include charter school staff.

---

[69] *See* Decl. of Corey Wise, Exhibit to Motion for Temp. Rest. Or. and Prel. Inj.

[70] *Id.*

**The DCHD PHO Illegally Prevents the School District from**
**Complying with its Legal Obligations under the ADA and Section 504**

77.     The ADA and Section 504 are federal statutes that prohibit discrimination based on a disability. Both statutes require that public entities or those receiving federal funds, like the School District, provide students with disabilities equal access to their programs and services.

78.     The School District has an affirmative obligation to comply with the ADA and Section 504, and it takes that responsibility extremely seriously.

79.     Failure to comply with these federal laws deprives individuals of their civil rights.

80.     By prohibiting the School District from requiring masks and asking that individuals exposed to COVID-19 not be quarantined unless the exposure is associated with a known outbreak, Defendants are illegally preventing the School District from complying with its obligations to provide students with disabilities equal access to public education as required under Section 504 and the ADA.

**The DCHD Public Health Order Deprives the Individual Plaintiffs of Equal Access**
**to Their Public Education in Violation of the ADA and Section 504**

**Plaintiff J.G.**

81.     J.G. is a nine-year-old student attending school in the School District.

82.     J.G. is not eligible for the COVID vaccine because he is under the age of 12.

83.     J.G. is a child with a disability within the meaning of the ADA and Section 504. He is diagnosed with cystic fibrosis, a progressive, genetic disease that causes persistent lung infections and limits the ability to breathe. Because he has cystic fibrosis, a serious disease that negatively impacts his lungs, J.G. is at greater risk serious health complications, even death, if he contracts COVID-19.

84.     J.G.'s parents moved to Douglas County specifically to be closer to Children's Hospital Colorado's South Campus in Highlands Ranch, Colorado. J.G. receives treatment at Children's Hospital for his cystic fibrosis.

85.     J.G. has a Section 504 Plan, an accommodation plan administered by his school, to provide him equal access to his education given his cystic fibrosis. Under this plan, J.G. receives pancreatic enzymes before each meal, is monitored to ensure that he eats regularly and has access to snacks, per medical advice, and always has quick access to the bathroom and nurse's office.

86.     J.G. benefits from and strongly prefers in-person instruction.

87.     With the DCHD PHO in effect, any staff member or student can be exempted from wearing a mask and the School District no longer can request that such staff members or students be quarantined consistent with CDPHE and TCHD guidance if they are exposed to COVID-19 outside of a known outbreak. J.G.'s parents face an unconscionable choice each day: send their son to school to receive the in-person education he needs, while putting him at risk of contracting a disease that could cause him serious physical harm, or keep him home and cause him to miss critical in-person instruction and social interaction.

88.     A requirement for universal masking and allowing implementation of quarantine protocols consistent with CDPHE and TCHD guidance are reasonable modifications and accommodations enabling children with disabilities like J.G. to access their public education safely and equally.

89.     As a student with a disability, J.G. requires universal masking and the expectation that quarantine protocols will be implemented consistent with CDPHE and TCHD guidance as a reasonable accommodation or modification for him to equally access his public education.

90.     The DCHD PHO needlessly and illegally prevents the Plaintiff School District from requiring universal masking and implementing quarantines consistent with CDPHE guidelines, thereby denying J.G., a child with a disability, the reasonable modifications and accommodations he needs to access his public education safely and equally.

**Plaintiff D.B.**

91.     D.B. is a five-year-old student attending school in the School District.

92.     D.B. is not eligible for the COVID-19 vaccine because he is under the age of 12.

93.     D.B. is a child with a disability within the meaning of the ADA and Section 504. D.B. has Down Syndrome, intellectual disabilities, speech delays, dysphagia, hypotonia, developmental delays, and impaired vision. Because of his Down Syndrome and intellectual disabilities, D.B. faces greater risk of infection and severe health complications if he contracts COVID-19. His pediatrician recommends that D.B. learn in-person where universal masking is implemented.

94.     D.B. receives special education and related services through an Individualized Education Program (IEP) in the SSN classroom setting, designed for students with intellectual disabilities and staffed with licensed professionals specially trained to educate and support children with significant needs. D.B. receives speech-language services, physical therapy, vision services, and specially designed academic instruction in the SSN setting.

95.     Given his disabilities, D.B. routinely pulls his mask down during the day, though his teachers diligently try to pull it back up and help him keep it on. As a result, he relies on others around him to wear masks to protect him from infection.

96.     With the DCHD PHO in effect, any staff member or student can be exempted from wearing a mask and the School District no longer can request that such staff members or students be quarantined consistent with CDPHE and TCHD guidance if they are exposed to COVID-19 outside a known outbreak. D.B.'s parents face an unconscionable choice each day: send their son to school to receive the in-person education he needs, while putting him at risk of contracting a disease that could cause him serious physical harm, or keep him home and cause him to miss critical in-person instruction and social interaction with his peers.

97.     A requirement for universal masking and allowing implementation of quarantine protocols consistent with CDPHE and TCHD guidance are reasonable modifications and accommodations enabling children with disabilities like D.B. to access their public education safely and equally.

98.     As a student with a disability, D.B. requires universal masking and the expectation that quarantine protocols will be implemented consistent with CDPHE and TCHD guidance as a reasonable accommodation or modification for him to equally access his public education.

99.     The DCHD PHO needlessly and illegally prevents the Plaintiff School District from requiring universal masking and implementing quarantines consistent with CDPHE's guidance, thereby denying D.B., a child with a disability, reasonable modifications and accommodations he needs to access his public education safely and equally.

### Plaintiff A.R.

100.    A.R. is a ten-year-old student attending school in the School District.

101.    A.R. is not eligible for the COVID-19 vaccine because he is under the age of 12.

102.    A.R. is a child with a disability within the meaning of the ADA and Section 504. A.R. has moderate-to-severe asthma, a condition causing airways to narrow and swell and may produce extra mucus, making breathing difficult, triggering coughing and wheezing.

103.    Because he has moderate-to-severe asthma, A.R. is more likely to develop serious health complications and be hospitalized if he contracts COVID-19.

104.    At the beginning of this school year, when the District did not require masks for all students and staff, most students in A.R.'s class did not wear masks. As a result, A.R.'s mother obtained for him an accommodation plan at school to provide him equal access to his education given his asthma, including an accommodation that he be seated away from other students and to "keep an eye out for mask-shaming" against A.R., who would be wearing a mask.

105.    Even with this accommodation, A.R. and his parents worried about him being in relatively close quarters (a classroom) with other students who are unmasked and potentially carrying and spreading the virus to other classmates.

106.    A.R. benefits from and strongly prefers in-person instruction. In-person instruction is currently available to A.R.'s non-disabled peers.

107.    When the District required that masks be worn by all students and staff, A.R.'s parents felt more comfortable sending him to school. But with the DCHD PHO in effect, and with it the ability of any staff member or student to be exempted from wearing a mask, and limiting the School District's ability to implement a quarantine consistent with CDPHE and TCHD guidance, A.R.'s parents have chosen to keep him home for his personal safety, causing him to miss critical in-person instruction and socialization available to his non-disabled peers.

108.    A requirement for universal masking and allowing implementation of quarantine protocols consistent with CDPHE and TCHD guidance are reasonable modifications and accommodations enabling children with disabilities like A.R. to access their public education safely and equally.

109.    As a student with a disability, A.R. requires universal masking and the expectation that quarantine protocols will be implemented consistent with CDPHE and TCHD guidance as a reasonable accommodation or modification for him to equally access his public education.

110.    The DCHD PHO needlessly and illegally prevents the Plaintiff School District from requiring universal masking and implementing quarantines consistent with CDPHE and TCHD guidance thereby denying A.R., a child with a disability, reasonable modifications and accommodations he needs to access his public education safely and equally.

**Plaintiff D.W.**

111.    Plaintiff D.W. is a seven-year-old student attending school in the School District.

112.    D.W. is ineligible to receive the COVID vaccine because he is under the age of 12.

113.    D.W. is a child with a disability within the meaning of the ADA and Section 504. D.W. has moderate-to-severe asthma, a condition causing airways to narrow and swell and that may produce extra mucus, making breathing difficult, triggering coughing and wheezing.

114.    D.W. has an Asthma Care Plan at school.

115.    Because he has moderate-to-severe asthma, D.W. is more likely to develop serious health complications and be hospitalized if he contracts COVID-19.

116.    Since the DCHD PHO went into effect, D.W.'s parents have kept him home from school for fear that he may contract COVID-19 from a peer or staff member at his school and develop serious health complications as a result.

117.    Protocols requiring universal masking and allowing implementation of quarantine protocols consistent with CDPHE and TCHD guidance are reasonable modifications and accommodations enabling children with disabilities like D.W. to access their public education safely and equally.

118.    As a student with a disability, D.W. requires universal masking and the expectation that quarantine protocols will be implemented consistent with CDPHE and TCHD guidance as a reasonable accommodation or modification for him to equally access his public education.

119.    The DCHD PHO needlessly and illegally prevents the Plaintiff School District from requiring universal masking and implementing quarantine protocols consistent with CDPHE and TCHD guidance, thereby denying D.W., a child with a disability, reasonable modifications and accommodations she needs to access her public education safely and equally.

**Plaintiff C.B.**

120.    C.B. is a 12-year-old student attending school in the School District.

121.    C.B. is a child with a disability within the meaning of the ADA and Section 504. C.B. has autism and an intellectual disability. A recent evaluation of his cognitive abilities concludes that he has an overall intelligence score of 30, putting him in the Very Low range (<0.1%). C.B. also has increased sensory sensitivities.

122.    C.B. receives special education and related services in the District's SSN classroom setting, meaning he receives his services in one location staffed by licensed professionals specially

trained to educate and support children with significant needs. C.B. receives speech-language services, occupational therapy, and academic instruction.

123.    C.B. is unable to tolerate wearing a mask due to increased sensory sensitivity.

124.    Children like C.B. with autism and an intellectual disability face increased risk of contracting, experiencing severe health complications, and dying if they contract COVID. Because he cannot tolerate wearing a mask, he relies on public health mitigation measures in the school environment to reduce the risk of exposure to and transmission of COVID-19.

125.    C.B. greatly benefits from and strongly prefers in-person instruction. His non-disabled peers currently benefit from in-person instruction.

126.    With the DCHD PHO in effect, any staff member or student can be exempted from wearing a mask and the School District no longer can request that such staff members or students be quarantined consistent with CDPHE and TCHD guidance if they are exposed to COVID-19 outside a known outbreak. Given this, C.B.'s parents face an unconscionable choice each day: send their son to school to receive the in-person education he needs, and put him at risk of contracting a disease that could cause him serious physical harm, or keep him home and cause him to miss critical in-person instruction and social interaction.

127.    A requirement for universal masking and the expectation that quarantine protocols will be implemented consistent with CDPHE and TCHD guidance are reasonable modifications and accommodations enabling children with disabilities like C.B. to access their public education safely and equally.

128.    As a student with a disability, C.B. requires universal masking and the expectation that quarantine protocols will be implemented consistent with CDPHE and TCHD guidance as a

35

reasonable accommodation or modification for him to equally access his public education safely and equally.

129.    The DCHD PHO needlessly and illegally prevents the Plaintiff School District from requiring universal masking and implementing quarantine protocols consistent with CDPHE and TCHD guidance, thereby denying C.B., a child with a disability, reasonable modifications and accommodations he needs to access his public education safely and equally.

### Plaintiff B.A.

130.    Plaintiff B.A. is a nine-year-old student attending a performing-arts school in the School District.

131.    B.A. is not eligible for the COVID vaccine because she is under the age of 12.

132.    B.A. is a child with a disability within the meaning of the ADA and Section 504. B.A. has epilepsy, a neurological disorder that causes seizures. B.A. has a Seizure Action Plan at school and takes medication to treat the symptoms of her seizures. She also has Mitral Valve Prolapse, a heart condition. Further, B.A. has attention deficit hyperactivity disorder (ADHD) and receives special education and related services through an IEP. B.A. receives occupational therapy, speech-language therapy, and academic instruction from specially trained teachers and providers at school.

133.    Given her epilepsy and heart condition, B.A. is at greater risk of serious health complications if she contracts COVID. Her pediatric neurologist at Children's Hospital Colorado has repeatedly and strongly advised the family to avoid B.A. contracting COVID.

134.    B.A. benefits from and strongly prefers in-person instruction to access her specialized services and to participate fully in the performing arts curriculum of her school, which

she greatly enjoys. B.A.'s doctors have advised B.A.'s parents to keep her in school to receive in-person learning so long as the school takes proper precautions against COVID-19.

135.    With the DCHD PHO in effect, B.A.'s parents are deeply concerned for B.A.'s safety at school yet do not want to pull her out of school and deprive her of the in-person instruction she benefits from and strongly prefers. They are also concerned that the DCHD Public Health Order, allowing opt-outs for masks and placing limits on quarantining, will greatly increase the risk of a COVID-19 outbreak at B.A.'s school, forcing the school to close and cause B.A. and her classmates to receive all instruction remotely.

136.    A requirement for universal masking and allowing implementation of quarantine protocols consistent with CDPHE and TCHD guidance are reasonable modifications and accommodations enabling children with disabilities like B.A. to access their public education safely and equally.

137.    As a student with a disability, B.A. requires universal masking and the expectation that quarantine protocols will be implemented consistent with CDPHE and TCHD guidance as a reasonable accommodation or modification for her to equally access her public education.

138.    The DCHD PHO needlessly and illegally prevents the Plaintiff School District from requiring universal masking and implementing quarantine protocols consistent with CDPHE and TCHD guidance, thereby denying B.A., a child with a disability, reasonable modifications and accommodations she needs to access her public education safely and equally.

**Plaintiff M.M.**

139.    M.M. is a 16-year-old student attending school in the School District.

140.     M.M. is a child with a disability under the ADA and Section 504. M.M. has a rare disease called Arthrogryposis Multiplex Congenita, a variety of conditions involving multiple joint contractures or stiffness and muscle weakness. She also has an intellectual disability.

141.     Because of her disabilities, M.M. has extremely limited range of movement and requires assistance from adults throughout the day to do basic tasks, including wearing a mask. She does not have working arms, and she is unable to cover her mouth if she coughs. Given her limited mobility, resulting in her inability to don and doff a mask, and her intellectual disability, she faces increased risk of exposure to COVID-19.

142.     M.M. receives special education and related services through an IEP in the District's SSN classroom setting. She receives such instruction at school from licensed educators and providers specially trained to support students like M.M. with significant disabilities. She needs in-person instruction to benefit from her public education. Remote learning is not a meaningful or reasonable option for M.M. given the intensity and complexity of her needs.

143.     A requirement for universal masking and allowing implementation of quarantine protocols consistent with CDPHE and TCHD guidance are reasonable modifications and accommodations enabling children with disabilities like M.M. to access public education safely and equally.

144.     As a student with a disability, M.M. requires universal masking and the expectation that quarantine protocols will be implemented consistent with CDPHE and TCHD guidance as a reasonable accommodation or modification for her to equally access her public education.

145.     The DCHD PHO needlessly and illegally prevents the Plaintiff School District from requiring universal masking and implementing quarantine protocols consistent with CDPHE and

TCHD guidance, thereby denying M.M., a child with a disability, reasonable modifications and accommodations she needs to access her public education safely and equally.

### Plaintiff R.P.

146.    Plaintiff R.P. is a fifth-grade student attending school in the School District.

147.    R.P. is not eligible for the COVID vaccine because she is under the age of 12.

148.    R.P. is a child with a disability within the meaning of the ADA and Section 504. She has Type-1 Diabetes, which occurs when the body's immune system attacks insulin producing cells and stops producing insulin. R.P. requires insulin administration to control her blood sugar, and she requires monthly check-ups at a metro-area health center to treat and control her diabetes. She also is diagnosed with attention deficit disorder (ADD).

149.    R.P. also receives special education and related services under an IEP, including mental health, speech-language, and academic instruction from licensed professionals at school.

150.    People like R.P. with Type-1 Diabetes are at greater risk of health complications if they contract COVID-19, including inflammation, internal swelling, and increased risk of ketoacidosis, a serious condition that could lead to diabetic coma.

151.    Given her learning needs associated with her disabilities, R.P. is behind grade levels in several subjects. She prefers and has made more progress at school with in-person learning. When District students were learning remotely last school year, R.P. regressed academically.

152.    At the beginning of this school year, R.P. reported to her parents that she was one of only three students in her 50-person class to wear a mask during the school day. Given R.P.'s Diabetes, R.P.'s parents worked with her teachers to have her sitting only by masked children.

153.    Before the DCHD PHO, when the District required that all students and staff wear masks, all students and staff in R.P.'s class wore masks, and her parents felt she was safer than she previously had been when the vast majority of students were not wearing masks.

154.    With the DCHD PHO in effect, any staff member or student can be exempted from wearing a mask, and the District lacks the no longer has the ability to request that such staff members or students be quarantined consistent with CDPHE and TCHD guidance R.P.'s parents face an unconscionable choice each day: send their daughter to school to receive the in-person education she so desperately needs, and put her at risk of contracting a disease that could cause her serious physical harm, or keep her home and cause her to further regress academically and possibly repeat fifth grade.

155.    A requirement for universal masking and allowing implementation of quarantine protocols consistent with CDPHE and TCHD guidance are reasonable modifications and accommodations enabling children with disabilities like R.P. to access their public education safely and equally.

156.    As a student with a disability, R.P. requires universal masking and the expectation that quarantine protocols will be implemented consistent with CDPHE and TCHD guidance as a reasonable accommodation or modification for her to equally access her public education.

157.    The DCHD PHO needlessly and illegally prevents the Plaintiff School District from requiring universal masking and implementing quarantine protocols consistent with CDPHE and TCHD guidance, thereby denying R.P., a child with a disability, reasonable modifications and accommodations she needs to access her public education safely and equally.

**Plaintiff A.L.**

158.     Plaintiff A.L. is an 18-year-old student living and attending school in the School District. C.L. is his legal guardian.

159.     A.L. is a child with a disability within the meaning of the ADA and Section 504. He has a rare genetic disorder called Partial Trisomy 1q, which has caused developmental and intellectual delays. He also has several respiratory disorders, including asthma, hypoxia, and apnea. His respiratory challenges are so severe that he requires supplemental oxygen to breathe. Further, he has vision and hearing impairments related to his partial trisomy.

160.     While A.L. is vaccinated for COVID-19, he is at risk of experiencing severe health complications if he contracts COVID-19 and has, in fact, contracted the flu several times even when he has been vaccinated against the flu, requiring hospitalization. Given his respiratory disorders, he is and has always been very susceptible to respiratory infection.

161.     A.L. receives special education and related service through an IEP in the District's SSN classroom setting. A.L. receives specialized academic instruction, audiology and deaf-and-hard-of-hearing services, occupational therapy, and speech-language services. Given his intellectual delays, A.L. will continue to receive special education services through a transition IEP until he reaches the age of 21.

162.     A.L. greatly benefits from in-person instruction, especially in the SSN setting. His parents kept him home, and had him learn remotely last school year given their concerns for his health if he contracted COVID-19. Unfortunately, A.L. was not successful learning remotely.

163.     A requirement for universal masking and allowing implementation of quarantine protocols consistent with CDPHE and TCHD guidance are reasonable modifications and

accommodations enabling children with disabilities like A.L. to access their public education safely and equally.

164.     As a student with a disability, A.L. requires universal masking and the expectation that quarantine protocols will be implemented consistent with CDPHE and TCHD guidance as a reasonable accommodation or modification for him to equally access his public education.

165.     The DCHD PHO needlessly and illegally prevents the Plaintiff School District from requiring universal masking and implementing quarantine protocols consistent with CDPHE and TCHD guidance, thereby denying A.L., a child with a disability, reasonable modifications and accommodations he needs to access his public education safely and equally.

## CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

<u>Claim 1</u>: Violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

166.     Plaintiffs repeat and reallege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

167.     The Defendants are public entities subject to Title II of the ADA.

168.     The Plaintiff School District is also a public entity subject to Title II of the ADA.

169.     The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(b)(1),(2).

170.     The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

171.    As a result of the Defendants' issuance and implementation of the DCHD Public Health Order, which has denied children with disabilities the protection they need to attend school in a safe environment, the Defendants have violated and are violating the provisions of and regulations of the ADA as follows:

a.    The Defendants are excluding and/or causing the Plaintiff School District to exclude the individual Plaintiffs, as well as other District students with disabilities, or deny them the benefit of their public education (42 U.S.C. § 12132; 28 C.F.R. § 35.130);

b.    The Defendants are failing and/or causing Plaintiff School District to fail to make the reasonable modification of requiring universal masking and adequate quarantine procedures in school in order to give students with disabilities equal access to their public education (28 C.F.R. § 35.13(b)(7));

c.    The Defendants are providing qualified individuals with disabilities "with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others" (28 C.F.R. § 35.130(b)(1)(iii);

d.    The Defendants are failing and/or causing Plaintiff School District to fail to make services, programs, and activities "readily accessible" to students with disabilities (28 C.F.R. § 35.150);

e.    The Defendants have issued and are implementing a policy, namely the Public Health Order, that (1) has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, and (2) has the effect of defeating or substantially impairing accomplishment of the objectives of the Plaintiff School

District's program with respect to individuals with disabilities (28 C.F.R. § 35.130(b)(3)(i),(ii));

  f.  The Defendants are failing to permit a public entity, namely the Plaintiff School District, to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities (28 C.F.R. § 35.130(d)).

172.  The Defendants do not have the authority to circumvent, or cause another public entity, namely the Plaintiff School District, to circumvent, the ADA and protections for students with disabilities through official action.

173.  Putting children with disabilities in physical danger, or excluding them from the public-school setting because of their disability, is exactly the type of discrimination and segregation that the ADA and its governing regulations aims to prevent and expressly prohibits.

**Claim 2**: **Violation of Section 504 of Rehabilitation Act of 1973, 29 U.S.C. § 794**

174.  Plaintiffs repeat and reallege the allegations in previous paragraphs of this Complaint as if fully set forth herein.

175.  Section 504 states that no person with a disability shall, on the basis of disability, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives federal financial assistance. *See* 29 U.S.C. § 794; 34 C.F.R. 104.4.

176.  The Plaintiff School District is a recipient of federal financial assistance.

177.  Defendants have jurisdiction to issue health orders over a geographic area that includes the School District.

178.    The individual Plaintiffs are children with disabilities as defined under Section 504, in that they have physical or mental impairments that significantly impact a major life activity. *See* 29 U.S.C. §§ 705(20), 794; 34 C.F.R. § 104.33(j).

179.    As a result of the implementation and enforcement of the Public Health Order, Defendants have violated, and/or are causing the Plaintiff School District to violate, Section 504 of the Rehabilitation Act and its implementing regulations as follows:

a.    Defendants are excluding and/or are causing Plaintiff School District to exclude individuals with disabilities, including but not limited to the individual Plaintiffs, from the participation in public education, as well as to afford or provide individuals with disabilities opportunity to benefit from public education equal to or as effective as non-disabled persons. 29 U.S.C. § 794(a); 34 C.F.R. §§ 104.4(a),(b)(1)(i)-(iv), (vi),(vii);

b.    Defendants are failing to permit a public entity, namely the Plaintiff School District, to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities (34 C.F.R. § 104.4(b)(2));

c.    Defendants have issued and are administering a policy, namely the Public Health Order, that has the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the Plaintiff School District's programs with respect to individuals with disabilities (34 C.F.R. § 104.4(b)(4));

d.    Defendants are causing the Plaintiff School District to fail to educate or provide for the education of qualified individuals with disabilities in its jurisdiction, including but not limited to the individual Plaintiffs, with persons who are not disabled the maximum extent appropriate to the needs of those disabled persons (34 C.F.R. § 104.34);

180.    Defendants lack authority to enforce or implement laws that violate Section 504.

181.    Putting children with disabilities in physical danger, or excluding them from the public-school setting because of their disability, is exactly the type of discrimination and segregation that Section 504 and its governing regulations aims to prevent and expressly prohibits.

### Claim 3: Declaratory Judgment (Preemption)

182.    Plaintiffs repeat and reallege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

183.    Federal law is the "supreme law of the land," and must prevail over any contrary provision of state law. U.S. Const., art. VI, cl. 2. Under the doctrine of preemption, a state law is preempted by federal law when it "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Pac. Gas & Elec. Co. v. State Ener. Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 204 (1983).

184.    The United States Congress enacted the ADA and Section 504 to afford qualified individuals with disabilities an equal opportunity to participate in or benefit from the aids, benefits, or services provided to others, namely their public education.

185.    The Defendants' Public Health Order stands in conflict to the federal anti-discrimination laws, namely the ADA and Section 504, because it excludes qualified individuals with disabilities from participating in, and denies them the benefits of, public school programs, services, and activities to which they are entitled.

186.    Because the state Public Health Order stands in conflict to federal anti-discrimination laws, namely the ADA and Section 504, the state Order is void and unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, the PLAINTIFFS respectfully request that the Court:

1.      Declare that the Public Health Order issued on October 8, 2021 (effective October 9, 2021) under the authorization and direction of the Douglas County Board of Health violates the Americans with Disabilities Act (ADA);

2.      Declare that the Public Health Order issued on October 8, 2021 (effective October 9, 2021) under the authorization and direction of the Douglas County Board of Health violates Section 504 of the Rehabilitation Act of 1973;

3.      Declare that the Public Health Order issued on October 8, 2021 (effective October 9, 2021) under the authorization and direction of the Douglas County Board of Health is preempted by the ADA and Section 504 and therefore is void and unenforceable;

4.      Issue a temporary restraining order enjoining Defendants from enforcing the Public Health Order issued on October 8, 2021 (effective October 9, 2021) under the authorization and direction of the Douglas County Board of Health because the Order violates and is preempted by the ADA and Section 504;

5.      Preliminarily and permanently enjoin Defendants from enforcing the Public Health Order issued on October 8, 2021 (effective October 9, 2021) under the authorization and direction of the Douglas County Board of Health because the Order violates and is preempted by the ADA and Section 504;

6.      Award Plaintiffs their reasonable attorneys' fees, costs, and expenses incurred in this matter pursuant to 42 U.S.C. § 1988; and

7.      Grant such other relief as may be just, equitable, and proper.

Respectfully submitted this 20th day of October 2021.

*s/Elliott V. Hood*
Elliott V. Hood, Esq.
John F. Peters, Esq.
CAPLAN AND EARNEST LLC
3107 Iris Avenue, Suite 100
Boulder, Colorado 80301
303-443-8010
ehood@celaw.com; jpeters@celaw.com
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on Wednesday, October 20, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I further certify that concurrently with this filing I am serving a copy of this Complaint, as well as any exhibits or related documents filed concurrently with the Complaint, on the Douglas County Attorney's Office (attorney@douglas.co.us) via email and process server.

*s/Shelley McKinstry*
Shelley McKinstry, Paralegal