## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02818

DOUGLAS COUNTY SCHOOL DISTRICT RE-1,
C.B., by and through his parent and next friend, E.B.,
A.R., by and through his parent and next friend, L.R.,
J.G., by and through his parent and next friend, K.G.,
B.A., by and through her parent and next friend, J.A.,
M.M., by and through her parent and next friend, K.M.,
D.B., by and through his parent and next friend, J.B.,
R.P., by and through her parent and next friend, B.H.,
D.W., by and through his parent and next friend, G.W.,
A.L., by and through his guardian and next friend, C.L.

**Plaintiffs**;

v.

DOUGLAS COUNTY HEALTH DEPARTMENT,
DOUGLAS COUNTY BOARD OF HEALTH

**Defendants**.

---

## DEFENDANTS' RESPONSE TO MOTION
## FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
## [DOC. 3]

---

Defendants, the Douglas County Health Department ("DCHD") and the Douglas County Board of Health ("DCBH") (collectively, "Douglas County"), submit the following Response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Plaintiffs' "Motion"). Plaintiff Douglas County School District is referred to herein as the "School District;" the individual plaintiffs are referred to as "Individual Plaintiffs;" together, they are referred to as "Plaintiffs."

1

## I.     INTRODUCTION

Plaintiffs ask this Court to make unprecedented and sweeping new law under the ADA, which if adopted by this Court could require indefinite masking of 64,000 healthy children (and more than 500 staff) in the School District without exemptions, thereby harming many children's physical and mental health. While Plaintiffs try to invoke fear by citing COVID-19 data regarding adults and older adults, and by describing the vulnerability of the Individual Plaintiffs, the actual data regarding children in Douglas County and COVID-19 belies their argument: Douglas County, home to approximately 90,210 children,[1] has suffered only *one* pediatric death related to COVID-19 during the entire two-year period since the start of the pandemic,[2] and only 60 total pediatric hospitalizations during the entire two-year period since the start of the pandemic.[3]

It is an unfortunate reality that children with conditions like cystic fibrosis or severe asthma are at a greater risk for severe outcomes from every airborne pathogen that attacks the respiratory system, whether that pathogen is SARS-CoV-2, influenza, or Respiratory Syncytial virus ("RSV"). Plaintiffs do not assert that COVID-19 results in worse outcomes for children with disabilities than influenza, RSV or other viruses. As such, there is no limiting principle to Plaintiffs' argument. If the mere fact that some children with disabilities are at a greater "risk" of severe outcomes from COVID-19 makes this Court rule that Defendants have run afoul of the ADA by allowing children and adults physical and mental health exemptions from the School District's mask mandate, then the logical result is that all school children and staff will

---

[1] https://www.census.gov/quickfacts/fact/table/douglascountycolorado/PST045219
[2] See attached **Exh. A**, pediatric deaths and hospitalization data from Tri-County Health Department website as of October 18, 2021.
[3] Id.

unnecessarily be in masks from this point forward, with no end. Plaintiff's requested remedy —
that all students and adults in schools wear masks in schools indefinitely because some of their
peers are at a greater risk for severe outcomes from an airborne pathogen — is not a reasonable
accommodation under the ADA.

Plaintiffs cannot prevail on their requested injunctive relief because they have not alleged
actual injury, rather they allege only fear of, or risk of, injury.  As opposed to a case-by-case
determination of reasonable accommodation under the ADA, here Plaintiffs ask the Court to
lump together certain special needs students, based not on actual injury they have suffered
because of discrimination with regard to their disabilities, but on a common fear among their
parents that they are at *risk* of suffering an injury if physical and mental health mask exemptions
for other special needs and general population students are permitted.  This legal argument, if
adopted by the Court, would be unprecedented.

Meanwhile, the arbitrariness of the rule Plaintiffs seek to create is also apparent as older
adults, who are significantly more at risk with respect to COVID-19, are allowed to choose
whether or not they will wear a mask in Douglas County, even in crowded indoor settings or
settings with extended periods of contact with others similar to schools, and even in the presence
of special needs children and adults. After school and on weekends, Douglas County students
who are masked while at school freely attend spend time in myriad indoor settings without
masks.

Universal masking in a school setting is not harmless. While stating there is no harm
associated with mandating masks for all school children, Plaintiffs implicitly acknowledge at
least some harm in their Complaint when they compare in person learning to virtual learning:

"Learning in-person is preferable to learning remotely for a variety of reasons, including the instructor's ability to read and interpret body language and other non-verbal cues associated with the learning process, fluid formative assessments related to progress monitoring, and critical interpersonal connections that facilitate learning."[4] That statement applies equally to children, speaking and interacting with their teachers and peers while wearing masks that shield those very same "non-verbal cues." It is not hard to admit that an elementary-aged child may have difficulty learning language/reading when her teachers and peers are masked, and then have added difficulty communicating with her teacher and peers when her voice is muffled behind her own mask. Indeed, during Defendants' public hearing on the Public Health Order, that very example was raised by a Douglas County speech pathologist in support of the PHO, as set forth below. Defendants will present evidence and testimony on serious physical and mental harms to children caused by mandated masks where exemptions were not available.

## II.   FACTUAL BACKGROUND

On July 16, 2020, Colorado Governor Jared Polis issued an executive order mandating mask-wearing for every Coloradan over the age of ten when out in public.[5] On May 14, 2021, the Governor ended the mask mandate in Colorado for adults and children. The Colorado Department of Public Health and Environment ("CDPHE") and the State of Colorado have not since mandated that adults or children wear masks in public places.  Consistent with the State of Colorado's rules, and most school districts in Colorado, the School District announced before the start of the 2021-2022 school year that children and teachers would be allowed to return to

---

[4] Doc. 1, ¶ 38; *see also* Doc. 3, Exh. 16, ¶ 4.
[5] Exec. Order No. D 2020 138 (July 16, 2020).

school without a mask requirement. It was a welcome return to some normalcy for many Douglas County students and teachers, after all of the difficulties students and teachers had faced in education for the prior 18 months.  The School District had acknowledged that schools were "safe" and not transmission points of COVID-19.[6]

The Tri-County Health Department ("TCHD"), however, which at that time served over Douglas County, Arapahoe County, and Adams County, Colorado, issued on August 18, 2021, effective August 23, 2021, its own Public Health Order requiring masks for school children 2-11 years of age, as well as teachers and staff in school.  The order effected only schools and childcare settings; whereas, adults and children in Tri-County's jurisdiction, outside of school, were (and still are) not subjected to mask mandates in most situations, including for example crowded restaurants, movie theaters, gyms, parties and work places. The August 18 TCHD school mask order permitted counties to opt out.  On August 19, 2021, Douglas County opted out of the Public Health Order.  On August 24, 2021, Adams County opted out of the Public Health Order.  On August 23, 2021, in response to Douglas County's opt out, the Douglas County School District issued its own school district-wide mask mandate for pre-school to sixth grade. On August 30, 2021, TCHD issued a second mask mandate for school children ages 2-18 and teachers and staff in school, which also applied to Douglas County School District.  The TCHD mask mandates for schools were issued on questionable medical and public health grounds, as Dr. John Douglas, TCHD's Executive Director admitted the following, which all point to no significant change in the danger to children relative to prior to the issuance of the mandate, during TCHD's August 30, 2021 meeting:

---

[6] See attached **Exh. B** and **Exh. C**, Letters from Corey Wise.

- "None of the studies have addressed Delta in kids."

- "These are cases, these are not severe illnesses…"

- "I think the major message here is that the biggest increases [in hospitalizations]…have been in the most vulnerable [ages 75+]"

- "Since the beginning of the pandemic, we've had 158 in the 0-11 group and 149 in the 12-17 group hospitalized…Over the entirety of the pandemic, there have been 6 pediatric deaths."

During the September 9, 2021 TCHD meeting, Dr. Douglas further admitted that:

- "We really don't yet see any evidence that the proportion of [pediatric] cases who are getting quite sick, hospitalized and even dying has gone up…"

- "Honestly, again, many of these kids aren't getting that sick…"

- "…let's be honest, those numbers [pediatric hospitalizations] are really tiny if you look at the larger spectrum…"

- "The board asked us last time to consider…you know…what's the end game here for mask mandates in particular…when might this end?  The answer tonight is we don't have an answer."

Douglas County and Adams County began taking steps to withdraw from TCHD, which left TCHD winding up its existence, leaving Arapahoe County to begin to form its own health department as well.  On September 7, 2021, Douglas County officially withdrew from TCHD and formed the Douglas County Health Department. On October 19, 2021, Adams County announced its intent to also withdraw from TCHD.

The Douglas County Health Department issued the Public Health Order in question on October 8, 2021 (the "PHO"), more consistent with the current state of public health orders for the State of Colorado (but differing from TCHD's August 2021 school mask mandates referenced above) allowing certain individuals in Douglas County to be exempt from

requirements to wear a face covering if impacting the individual's physical or mental health. Specifically, the PHO provides that school children in Douglas County under the age of 18 may be exempt from a face covering requirement "due to the negative impact on that individual's physical and/or mental health" with a "written declaration signed by the parent of guardian of the child."[7] As such, the PHO does not amount to an outright ban on the School District's ability to require masks; rather, it merely creates a health exemption to mask-wearing for children who experience negative mental and physical health impacts caused by masking at school, provided the child's parent or guardian signs a written declaration so stating. The DCHD's issuance of the PHO reflected the low health risks to school-age children of COVID, the increasing vaccination rates among children and teachers in Douglas County (per TCHD data, 67% of Douglas County kids ages 12-17 are vaccinated, similar to the rates for adults in Douglas County younger than age 60), and offered an exemption from mask wearing for those school children who may experience negative mental and physical health impacts.

Data from the Colorado Department of Public Health and Environment ("CDPHE") continues to indicate that school aged children are the least likely population to be harmed or hospitalized by COVID19. Children aged 0-19 cumulatively account for less than 20% of cases in Colorado, and roughly only 0.26% of deaths among COVID19 cases in the state.[8] Importantly, TCHD data showed no indication that schools were major transmission areas that lead to higher rates of hospitalizations in the community. TCHD's health data shows that hospitalization rates for children under age 18 have consistently remained around 0.5 incidences per 100,000

---

[7] Douglas County Health Department Public Health Order (Oct. 8, 2021).
[8] *See* Tri-County Health Department COVID-19 Pediatric Case Reporting, https://data.tchd.org/covid19/PedsData/

(.0005%) even with the Delta variant.[9] The data reflects a very low-risk of serious illness for school aged children, particularly in Douglas County where test positivity rates for children ages 0-17 have been decreasing since mid-September 2021.[10] As stated above, there has been only one pediatric COVID-19 death in Douglas county during the entire pandemic, and only 60 pediatric hospitalizations, in a county with over 90,000 children.

Even the data cited by Plaintiffs estimates cases are around 300 per 100,000 people per week in school districts that do not require masks, and around 250 per 100,000 in districts that require masks.  In a school with 1,000 students, that would mean the COVID-19 infection rate in a school with a mask mandate is 2.5 cases per week, and in a school without a mask mandate is 3.0 cases per week.  In other words, Plaintiffs imply that a special needs student in a school district with 2.5 cases per 1,000 is safe whereas a special needs student in a school district with 3.0 cases (one-half of one student less) per 1,000 is not safe.[11]

## III.    LEGAL STANDARDS FOR TEMPORARY RESTRAINING ORDERS

In considering a motion for temporary restraining order, courts apply the same factors as when deciding a motion for preliminary injunction.[12] A party requesting a preliminary injunction must establish that:

(1) there is a substantial likelihood of success on the merits;

(2) he or she will suffer irreparable injury unless the injunction issues;

---

[9] *See* Tri-County Health Department COVID-19 Case Reporting, https://data.tchd.org/covid19/.
[10] *See* Tri-County Health Department COVID-19 Pediatric Case Reporting, https://data.tchd.org/covid19/PedsData/.
[11] That is before accounting for the fact that, as Plaintiffs' acknowledge in their Complaint, mask wearing in the School District is still over 80%. Motion, p. 7.
[12] *Winnebago Tribe of Nebraska v. Stovall*, 205 F. Supp. 2d 1217, 1221 (D. Kan. 2002), *aff'd*, 341 F.3d 1202 (10th Cir. 2003).

(3) the threatened injury outweighs the damage the proposed injunction may cause the

opposing party; and

(4) the injunction, if issued, would not be adverse to the public interest.[13]

A preliminary injunction should not be granted unless plaintiff has met her burden to establish

each of these four factors.  In considering whether to grant the injunctive relief requested, "courts

must balance the competing claims of injury and must consider the effect on each party of the

granting or withholding of the requested relief."[14] For the reasons outlined below, the Plaintiffs

are not entitled to the injunctive relief sought in their Motion.

## IV.   ARGUMENT

The Plaintiff's motion for a temporary restraining order must be denied. First, the

Individual Plaintiffs seek relief under Title II of the ADA and Section 504 of the Rehabilitation

Act that is also available to them under the Individuals with Disabilities Education Act

("IDEA"),[15] without first exhausting the IDEA's administrative remedies as though their claims

had been brought thereunder. Second, the School District lacks standing to raise claims under

Title II of the ADA and Section 504 of the Rehabilitation Act. Finally, the Plaintiffs' claims

under the ADA and Section 504 otherwise must fail, because they are unlikely to succeed on the

merits of their claims, have not suffered irreparable harm, and their requested relief is not in the

public interest.

### A.  The Plaintiffs have failed to exhaust their administrative remedies under IDEA.

---

[13] *See e.g.*, *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).
[14] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quotation omitted).
[15]  20 U.S.C. §§ 1400, *et seq.*

Nowhere in their Complaint or Motion do the Plaintiffs mention the IDEA, or the fact that relief is available to them thereunder. The IDEA guarantees that children with disabilities receive a "free appropriate public education" or "FAPE" through the development, use, and implementation of "individualized education programs," or IEPs.[16] Before a disabled student may file a complaint under Title II of the ADA or Section 504 of the Rehabilitation Act, that student must first exhaust the administrative remedies that are available under the IDEA.[17] The IDEA establishes a "mandatory administrative framework for resolution of disputes over the education of children with disabilities."[18] Under the IDEA, if a complainant has concerns regarding "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child"[19] then the complainant is entitled to a hearing before the local or state educational agency, and may then appeal such findings to the state educational agency.[20] Plaintiffs who seek relief that is available under the IDEA, even if their claims are filed pursuant to other federal statutes, must first exhaust the administrative remedies that are available under the IDEA before filing a lawsuit in federal court.[21] In particular, "claims asserted under Section 504 and/or the ADA are subject to Section 1415(f)'s requirement that litigants exhaust the IDEA's administrative procedures to obtain relief that is available under the IDEA before bringing suit under Section 504 and/or the

---

[16] *A.P., IV by Porco v. Lewis Palmer Sch. Dist. No. 38*, 728 F. App'x 835, 838 (10th Cir. 2018).
[17] *Id.*
[18] *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1227 (10th Cir. 2015).
[19] 20 U.S.C. § 1415(b)(6)(A),
[20] *Id.* §§ 1415(f)(1)(A),  1415(g)(1).
[21] *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 753-55 (2017).

ADA."[22] If the complainant does not first exhaust these administrative remedies, then they are not entitled to seek relief under the ADA or the Rehabilitation Act.[23]

The relief that the Individual Plaintiffs seek is "available under" the IDEA, for the purposes of the exhaustion requirement. Their complaint alleges requirements of several of the Plaintiffs' IEPs,[24] and claims that the Defendants are denying the Individual Plaintiffs "the benefit of their public education" and "public school programs, services, and activities."[25] As such, the Plaintiffs' claims clearly fall within the IDEA's exhaustion requirement, irrespective of the fact that those claims were brought under the ADA and Section 504. In *Fry v. Napoleon Community Schools,* the Supreme Court stated:

> [The IDEA's] exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape §1415(l) merely by bringing her suit under a statute other than the IDEA—as when, for example, the plaintiffs … claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises.[26]

By claiming that the Defendants are excluding the Individual Plaintiffs from receiving a public education, and denying them the benefit of such an education, the Individual Plaintiffs are asserting relief that falls within the FAPE requirements of the IDEA.[27] Accordingly, because the Individual Plaintiffs do not allege in their Complaint or in their Motion that they have exhausted

---

[22] *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006).
[23] *Fry,* 137 S. Ct. at 754 ("[The] exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA.")
[24] Doc. 1 at ¶¶ 94, 132, 142, 149, 161.
[25] *Id*. at ¶ 171, 185.
[26] *Fry,* 137 S. Ct. at 754 (footnote omitted).
[27] *Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1190 (11th Cir. 2018) ("But if the complaint essentially alleges the denial of a FAPE, then the plaintiff must exhaust his administrative remedies" under IDEA.)

(or even sought) relief in accordance with the administrative remedies prescribed under the IDEA, then their claims under the ADA and Section 504 cannot support their request for injunctive relief and, moreover, must be dismissed.

### B.   The Douglas County School District lacks standing to bring discrimination claims under the ADA and Section 504.

A constitutional requirement under Article III, standing is "the threshold question in every federal case."[28]  To attain standing in federal court, Plaintiffs have to show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[29]  Unlike the Individual Plaintiffs that have alleged discrimination under the ADA, the School District has not suffered an injury-in-fact under the ADA. As discussed in Section IV.A, above, to state a claim for relief under the ADA, a plaintiff must demonstrate they (1) are a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) that such exclusion, denial of benefits, or discrimination was because of a disability. The School District is not a "qualified individual with a disability," and cannot allege any specific facts that would support a valid claim that it has suffered discrimination under the ADA. The claims brought by the School District are under the ADA, and as such, must fail for lack of standing.

### C.   The Plaintiffs are not entitled to injunctive relief.

#### 1.      The Plaintiffs have not demonstrated that they are substantially likely to succeed on the merits.

---

[28] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).
[29] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).

The Plaintiffs' claims arise under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. As the Plaintiffs have acknowledged, Section 504 and ADA claims are generally analyzed under the same standard.

Under Title II of Americans with Disabilities Act ("ADA"), "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[30] Section 504 of the Rehabilitation Act simply extends the ADA's prohibition against discrimination on the basis of disability to recipients of federal funds.[31] To state a claim under the ADA, a plaintiff must demonstrate they (1) are a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) that such exclusion, denial of benefits, or discrimination was because of a disability.[32] Under the ADA, public entitles are required to make "reasonable accommodations" for those with qualified disabilities, to ensure their ability to meaningfully access the benefits of a public entities' services.[33]

Here, Plaintiffs' motion fails to demonstrate that (i) that they were excluded from participation or denied any benefits, (ii) that any such alleged discrimination was *because of* Plaintiffs' disability, or (iii) that the accommodation they seek, universal masking of all students, is reasonable to accommodate their disabilities. Accordingly, Plaintiffs are unlikely to succeed on the merits of their claim.

---

[30] 42 U.S.C. § 12132.
[31] 29 U.S.C. § 794.
[32] *See id.*
[33] *St. Paul Sober Living, LLC v. Bd. of Cty. Comm'rs*, 896 F. Supp. 2d 982 (D. Colo. 2012) (citing *Thompson v. Colorado*, 278 F.3d 1020, 1029 (10th Cir. 2001).

i.      **The PHO does not discriminate against students with disabilities, nor does it deny the Individual Plaintiffs meaningful access to public education.**

The PHO does not prevent or exclude the Individual Plaintiffs from attending public school, and does not deny them the benefits of an education. Rather, the PHO merely offers an exemption for other individuals where their physical and mental health is negatively affected by the mask, and which allows those individuals the opportunity to attend school without a mask. The Individual Plaintiffs are also free to continue attending classes in person while protecting themselves with masks if they choose. The PHO also does not restrict the Individual Plaintiffs from attending school.  Even prior to COVID-19, Douglas County has had in place programs to accommodate special needs students who have too severe health risks to be among the general population of students, including the Homebound education program where they may engage in their education safely from their homes.

Any exclusion Plaintiffs in this case may experience is the result of Plaintiffs' choice and individual concerns rather than any actual injury caused by the PHO. Plaintiffs even acknowledge this choice, complaining that the PHO "forc[es] the parents of these students to choose between their child's education and their health and safety."[34] But that same choice existed before the pandemic and will continue to exist after the pandemic, and with the risk of other contagious diseases. The PHO allows Plaintiffs to make the choice to attend school, to wear a mask, or to exercise their own precautions without restricting their access to their education, while also acknowledging the fact that some students require an exemption from the

---

[34] Doc. 3, p. 4.

mask requirement in order to meaningfully access the same educational opportunities that the Individual Plaintiffs now demand.

As such, the PHO does not restrict Plaintiffs' "meaningful access" to school. Plaintiffs are not physically restricted from attending school, nor is their meaningful access to the educational opportunities presented by the Douglas County School District restricted on the basis of their disabilities. While Plaintiffs ask the Court to consider their fear of injury an actual injury, the PHO does nothing more than provide an option for certain students to attend school who experience physical or mental health harm by masks, including many other special needs children. As a result, the PHO cannot, *per se*, discriminate against Plaintiffs.

As such, the PHO does not exclude the Individual Plaintiffs from Douglas County schools or deprive them of education in any way; thus, the Defendants have not discriminated against the Plaintiffs because of their disabilities. The Plaintiffs have cited only their fears of injury, and not actual harm, and, as a result, have made the choice to exclude themselves.

### ii.     The PHO does not discriminate against the Individual Plaintiffs because of their disabilities.

Similarly, Plaintiffs' motion fails to allege that their alleged exclusion is *because of* their disabilities. (Plaintiffs have also failed to sufficiently define the disability which they claim requires the accommodation of universal masking with enough specificity such that a reasonable accommodation could be provided). Indeed, Plaintiffs concede that DCHD enacted the PHO in part to counter the mental health crisis among youth caused in part by masking.[35] Thus, because Plaintiff does not allege that DCHD was motivated by any animus towards Plaintiffs, and points

---

[35] Doc. 3, p. 16-17.

to no plausible evidence to support a finding otherwise, Plaintiffs have failed to satisfy the requisite causation to establish a *prima facie* case of discrimination based on their disabilities under the both the ADA and Section 504.

> ### iii.   The ADA requires that the Defendants make reasonable accommodations for the Individual Plaintiffs; however, universal masking is not a reasonable accommodation.

Under the ADA, if a qualified individual with a disability requests reasonable accommodations, the Defendants have an obligation to determine the best means of accommodating that disability. However, "[a]n institution is not duty bound to acquiesce in and implement every accommodation a disabled student demands."[36]  In particular, a student "is not entitled to his preferred accommodation," so long as the offered accommodation is reasonable.[37]

The Plaintiffs contend that, by prohibiting the School District from requiring masks for all students, the Defendants are violating the Individual Plaintiffs' civil rights in denying them the reasonable accommodations to which they are entitled under the ADA. However, the PHO does not deny reasonable accommodations for students with disabilities; to the contrary, the PHO specifically states that "[t]he requirements of this Order shall be applied in a manner consistent with the Americans with Disabilities Act (42 U.S.C. 12101 et seq), Title VII of the Americans with Disabilities Act (42 U.S.C. 2000e et seq.), the Colorado Anti-Discrimination Act (C.R.S. 24-34-401 et seq.), and any other applicable federal or State law." As such, the Defendants are

---

[36] *Campbell v. Lamar Inst. Of Tech.*, 842 F.3d 375, 381 (5th Cir. 2016).
[37] *Id.* at 382. *See also Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 151-52 (1st Cir. 1998) ("[E]ven assuming that [the student] has a disability within the meaning of the ADA, the alterations in the school's normal requirements and standards that were sought by the plaintiffs and imposed by the district court went far beyond the 'reasonable accommodations' required by statute.").

committed to ensuring that all students with disabilities have access to reasonable accommodations.

Denying health-based exemptions to the School District's mandate, as urged by the Plaintiffs, is not reasonable to ensure that the Individual Plaintiffs remain uninfected by COVID-19, and is thus not a reasonable accommodation. To the contrary, Defendants will present evidence that the institution of universal masking for all students while on school property, regardless of their physical and mental health needs, is arbitrary. The Plaintiffs' proposal for universal masking, and their claim that such an accommodation is necessary to preserve their civil rights, ignores the possibility that certain special needs students (including, as an example, those with autism and other illnesses that render children less likely to understand social cues without seeing facial expressions) are seeking exemptions themselves.  Many special needs students remain subject to mask mandates in other counties, and have been unable to obtain exemptions in order to attend class with no mask.  Those students could also invoke their right to reasonable accommodations under the ADA, contending that a universal mask requirements with no or restrictive exemptions (as the Plaintiffs contend is *required* under the ADA) violates *their* civil rights by precluding their attendance at public school. By requiring masks for all students, and allowing students to claim an exemption to that requirement upon fulfilling certain requirements, the Douglas County PHO makes reasonable accommodations to protect the Plaintiffs as well as other students who may have valid concerns about the ramifications of wearing masks throughout the school day for an extended period of time.[38]

---

[38] Plaintiffs may also argue that the end point is vaccination, but the School District's own mask mandate belies that argument. The School District's mask mandate requires masks for everyone over two years old, despite (i) the Pfizer vaccine being fully FDA approved for people aged sixteen or older, (ii) the Moderna and Janssen vaccines being approved on an emergency basis for people aged eighteen or older,

Moreover, the ADA requires that the Defendants make a reasonable accommodation when necessary to avoid discrimination on the basis of a disability, *unless* that accommodation "fundamentally alters" the nature of the service, program, or activity offered by the public entity, *or* imposes an "undue burden."[39] Requiring all students to wear a mask when attending classes fundamentally alters the nature of certain educational offerings, and poses an undue burden on other healthy children who are harmed by masks. Defendants will present evidence that younger students, in particular, benefit from seeing their instructors' faces, particularly when learning to read by sounding out words. In instances such as these, students face hindered learning and social instruction with masks, thereby fundamentally altering the nature of that instruction. As set forth below and in the attached medical opinion, masks impose an undue burden on certain other students who suffer from anxiety and depression (here, the mask mandate was imposed just weeks after students started school with optional masks). Other students have suffered increased bacterial infections, rashes, and other physical harm caused by masks.

The requirements of the ADA do not require "reasonable accommodations" to make schools "safer" for students; rather, the ADA requires that public entities make reasonable accommodations to ensure that those with disabilities are not excluded from or denied access to the benefits that entity provides. The PHO requires masks for all individuals except those that have requested health-based exemptions, and thus ensures that all students, including the Individual Plaintiffs and other special needs students, are able to attend classes in a safe environment. If this Court were to grant the Plaintiffs' request for injunctive relief, the Court's

---

and (iii) the Pfizer vaccine being approved on an emergency basis for children aged twelve to fifteen years. If the end point to mask wearing in schools is the availability of vaccination, there would be no reason to require masks with no exemptions for these age groups.

[39] *Hamer v. City of Trinidad*, 441 F. Supp. 3d 1155, 1172 (D. Colo. 2020).

ruling would confirm that a universal mask mandate in schools is necessary under ADA and

Section 504 only because the mandate reduces the potential *risk* of contracting COVID-19 while

on school grounds, without quantifying what level of risk is acceptable or even showing that the

COVID-19 risk to children with disabilities is greater than that from other common viruses. To

the extent that the Individual Plaintiffs' position is that universal mask requirements are the only

reasonable accommodation that will keep them safe from illness, and knowing that COVID-19

will likely be present in our community as an endemic illness like seasonal flu, then their

position leads to the conclusion that mask mandates must be in place, without end. By

interpreting the ADA in this manner, this Court would, in essence, make any safety measure

mandatory by the mere fact that it *may* have some marginal effect on safety.[40]

> **2.      Neither the Individual Plaintiffs nor the School District have demonstrated that they will suffer irreparable harm if the Public Health Order is not enjoined.**

---

[40] The Individual Plaintiffs allege, e.g., they are "more likely to develop serious health complications and be hospitalized if he contracts COVID-19." Plaintiffs do not define "greater," "more likely," or "increased" in terms of the degree of elevated risk that is present. Without supporting data, this unspecified level of increased risk allegedly transforms their school environment from a safe, acceptable environment under the ADA to one so dangerous that their rights under the ADA are violated. This lack of specificity in acceptable risk makes evaluating a reasonable accommodation to address the alleged increase in risk impossible. By way of another example, masks were mandated by the State of Colorado on September 10, 2020, when the 7-day average of new cases was 283.7, and they were also mandated on November 22, 2020, when the 7-day average was 5,402.4. See https://covid19.colorado.gov/data. Under Plaintiffs' argument, both rates were acceptable since both occurred while a mask mandate was in effect. By way of another example, Westminster 50 School District had a mask mandate in place since the beginning of the school year and had a COVID-19 incidence rate of 18.96 cases per 10,000 students for the week of August 22, 2021. During that same week, Cherry Creek 5 School District did not have a mask mandate in place since the beginning of the school year and had a COVID-19 incidence rate of 13.23 cases per 10,000 students the week of August 22, 2021. https://www.tchd.org/DocumentCenter/View/9438/Zoom-Recording-of-the-August-30-2021-Board-of-Health-Meeting Yet, under Plaintiffs' reasoning, Westminster 50 School District enabled students such as the Individual Plaintiffs to attend school safely under the ADA, whereas Cherry Creek 5 School District, with a lower incidence, did not.

Plaintiffs must demonstrate, clearly and unequivocally, that they will suffer irreparable harm if the Court does not grant the requested injunctive relief. The requirement of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction."[41] "[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."[42]

In contrast to the cases cited by the Plaintiffs, the PHO is not an outright ban on the School District's ability to mandate masks for in-person attendance. In Tennessee, the defendant Boards of Education voted not to renew mask mandates, which prevented schools from requiring anyone to wear a mask.[43] That is not the case here, as the PHO does not ban masks; rather, it only allows a narrow exemption from mask wearing who those who provided a signed declaration. Because the PHO allows the School District to require masks for unexempted students, it does not present the same danger of irreparable harm that courts found in Tennessee.[44] Indeed, Plaintiffs acknowledge that mask wearing in the School District remains at a high percentage.[45]

As stated above, the Individual Plaintiffs do not allege that they have suffered actual and irreparable harm as a result of the Douglas County PHO. To the contrary, the Plaintiffs claim that

---

[41] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1258 (10th Cir. 2004).
[42] *Id.*
[43] *S.B. by & through M.B. v. Lee*, Case No. 321CV00317JRGDCP, 2021 WL 4346232 (E.D. Tenn. Sept. 24, 2021).
[44] *See G.S. by & through Schwaigert v. Lee*, Case No. 21-CV-02552-SHL-ATC, 2021 WL 4268285 (W.D. Tenn. Sept. 17, 2021); *S.B. by & through M.B. v. Lee*, Case No. 321CV00317JRGDCP, 2021 WL 4346232 (E.D. Tenn. Sept. 24, 2021); *R.K. et al. v. Lee*, Case No. 3:21-CV-00725, 2021 WL 4391640 (M.D. Tenn. Sept. 24, 2021).
[45] Doc. 3, p. 2.

they are subject to increased risk of contracting COVID-19. Acknowledging that risk as actual harm in this case would result in an unprecedented extension of the ADA and Section 504.

Plaintiffs cite Dr. Rachel Herlihy, Colorado state epidemiologist, in support of their argument, noting that, at the time, "[t]he lower rates of COVID-19 are associated with school districts that are requiring masks in schools, again showing a clear impact that masks are having in decreasing transmission in our school settings." However, the Plaintiffs overlook the fact that Dr. Herlihy's data only point to a minimal difference in transmission rates. As stated above, Dr. Herlihy's data indicate that rates of COVID-19 among school-age children between ages 6 and 17 are approximately 300 cases per 100,000 per week in districts that have no mask requirement, whereas the data indicate that cases in that same age group are approximately 250 per 100,000 per week in districts that do require students to wear masks. This data, therefore, would indicate that in a school district with 1,000 students, the average infection rate for a district with a mask mandate is 2.5 cases per week, as opposed to 3.0 cases per week in a district that does require universal masking for all students. According to the Plaintiffs, therefore, a school district that records 2.5 cases per 1,000 students per week may be deemed safe, while a district with 0.5 additional cases per week must be considered unsafe. Moreover, the data does not address hospitalizations and deaths, and as such does not support Plaintiffs' claims of harm.[46] Defendants will also show that the data Plaintiffs cite is already outdated; whereas, the latest data

---

[46] In the Tri-County area, approximately 1% of COVID-19 cases under age 18 result in hospitalizations. https://data.tchd.org/covid19/pedsdata/. Accordingly, the estimated hospitalization risk difference using the above CDPHE data would be 0.025 hospitalizations per 1,000 students where there is no school mask mandate, as opposed to 0.030 hospitalizations per 1,000 students where there is a school mask mandate. Though Plaintiffs have not supplied any data regarding what they perceive as an acceptable level of risk of hospitalization, the difference of 0.005 hospitalizations per 1,000 students could not possible be a based to require universal masking under the ADA.  The risk of pediatric death, at statistically zero difference, even less so.

from the CDPHE shows that Colorado school districts without mask mandates have lower incidence rates than schools with mask mandates.  The Plaintiffs' logic on this point is unsound, and does not support a claim that they will be irreparably harmed if the Defendants' PHO is allowed to remain in place.

Moreover, data published by the CDC confirms that, as of October 20, 2021, 442 school-aged children in the United States have died after contracting COVID-19.[47] The CDC also estimates that, during the 2009-2010 flu pandemic, 358 children died after being diagnosed with the flu.[48] It is estimated RSV is responsible for the deaths of another 500 children per year.[49]  In their Motion, Plaintiffs do not contend that they require an accommodation of universal masking when at risk of contracting seasonal flu, RSV, or other illnesses spread in a manner similar to SARS-CoV-2. At no time prior to the COVID-19 pandemic have the Individual Plaintiffs alleged that they have been denied reasonable accommodations because universal mask requirements were not imposed, despite the fact that data indicates that contracting seasonal flu or RSV may be more likely to result in serious illness for children than COVID-19. Plaintiffs have not offered any facts to suggest COVID-19 is more dangerous to the Individual Plaintiffs than the flu or RSV.  Plaintiffs have also not alleged their children's risk from COVID-19 increased from when school started in the School District without a mask mandate in August 2021 (presumably the Individual Plaintiffs attended school without the request for accommodation during those first weeks of school prior to the mask mandate).

---

[47] U.S. Center for Disease Control and Prevention, Provisional COVID-19 Deaths: Focus on Ages 0-18, https://data.cdc.gov/NCHS/Provisional-COVID-19-Deaths-Focus-on-Ages-0-18-Yea/nr4s-juj3/data.
[48] U.S. Center for Disease Control and Prevention, Summary of 2017-2018 Influenza Season; https://www.cdc.gov/flu/about/season/flu-season-2017-2018.htm
[49] https://www.medscape.com/answers/300455-107817/what-is-the-mortality-and-morbidity-of-respiratory-syncytial-virus-rsv-pneumonia

     **3.**     **The balance of the equities does not weigh in the Plaintiffs' favor, and the injunction does not serve the public interest.**

When government entities are a party to a request for temporary restraining order or preliminary injunction, the balance of equities and public interest factors are properly considered together.[50] Plaintiffs urge the Court to find that the balance of equities is squarely in their favor, and that an injunction is clearly in the public's interest.  Plaintiffs even state there is *no* harm at all by virtue of eliminating the mask exemption.  Plaintiffs, however, fail to acknowledge the significant harm to other children and to the public if the Defendants' PHO is enjoined and universal masking is imposed. As discussed in the report attached hereto as Exhibit D, Dr. George R. Thompson, Ph.D., a toxicologist and psychopharmachologist, confirms that masks can pose significant physical and mental health effects for other children, as well as the fact that certain medical conditions may prevent students from wearing masks at all.[51]  Indeed, Plaintiffs acknowledge that Individual Plaintiff C.B. "is unable to tolerate wearing a mask due to increased sensory sensitivity."[52] While Individual Plaintiffs demand reasonable accommodations in light of their own disabilities, and contend that such accommodations require the institution of universal masking of all students under the age of 18, they refuse to acknowledge any harm whatsoever to requiring every student to wear a mask regardless of her particular physical and mental health needs.

---

[50] *Colo. v. DeJoy*, 487 F. Supp. 3d 1061, 1064 (D. Colo. 2020)
[51] **Exh. D**, George R. Thompson, Ph.D., "Dangerous Effects of Everyday COVID Mask Use" (2021) ("Thompson Report").
[52] Doc. 1, ¶ 123.

As stated in the Thompson Report, there are, in fact, a variety of negative health effects of mandatory masks for children under the age of 18, particularly when those masks are worn for an extended period (now two years from the start of the COVID19 pandemic), including:

- decreased oxygen and increased $CO_2$ during prolonged periods of mask-wearing, contributing to perceived fatigue and exhaustion;[53]

- increased risk of infection and increased germ density beneath the mask in proportion to length of time the mask is worn;[54]

- negative mental health effects, including anxiety and depression, due to masking;[55]

- increased likelihood of skin rashes;[56] and

- reduced learning opportunities in younger students, in turn resulting in adverse academic outcomes (including younger students' learning and social difficulties without being able to see their teachers' faces and observe facial cues).[57]

Notably, in a study of 25,930 children, multiple negative impacts related to mask-wearing were reported, including headache (53% of respondents), difficulty concentrating (50% of respondents), joylessness (49% of respondents), learning difficulties (38% of respondents), fatigue (37% of respondents), new onset anxiety (25% of respondents), and nightmares (25% of respondents).[58]

Obtaining a medical mask exemption from a medical doctor's office has been nearly impossible for children who are truly negatively physically or mentally impacted by masks or have disabilities that prevent them from wearing masks, and as such would be an unreasonable requirement for a PHO. This is because many children's pediatricians and whole pediatric and

---

[53] Exh. D, at 2-3.
[54] *Id.* at 1.
[55] *Id.* at 1, 4.
[56] *Id.* at 1.
[57] *Id.* at 4.
[58] *Id.*

other practices have issued blanket policies stating they will provide no medical mask

exemptions whatsoever, regardless of the physical or mental health effect on the child of the

mask, and regardless of the disability or special needs circumstance of the child, with certain

narrow exceptions.[59]

Additionally, the materials used to make commonly available disposable and cloth masks

include polypropylene and polyethylene (polymer) fibers, which have been demonstrated to

contribute to adverse respiratory effects. Considering the recent onset of the COVID-19

pandemic within the last two years, no studies have been completed that specifically evaluate the

adverse effects of children breathing through masks containing polypropylene and polyethylene

fibers for long periods. However, related studies have indicated that workers in facilities that

manufacture those polymer fibers have a significantly higher incidence of "pulmonary functional

impairment of a restrictive type and with reduced diffusing capacity" and lung disease.[60]

Moreover, during DCBH's public hearing concerning the adoption of the PHO on

October 8, 2021, Alicia Carroll, a speech pathologist, offered the following comments in support

of the PHO:[61] "I have seen the clear impact on children's articulation, language, and social

skills" because of mask wearing. Additionally, "I have seen first-hand the impact and the lack of

progress on children's articulation skills because of masks." Ms. Carroll further states that

children "have not been able to see the proper formation of sounds and words because of the

---

[59] See e.g., https://www.greenwoodpediatrics.com/Covid19/Mask-Wearing, https://advancedpediatricassociates.com/, https://www.lonetreepediatrics.com/.  Notably, the CDPHE and TCHD have been collecting the license numbers of doctors issuing medical mask exemptions.  Medical license numbers had never before been required in TCHD's PHOs related to masks.

[60] S. Atis, B. Tutluoglu, *et al*., The respiratory effects of occupational polypropylene flock exposure, European Respiratory Journal, 25: 110-117 (2005), available at https://erj.ersjournals.com/content/25/1/110.

[61] Public Comments of Alicia Carroll, Douglas County Public Health Meeting (October 8, 2021), audio recording submitted herewith as **Exh. E**.

muffling from the masks. They struggle to hear the correct production of sounds and words," which impacts their ability to understand and to be understood by their peers and teachers. As a result of mask-wearing, children "cannot see how we form sounds . . . it's a struggle for them, and the lack of progress has been significant these last two years because of that." Moreover, "our young kids especially are at such a crucial time of learning letters, sounds, language, reading, social skills, and masks clearly have a negative impact on that development." Defendants will present evidence of parents whose children have suffered harms like those stated above when exemptions are not available to them.

These actual harms must be balanced against the Plaintiffs' fear of harm if the PHO is not enjoined and universal masking is not imposed for all students. Considering the physical and mental harm that universal masking poses for children under the age of 18, the Plaintiffs' call for universal masking cannot be justified as being in the public interest, and the balance of equities do not support the need for the Plaintiffs' requested injunction.

## V.   CONCLUSION

Wherefore, Defendants respectfully request that the Court deny Plaintiffs' Motion and enter such further relief as the Court deems just and proper.

Respectfully submitted this 24th day of October, 2021.

BURNS, FIGA & WILL, P.C.

*/s/ Shelley Thompson*
Shelley Thompson
April Hendricks
Burns, Figa & Will, P.C.
6400 S. Fiddler's Green Circle, Suite 1000
Greenwood Village, Colorado 80111
Tel.: (303) 796-2626

**ATTORNEYS FOR DEFENDANTS**

**EXHIBIT LIST**

| EX NO. | DESCRIPTION |
|:---:|:---|
| A | Pediatric deaths and hospitalization data from Tri-County Health Department |
| B | Letter from Corey Wise |
| C | Letter from Corey Wise |
| D | George R. Thompson, Ph.D., "Dangerous Effects of Everyday COVID Mask Use" (2021) |
| E | Public Comments of Alicia Carroll, Douglas County Public Health Meeting (October 8, 2021) (audio file) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **DEFENDANTS' RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** was served on the following via electronic mail on the 24th day of October, 2021:

*For Plaintiffs:*
Elliott V. Hood, Esq.
John F. Peters, Esq.
CAPLAN AND EARNEST LLC
3107 Iris Avenue, Suite 100
Boulder, Colorado 80301
303-443-8010
ehood@celaw.com
jpeters@celaw.com

*s/Shelley Thompson*