## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02818-JLK

DOUGLAS COUNTY SCHOOL DISTRICT RE-1,
C.B., by and through his parent and next friend, E.B.,
A.R., by and through his parent and next friend, L.R.,
J.G., by and through his parent and next friend, K.G.,
B.A., by and through her parent and next friend, J.A.,
M.M., by and through her parent and next friend, K.M.,
D.B., by and through his parent and next friend, J.B.,
R.P., by and through her parent and next friend, B.H.,
D.W., by and through his parent and next friend, G.W.,
A.L., by and through his guardian and next friend, C.L.,

      Plaintiffs,

v.

DOUGLAS COUNTY HEALTH DEPARTMENT,
DOUGLAS COUNTY BOARD OF HEALTH,

      Defendants.

___

**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**
___

Kane, J.

On October 8, 2021, Defendants Douglas County Health Department (the "Health Department") and Douglas County Board of Health (the "Board of Health") issued a COVID-19 related Public Health Order that had the effect of loosening mask and quarantine requirements for public school students in Douglas County, Colorado (the "Public Health Order"). Plaintiffs in this case are the Douglas County School District ("the School District") and nine School District students (the "Student Plaintiffs") with disabilities within the meaning of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. Plaintiffs allege the Public Health Order conflicts

1

with the ADA and Section 504 and is therefore void and unenforceable. Due to the urgency of the circumstances, Plaintiffs have requested issuance of an order temporarily restraining enforcement of the Public Health Order pursuant to Federal Rule of Civil Procedure 65. *See* Mot. for TRO & Prelim. Inj. (ECF No. 3). Having reviewed the parties' briefs and exhibits and having heard the testimony of witnesses,[1] I find the risk of irreparable harm to Plaintiffs is significant and they have sufficiently demonstrated that the Public Health Order denies Student Plaintiffs reasonable accommodations in the form of science-backed masking and quarantine requirements. Thus, I conclude Plaintiffs have met their burden and issue the requested temporary restraining order.

## I. FACTUAL BACKGROUND

COVID-19 is an infectious disease caused by SARS-CoV-2, a virus first discovered in December 2019. *Basics of COVID-19*, Ctrs. For Disease Control & Prevention (CDC), https://www.cdc.gov/coronavirus/2019-ncov/your-health/about-covid-19/basics-covid-19.html (last visited October 26, 2021). The virus exploded into a global pandemic that has infected approximately 49.5 million people in the United States. Beuther Decl. at 4, ECF No. 3-2. The Summer of 2021 brought some relief from the COVID-19 pandemic with incidence rates reaching low points across the state by July, after vaccines became widely available. *See Colorado COVID-19 Incidence*, Colorado Dep't of Public Health and Env't (CDPHE), https://cdphe-data.shinyapps.io/twoweek _incidence (last visited October 26, 2021).

---

[1] I find that Plaintiffs have complied with the requirements of Fed. R. Civ. P. 65 and D.C.COLO.LCivR 65.1. Defendants received actual notice of the filing of Plaintiffs' Motion for a Temporary Restraining Order and received a copy of all pleadings filed in this case. Defendants filed a written Response to Plaintiffs' Motion and participated in the temporary restraining order hearing held on October 25 and 26, 2021.

The Student Plaintiffs have disabilities such as cystic fibrosis, autism, epilepsy, and type 1 diabetes that place them at great risk of health complications if they contract COVID-19. When they returned to school on August 9, 2021, the School District recommended mask wearing, but only a quarter of School District students wore them. Wise Decl. ¶ 9, ECF No. 3-17. At that time, the School District had a policy in place to manage communicable diseases in accordance with the guidance of the Colorado Department of Public Health and Environment (the "CDPHE") or the Tri-County Health Department (the "TCHD"), which was the public health agency for three counties in Colorado including Douglas County. The virus continued to mutate and by the last week of September 2021, the Delta variant of SARS-CoV-2 accounted for 100% of COVID cases in Colorado. Fish Decl. at 4, ECF No. 3-3. The Delta variant is more than twice as contagious as previous variants. *Delta Variant: What We Know About the Science*, CDC https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last visited October 26, 2021).

As the Delta variant was on the rise, the School District initiated a mask mandate for all students in preschool through sixth grade beginning August 23, 2021. *See* Wise Decl. ¶ 5. The following week, the TCHD issued a public health order directing all individuals aged two and older to wear masks in any indoor school setting, with limited exceptions when medically necessary. *Id*. ¶ 6. As a result, from September 1, 2021, through October 8, 2021, approximately 97% of students wore masks indoors. Wise Declaration ¶ 10.

Dissatisfied with the guidance of the TCHD and the CDPHE, the Douglas County Board of County Commissioners voted to withdraw from the TCHD and create the Douglas County Health Department on September 7, 2021. The Board of County Commissioners appointed six members to the Board of Health, and the Board of Health then issued its first public health

order—the Public Health Order at issue here—effective as of Saturday, October 9, 2021. The Public Health Order states, *inter alia*, that:

(1) Children can be exempt from any Douglas County mask mandate if they submit "a written declaration signed by the parent or guardian of the child, requesting to be exempted from the requirement . . . due to the negative impact on that individual's physical and/or mental health."

(2) "No Individual in Douglas County, regardless of age, shall be required to quarantine because of exposure to a known COVID-19 positive case unless the exposure is associated with a known [o]utbreak."

Public Health Order at 2, ECF No. 3-1. This Order is in direct conflict with CDPHE guidance. Within the first week after the Public Health Order was issued, 4,500 parents submitted written declarations exempting Douglas County School District students from the mask requirement. *Id*. ¶ 13. Over 500 School District staff members also exempted themselves from wearing masks while indoors. *Id*.

Plaintiffs contend the Public Health Order discriminates against students with disabilities because it prevents the School District from granting reasonable accommodations necessary to provide them with meaningful access to the School District's programs and services in violation of the ADA and Section 504.

## II. LEGAL STANDARD

Four factors are relevant to a motion for a temporary restraining order: (1) whether plaintiffs are likely to succeed on the merits; (2) whether plaintiffs will suffer irreparable injury if the injunction is denied; (3) whether the threatened injury to the plaintiffs outweighs the injury the opposing parties will suffer under the injunction; and (4) whether the injunction would be adverse to the public interest. *Beltronics USA, Inc. v. Midwest Inventory Distrib.*, *LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). Because defendants are government entities, the third and fourth

factor merge. *Nken v. Holder*, 556 U.S. 418, 434 (2009). A temporary restraining order preserves the status quo ante to prevent irreparable harm until a court can make a final decision on the merits. Fed. R. Civ. P. 65(b); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). It is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).

## IV. DISCUSSION

Defendants assert the temporary restraining order should not be issued for three reasons: (1) the School District lacks standing to raise claims under the ADA and Section 504; (2) the Student Plaintiffs have failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.*; and (3) Plaintiffs have not shown that a temporary restraining order is justified because they are unlikely to succeed on the merits of their claims, they are not likely to suffer irreparable harm, and the relief they have requested is not in the public interest. As described below, I disagree with their assessment on all three grounds.

### 1. Standing

"To establish standing, Plaintiffs must show (1) an injury in fact, (2) a causal connection between the injury and the challenged act, and (3) a likelihood that the injury will be redressed by a favorable decision." *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1214–15 (10th Cir. 2017) (quotation omitted). "In order to show an injury-in-fact, the plaintiff bears the burden of ultimately proving an invasion of a judicially cognizable interest which is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical." *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 630 (10th Cir. 1998) (quoting *Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) (internal quotation marks omitted). Defendants assert the School District does not have standing to bring the present claims of discrimination because it has not suffered an injury in fact under the ADA, alleging that it cannot suffer an injury because it is not "a qualified individual with a disability." In doing so, Defendants wrongly assume the School District has made a failure-to-accommodate claim on its own behalf.

The School District has not made such a claim, but instead asserts that it has standing to bring suit in furtherance of its affirmative duty to protect students with disabilities from discrimination in its schools. It claims the Public Health Order has put it at risk of injury should it be sued for violating the civil rights of its students or prosecuted for violating the Public Health Order. And it asserts that, apart from that risk, it has suffered a concrete injury by the very fact that it has been forced to violate either local or federal law. This injury is not hypothetical, it is traceable to the Defendants' Public Health Order, and the requested relief would redress the alleged injury. As such, there is no question the School District has standing.

*2. Administrative Exhaustion Under the IDEA*

The IDEA is a federal law that ensures all children with disabilities receive a "free appropriate public education." 20 U.S.C. § 1412(a)(1)(A). A plaintiff may seek relief for the denial of a free appropriate public education by filing suit under the ADA or Section 504, in addition to the IDEA. *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 750 (2017); 20 U.S.C. § 1415(*l*). Before a student with a disability may file a complaint under the ADA or Section 504 for denial of a free appropriate public education—the only relief available under the IDEA—the

6

student must first exhaust his or her administrative remedies. 20 U.S.C. § 1415(*l*); *see also Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1227 (10th Cir. 2015) ("The IDEA . . . creates a mandatory administrative framework for resolution of disputes over the education of children with disabilities."). But when "the remedy sought is not for the denial of a [free appropriate public education], then exhaustion of the IDEA's procedures is not required." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 754 (2017). To determine whether administrative exhaustion under the IDEA is required, courts ask two questions: (1) whether the plaintiff could have brought the same claim if the alleged conduct had occurred at a public facility that was not a school, *id.* at 756, and (2) whether an adult at the school could have made the same complaint, *id*. The mere fact that a plaintiff's claims are education-related does not prove the relief they seek falls under the IDEA. Here, Plaintiffs could have brought their claims had the Public Health Order been issued by another public facility—such as a public library, and an adult with a disability could have brought a substantially identical complaint against the Health Department. Plaintiffs are not seeking relief for denial of a free appropriate public education under the IDEA; instead, the gravamen of their complaint is that the Public Health Order denies disabled children in Douglas County "non-discriminatory access to public institutions"—in this case, to Douglas County public schools. *Id.* at 756. Thus, Plaintiffs' claims in this case are properly brought under the ADA and Section 504 and not subject to the administrative exhaustion requirement under the IDEA.

### 3. Likelihood of Success on the Merits

The ADA forbids any "public entity" from discriminating against an individual on the basis of his or her disability. 42 U.S.C. § 12131. The definition of "disability" is to be "construed

7

broadly in favor of expansive coverage." 28 C.F.R. § 35.108(a)(2). Section 504 applies the same prohibition to any "program or activity" receiving federal funds. 42 U.S.C. § 12131. These federal laws require the School District to provide students with disabilities an equal opportunity to participate in and benefit from school services "to the fullest extent possible." *Cohon ex rel. Bass v. N.M. Dep't of Health,* 646 F.3d 717, 725-26 (10th Cir. 2011). Physical access to the school is not enough. Additional accommodations are necessary to make access meaningful.

For the purposes of this temporary restraining order, I must consider only the Plaintiffs' claims of discrimination. It is not the role of this Court to determine how to best protect the Student Plaintiffs or the public from COVID-19 or any other disease. Based on the evidence before me, I find that Plaintiffs can likely establish that the October 8, 2021 Public Health Order is preempted by Title II of the ADA and Section 504 of the Rehabilitation Act, and that the effect of the Order is to illegally deprive Student Plaintiffs of equal access to the School District's services to the fullest extent possible.

To demonstrate a violation of the ADA or Section 504, Plaintiffs must prove: (1) they are qualified individuals with a disability; (2) they were excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or were otherwise discriminated against by the entity; and (3) such exclusion, denial of benefits, or other discrimination, was by reason of their disabilities. *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). Defendants dispute the second and third elements of their claim, stating that students with disabilities are not excluded from participation and that any alleged exclusion is not because of the students' disabilities. For the purpose of this temporary restraining order, Plaintiffs have presented ample credible evidence that disabled students face a much greater risk of harm upon contraction of COVID-19 such that meaningful participation at school is illusory. Likewise, they

8

have shown that their exclusion from participation is the direct result of the October 8, 2021 Public Health Order. As such, it is likely that the Public Health Order has the effect of discriminating against them in violation of federal law. A state law that interferes with federal law is invalid. *Hillsborough Cnty. v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 712 (1985). If the Public Health Order results in a violation of the ADA or Section 504, then it is preempted by federal law. Plaintiffs have established that such a violation is likely.

Defendants hardly address the issue of the Public Health Order's limitation on quarantine protocols. There is no dispute that the medical consensus is that reasonable quarantines must be required.

Defendants focus instead on the mask portion of the Public Health Order. They argue that the requested accommodations are not reasonable because they arbitrarily protect some students with disabilities but not others. They assert that a universal mask mandate without the exclusions provided by the Public Health Order violates the civil rights of other students with special needs. To support their assertion, they provided particularly moving testimony from the mother of a severely autistic student who is currently attending a Douglas County High School. The witness's son has experienced great difficulty coping with mask-wearing at school because he depends on facial expressions to communicate. When he was deprived of those expressions at school due to the September 1, 2021 mask mandate, he began to self-harm and within weeks, he experienced his first seizure. As a result, the quality of his education has quickly declined. In response, Plaintiffs submitted the testimony of a rebuttal witness, Mr. Sid Rundle, the Special Education Services Officer for the School District. Mr. Rundle expressed sympathy for this student's predicament and explained that the School District has a variety of measures in place for students with severe autism. He described times that staff will pull their masks down on a

9

limited basis to communicate, the provision of plexiglass barriers, and experimenting with transparent masks. He explained that the School District has recognized all along that 100 percent compliance was not possible and that it would need to make accommodations for students such as the witness's son.

A recent study released by the CDC supports Plaintiffs' assertion that mask requirements are effective in reducing outbreaks in schools. *Association Between K-12 School Mask Policies and School-Associated COVID-19 Outbreaks–Maricopa and Pima Counties, Arizona, July-August* 2021, CDC (Sept. 24, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7039e1.htm?s_cid=mm7039e1_w (last visited Oct. 26, 2021). Defendants' expert testified that some types of facial coverings are demonstrably more effective than others, but he provided no scientific evidence that universal masking in schools is ineffective or that such a mandate fails to reduce the risk to disabled students. *See* Thompson Report at 1, ECF No. 23-4. On the other hand, one of Plaintiffs' experts—a practicing adult pulmonary and critical care physician—reports that "[a]erosol spread is still reduced substantially by simple respiratory mask wearing," even if "a well-fitting N95 mask is required to eliminate aerosol transmission." Beuther Decl. at 5.

In sum, Plaintiffs are likely to succeed on their claims in this case, as the Public Health Order denies Student Plaintiffs reasonable accommodations under the ADA and Section 504 and prevents the School District from providing those accommodations.

### 4. Irreparable Harm

Plaintiffs have also demonstrated they will likely suffer irreparable harm without the Court immediately enjoining enforcement of the Public Health Order. The Order denies the Student Plaintiffs reasonable accommodations in the form of adequate masking and quarantining

protocols necessary to provide them with equal access to a public education. The risk Student Plaintiffs face is great: according to Dr. Fish, many of their conditions are associated with severe illness and hospitalization from COVID-19. *See* Fish Decl. at 5 (stating that risk factors include "asthma, neurodevelopmental disorders, anxiety, depression, obesity, esophageal disorders, tobacco-related disorders, diabetes (both type 1 and type 2), epilepsy, cardiac and circulatory congenital anomalies, upper respiratory diseases, and hypertensions."). Dr. Fish explains that the presence of any comorbid condition increases the odds of hospital admission by 2.73, with increasing odds for additional comorbidities. *Id.* Meanwhile, ICU beds in Douglas County are nearly full. At-risk students, therefore, face the real possibility of contracting the virus, becoming seriously ill with COVID-19, and placing an additional burden on the strapped healthcare system. Considering the evidence in the record, this possibility is substantially greater with the Delta variant running rampant and when other students who have been exposed to SARS-CoV-2 are permitted to attend school unmasked. Additionally, the Public Health Order likely prevents the School District from appropriately accommodating its students, resulting in violations of their rights under the ADA and Section 504.

### *5. Public Interest*

Finally, I find that the balance of the equities favors immediate relief at this stage of the litigation as it is in the public interest to prevent the spread of COVID-19 among students with disabilities in Douglas County and to protect their rights to be free from unlawful discrimination.

## V. CONCLUSION

Based on these initial findings and conclusions, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 3) is GRANTED IN PART in that this Temporary Restraining Order is issued. The Motion will otherwise be ruled on once the preliminary injunction hearing is held. To be clear, this Order is based on the documentary and testimonial evidence presently in the record. That evidence demonstrates that Student Plaintiffs are at a significantly increased risk of severe illness and hospitalization from COVID-19. It also establishes that quarantine requirements for exposed individuals and mask mandates that permit medically documented exemptions are prudent and necessary to prevent the spread of the highly contagious Delta variant. These measures likely constitute reasonable accommodations for Student Plaintiffs under the ADA and Section 504. And the Public Health Order prevents the School District from providing those accommodations to students. Thus, I find that a 14-day temporary restriction on enforcement of the Public Health Order will protect Student Plaintiffs from potential irreparable harm and is in the public interest. Defendants will be given an additional opportunity to oppose issuance of a preliminary injunction and will be able to present further evidence at the related hearing. At that time, I will reconsider the matters before me.

**THEREFORE, THE COURT ORDERS:**

- **Defendants are temporarily restrained from enforcing the Public Health Order issued on October 8, 2021 (effective October 9, 2021) as it pertains to the Douglas County School District;**

- **This Temporary Restraining Order shall remain in effect until 3:00 P.M. on Monday, November 8, 2021, unless dissolved sooner or extended by order of this Court;**

- **The Court waives any requirement for Plaintiffs to post a bond or security in this case;**

- **The School District shall notify all students in the Douglas County School District; and**

- **The Court will hold a hearing for resolution of the portion of Plaintiffs' Motion seeking a preliminary injunction on November 8, 2021 at 10:00 A.M.**

SO ORDERED at 1:30 P.M. this 26th day of October, 2021.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE