## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02818-JLK

DOUGLAS COUNTY SCHOOL DISTRICT RE-1,
C.B., by and through his parent and next friend, E.B.,
A.R., by and through his parent and next friend, L.R.,
J.G., by and through his parent and next friend, K.G.,
B.A., by and through her parent and next friend, J.A.,
M.M., by and through her parent and next friend, K.M.,
D.B., by and through his parent and next friend, J.B.,
R.P., by and through her parent and next friend, B.H.,
D.W., by and through his parent and next friend, G.W.,
A.L., by and through his guardian and next friend, C.L.

Plaintiffs,

v.

DOUGLAS COUNTY DEPARTMENT OF PUBLIC HEALTH,
DOUGLAS COUNTY BOARD OF HEALTH,

Defendants.

---

## PLAINTIFF DOUGLAS COUNTY SCHOOL DISTRICT RE-1'S
## MOTION FOR ATTORNEY'S FEES AND COSTS

---

On October 8, 2021, the Douglas County Board of Health and Douglas County Department of Public Health issued a Public Health Order allowing any person in Douglas County to be exempt from wearing a face covering (i.e., a mask) and that limited the ability to quarantine individuals exposed to COVID-19. This Health Order directly contradicted the School District's policy of requiring masking and quarantining consistent with guidance from the Colorado Department of Public Health and Environment and Tri-County Health Department; it put students with underlying health conditions at greater risk of either contracting COVID-19 or suffering severe illness or death

if they contracted the disease; and it prevented the District from complying with its obligations under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.

On October 20, 2021, the School District, alongside nine of its students with disabilities putting them at greater risk of harm from COVID-19, filed suit seeking to enjoin enforcement of this Health Order. A week later, this Court heard argument from both parties, considered witness and sworn testimony, and granted Plaintiffs' motion for a temporary restraining order (TRO), concluding that the October 8 Health Order likely violated federal law and was substantially likely to cause immediate and irreparable harm to the District and its students with disabilities. As a direct result of the TRO, on November 12, 2021, Defendants opted to modify the Public Health Order to be consistent with the TRO and thus exempt the School District from the Order.

With the School District now exempt from enforcement of the October 8 Health Order, Plaintiffs have fulfilled the purpose of this lawsuit. In other words, Plaintiffs prevailed in this case. By agreement, the School District covered the fees and costs of this litigation on behalf of all Plaintiffs. Because Plaintiffs are the prevailing parties in this case, the School District moves this Court for an award of reasonable attorney's fees and costs under the Americans with Disabilities Act, 42 U.S.C. § 12205, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a.

## CERTIFICATE OF CONFERRAL

Plaintiff conferred regarding this Motion and the amount of fees sought with counsel for Defendants. Defendants oppose the requested relief.

## ARGUMENT

In a civil rights action under the ADA and Section 504, this Court may award the prevailing party their reasonable attorney's fees. *See* 42 U.S.C. § 12205 ("In any action or administrative

proceeding commenced pursuant to [the ADA], the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs[.]"); 29 U.S.C. § 794(b) ("In any action or proceeding to enforce or charge a violation of a provision of [Section 504], the court, in its discretion, may allow the prevailing party (other than the United States) a reasonable attorneys' fee as part of its costs.").

The Supreme Court has explained that a "prevailing party" is "one who succeed[s] on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Tenth Circuit, relying on Supreme Court precedent, has adopted the rule that "a party which achieves the objective of its suit by means of an injunction issued by the district court *after an unambiguous finding of probable success on the merits* is a prevailing party in that court[.]" *Kan. Jud. Watch v. Stout*, 653 F.3d 1230, 1236 (10th Cir. 2011) (quoting *Dahlem by Dahlem v. Bd. of Educ. of Denver Pub. Sch.*, 901 F.2d 1508, 1512 (10th Cir. 1990) (internal modifications omitted) (emphasis added).

Plaintiffs achieved their objective in this litigation by obtaining a court order enjoining enforcement of the October 8, 2021 Health Order, and this Court granted that relief in part because it concluded that Plaintiffs were likely to succeed on the merits of their claims. (*See* ECF No. 26, *Or. Granting Mot. for TRO*, at 10 ("In sum, Plaintiffs are likely to succeed on their claims in this case, as the Public Health Order denies Student Plaintiffs reasonable accommodations under the ADA and Section 504 and prevents the School District from providing those accommodations.")). Thus, the School District, which covered the costs and fees for this litigation, is a prevailing party entitled to an award of attorney's fees.

A detailed statement of attorney and paralegal fees for this case is attached as **Exhibit 1**. The following chart summarizes the attorney's fees and costs that the School District incurred and seeks to recover in this case:

| FEES | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hourly Rate** | **Hours Billed** | **Total Fee** |
| Elliott V. Hood | C&E Associate | $205 | 181.5 | $37,207.50 |
| John F. Peters | C&E Associate | $205 | 156.80 | $32,144 |
| Elizabeth R. Friel | C&E Associate | $230 | 1.4 | $322 |
| Travis J. Miller | C&E Associate | $120 & $205 | 43.5 | $5,917 |
| Anne L. Stuller | C&E Associate | $205 | 23.3 | $4,776.50 |
| Shelley McKinstry | C&E Paralegal | $125 | 60.60 | $7,575 |
| **TOTAL** | n/a | n/a | **467.10** | **$87,942** |

| COSTS | |
|---|---|
| **Cost Item** | **Cost in $$** |
| Docket Fee | $402 |
| Service of Process on Defendant Douglas County Board of Health | $122 |
| Service of Process on Defendant Douglas County Department of Public Health | $122 |
| Transcript on Hearing on TRO | $289.90 |
| Expert Fee of Dr. David A. Beuther | $7,367 |
| **TOTAL** | **$8,302.90** |

I.     **The Court has jurisdiction to grant an award of attorney's fees and costs.**

Although this case has been dismissed as moot, the Tenth Circuit has held that courts retain

jurisdiction to rule on the limited issue of attorney's fees and costs after dismissal for mootness.

*Dahlem*, 901 F.2d at 1510-11. A case is moot when there is no live case or controversy and so no

federal subject matter jurisdiction. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601

F.3d 1096, 1109 (10th Cir. 2010). But this does not end the analysis here. In *Dahlem*, for example,

the defendant argued a prior Tenth Circuit ruling directing the district court to dismiss the case as

moot "stripped that court of jurisdiction to grant attorney's fees." 901 F.2d at 1510. The Tenth

Circuit disagreed and held that "[w]hile a claim of entitlement to attorney's fees does not preserve

a moot cause of action, the expiration of the underlying cause of action does not moot a controversy

over attorney's fees already incurred." *Id.* at 1510-11 (internal citations omitted).

Likewise, in *Kansas Judicial Watch*, the Court concluded that the plaintiffs were prevailing

parties even though it was not until "[a]fter the district court dismissed the case, [that] [the

plaintiffs] filed a motion seeking attorney's fees." 653 F.3d at 1234. *Kansas Judicial Watch*

approves the very premise that a plaintiff can obtain attorney's fees in a case that was previously

rendered moot by actions outside the plaintiff's control. *Id.* at 1238 ("[T]he plaintiff qualifies as a

'prevailing party' even if events outside the control of the plaintiff moot the case.").

Thus, even though there is no longer any live case or controversy regarding the merits of

this matter, the Court retains jurisdiction for the limited purpose of determining attorney's fees.

*Cf. United States v. Ford*, 650 F.2d 1141, 1144 (9th Cir. 1981) (cited approvingly in *Dahlem*, 901

F.2d at 1511) ("[T]he question of attorney's fees is ancillary to the underlying action and survives

independently under the Court's equitable jurisdiction.").

5

## II.      The School District is a prevailing party.

The Supreme Court set forth the general standard governing the prevailing-party determination in *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist, (TSTA)*, 489 U.S. 782, 788-93 (1989).[1] There, the Court explained that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792-93. A material alteration in the parties' legal relationship occurs, the Court held, when "the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit." *Id.* at 791-92 (internal alteration and quotations omitted). This standard requires that "a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Id.* at 792 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).

Despite the emphasis on a party's success on the merits, "nothing in *TSTA* or any other Supreme Court case precludes a plaintiff from obtaining that relief by some means other than a final judgment." *Kan. Jud. Watch*, 653 F.3d at 1236. Indeed, *Kansas Judicial Watch* decision clarifies that a court can determine whether a plaintiff is a prevailing party after receiving injunctive relief short of a final judgment that ultimately moots the case. *Kan. Jud. Watch*, 653

---

[1] *TSTA* analyzed the "prevailing party" standard in the context of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988; however, the term "prevailing party" is assigned the same meaning under the ADA and Section 504 as it is under § 1988. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) (explaining that Congress "has authorized award of attorney's fees to the 'prevailing party' in numerous statutes in addition to [the ADA and Fair Housing Administration Act], such as the Civil Rights Act of 1964, the Voting Rights Act Amendments of 1975, and Civil Rights Attorney's Fees Awards Act of 1976" (internal citation omitted)).

F.3d at 1238. And as this Court explained in a prior order granting plaintiffs their attorney's fees, "[o]nce the plaintiff has been determined to have obtained *some* of the benefits sought in bringing the litigation, the plaintiff should be construed to be the prevailing party as long as the underlying constitutional claim is substantial." *Goetz v. Ricketts*, 632 F. Supp. 926, 928 (D. Colo. 1986) (citing *Battle v. Anderson*, 614 F.2d 251, 258 (10th Cir.1980) (emphasis added)).

Preliminary injunctive relief "provides relief on the merits when it (a) affords relief sought in the plaintiff's complaint and (b) represents an unambiguous indication of probable success on the merits." *Kan. Jud. Watch*, 653 F.3d at 1238. Further, "if a preliminary injunction satisfies the relief-on-the-merits requirement, the plaintiff qualifies as a 'prevailing party' even if events outside the control of the plaintiff moot the case." *Id.*

Here, the Court did not issue a preliminary injunction; it issued a temporary restraining order (TRO), which remained in place until Defendants modified its October 8, 2021 Public Health Order, thereby mooting Plaintiffs' claims, thus mooting the case. (ECF No. 44.) The Tenth Circuit has not directly addressed whether a plaintiff who obtains a TRO pursuant to federal law may be considered a prevailing party.[2] Several other circuits, though, have addressed this issue, and all

---

[2] In *J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1478 (10th Cir. 1985), the Tenth Circuit concluded that the plaintiff was not a "prevailing party" after the defendant voluntarily amended a city ordinance giving rise to the suit following the issuance of a TRO. However, the court's decision rested on a basis that is inapplicable here and has since been abrogated by the Supreme Court in *Dennis v. Higgins*, 498 U.S. 439 (1991). In *Town of Erie*, the plaintiffs sought attorney's fees under § 1988 on the theory that the District Court's entry of a TRO under the Federal Aviation Act was grounds for a successful § 1983 claim. The Tenth Circuit rejected this argument, concluding that because the FAA's authority was rooted in the Commerce Clause, violations of its regulations could not support a successful § 1983 claim, and thus the plaintiffs were not a "prevailing party" under § 1988. This narrow interpretation of § 1983 was abrogated in *Dennis*, 498 U.S. 439. Yet, even if *J & J* remained good law, its holding is inapposite here because this Court expressly held that Plaintiffs were likely to succeed on their claims under the ADA and Section 504, both of which expressly allow for reasonable attorney's fees.

agree the determination turns on whether the TRO altered the legal relationship of the parties or simply preserved the status quo. For example, in *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1160-61 (9th Cir. 2000), the Ninth Circuit held that that a TRO prohibiting public officials from interfering with an exhibition containing erotic art was sufficient to confer prevailing party status because the order did not simply preserve the status quo but "allowed the convention and art exhibit to take place[.]" In *Martin v. Secretary of Army*, 463 F. Supp. 2d 287, 291 (N.D.N.Y. 2006), a federal court in New York held that a plaintiff who successfully obtained a TRO preventing his military deployment overseas while his application for discharge from service on conscientious-objector grounds was pending was a "prevailing party" after the parties subsequently stipulated to delay his deployment consistent with the terms of the TRO. *See also Black Heritage Soc. v. City of Houston*, No. CIVA H-07-0052, 2008 WL 2769790, at *4 (S.D. Tex. July 11, 2008) (collecting authority that a TRO can confer prevailing party status when the TRO does more than simply preserve the status quo).

And as courts in this Circuit have recognized, a party must prove the same elements to obtain a TRO as it must to obtain a preliminary injunction. *E.g., In re Qwest Comm'ns Inter., Inc. v. Sec. Litig.*, 241 F. Supp. 2d 1119, 1122 (D. Colo. 2002); *People's Trust Fed. Credit Union v. Nat. Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D. N.M. 2018) ("The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order.").

Here, the Court's order granting Plaintiffs' motion for a TRO meets all the requirements to convey prevailing party status. First, the order granting the TRO was expressly based on the merits of Plaintiffs' ADA and Section 504 claims and resulted in "the material alteration of the legal relationship of the parties." *TSTA*, 489 U.S. at 792-93. In its Order, this Court explained that "[b]ased on the evidence before me, I find that Plaintiffs can likely establish that the October 8,

2021 Public Health Order is preempted by Title II of the ADA and Section 504 of the Rehabilitation Act, and that the effect of the Order is to illegally deprive Student Plaintiffs of equal access to the School District's services to the fullest extent possible." (ECF No. 26, at 8.) The Order further provides that "it is likely that the Public Health Order has the effect of discriminating against them in violation of federal law" and that "[i]f the Public Health Order results in a violation of the ADA or Section 504, then it is preempted by federal law." (*Id.* at 9.) "Plaintiffs have established that such a violation is likely." (*Id.*) This satisfies the first prong set out by *Kansas Judicial Watch* for determining prevailing party status based on injunctive relief, namely that the injunctive relief was granted based on likelihood of success on the merits.

In addition to concluding that Plaintiffs' claims would likely succeed on the merits, the Court granted Plaintiffs the exact remedy they sought: enjoining enforcement of the Public Health Order as to the School District. Before bringing suit, the School District was prevented from requiring universal masking in its schools, to the detriment of its students with disabilities. As a direct result of the Court's TRO, and Defendants' subsequent modification of the Public Health Order exempting the School District from the Order, the District could return to managing communicable diseases, namely COVID-19, under its Policy JLCC, requiring face coverings and limited quarantining consistent with Tri-County Health Department and Colorado Department of Public Health and Environment guidance. Thus, the TRO materially altered the legal relationship between the parties.

Second, this case was dismissed solely because Defendants rendered Plaintiffs' claims moot by amending the Public Health Order to exempt the School District from the Order's reach.

(ECF No. 43.) The facts here therefore track the standard in *Kansas Judicial Watch,* that "events outside the control of the plaintiff moot the case." *Kan. Jud. Watch*, 653 F.3d at 1238.

For these reasons, the School District is a prevailing party and is therefore entitled to an award of its reasonable attorney's fees.

**III.    The number of hours expended by plaintiffs' counsel in litigating this matter is reasonable and should be fully compensated.**

Courts in civil rights cases apply lodestar principles to determine the amount of attorney's fees to award a prevailing party. *Case by Case v. Unified Sch. Dist. No. 233*, 157 F. 3d 1243, 1249 (10th Cir. 1998). Under this analysis, the court determines the number of hours reasonably expended and a reasonable hourly rate, then multiplies the two together to establish the "lodestar." *Id*. The "resulting product is presumed to be the minimum reasonable fee to which counsel is entitled." *Pa. v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986) (emphasis in original); *see also Blum v. Stenson*, 465 U.S. 886, 897 (1984) (explaining that the "product of reasonable hours times a reasonable rate" normally provides a "reasonable" attorney's fee within the meaning of § 1988).

"'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436); *see also Duran v. Koehler*, 2014 WL4197578, at *2 (D. Colo. Aug. 25, 2014) (describing plaintiff's excessive force claim against individual officer and *Monell* claim against municipality as "two sides of the same coin"). As the Supreme Court summarized in *Hensley*:

> In other cases, the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the

10

> overall relief obtained by the plaintiff in relation to the hours reasonably expended
> on the litigation.

461 U.S. at 435.

In this case, Plaintiffs achieved success in their suit by obtaining an injunction against enforcement of Defendants' unlawful Public Health Order, which then prompted Defendants to modify their Order to be consistent with the TRO, thereby mooting the claims. In light of Plaintiffs' success in achieving their goals, as well as all other relevant considerations, addressed below, the number of hours billed and the hourly rates charged are reasonable.

The Tenth Circuit has compiled a list of factors to be considered when evaluating the reasonableness of a prevailing party's attorney's hours submitted in a fee petition: (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers. *Ramos*, 713 F. 2d at 554. When evaluating the reasonableness of hours expended, the Court "does not have to justify every hour allowed in awarding attorney's fees under federal statutes." *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F. 3d 538, 542 (10th Cir. 2000) (citation omitted). Similarly, this Court need not "announce what hours are permitted for each legal task." *Mares v. Credit Bureau of Raton*, 801 F. 2d 1197, 1202 (10th Cir. 1986).

While counsel should work efficiently, "a diligent attorney, even one with over 30 years of practice experience, should thoroughly investigate the opposition's papers and the relevant legal precedent and strive to produce competent and compelling work product; this investigation and drafting take time." *Casey v. Williams Prod. RMT Co.*, 599 F. Supp. 2d 1253, 1256 (D. Colo. 2009); *see also Homans v. City of Albuquerque*, 264 F. Supp. 2d 972, 979 (D. N. M. 2003) ("[I]t

is not unreasonable for attorneys to bill some amount of time to legal research on specific issues unique to a particular motion. Indeed, such a task is integral to the briefing process.").

Here, Plaintiffs' counsel reasonably dedicated significant time drafting the Complaint and Motion for Temporary Restraining Order and Preliminary Injunction. These pleadings and their accompanying exhibits served as the foundation for the entire litigation. Further, counsel had to identify the student Plaintiffs and work with their parents to draft declarations in support of the students' claims and identify qualified experts to provide reliable testimony in support. Given the expedited timeline associated with a TRO, it was reasonable, and indeed necessary, to involve several attorneys in this work. Given the importance of the TRO hearing in a matter such as this, counsel had to expend considerable time preparing for the hearing. This case was also legally complicated and required thorough research on arguments linked entirely to a recent pandemic and based on developing federal precedent, not to mention issues of standing and exhaustion asserted by Defendants in response to Plaintiffs' motion. The fact that this case was covered in the press and addressed issues that are, unfortunately, politically charged (e.g., masking and COVID-19 protocols), made the matter even more complex. For these reasons, the hours expended on this case were reasonable.

The Court should also "focus on the significance of the overall relief obtained by the Plaintiffs in relation to the hours reasonably expended on the litigation." *Joseph A. by Wolfe v. N.M. Dep't of Human Servs.*, 28 F. 3d 1056, 1060 (10th Cir. 1994) (quoting *Hensley*, 461 U. S. at 435). After all, "[u]nlike most private tort litigants, a civil rights Plaintiff seeks to vindicate important civil . . . rights that cannot be valued solely in monetary terms." *Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Indeed, "[p]otential liability for full fee awards can deter violations of the

civil rights laws, especially in situations where the fee award represents a significant portion of a defendant's financial exposure." *Ramos*, 713 F.2d at 552.

Here, the civil rights at issue, namely the rights of children with disabilities to equally access their public education, was central to the Court's entry of the TRO. As the Court recognized in its order granting Plaintiffs' motion, "the balance of the equities favors immediate relief at this stage of the litigation as it is in the public interest to prevent the spread of COVID-19 among students with disabilities in Douglas County and to protect their rights to be free from unlawful discrimination." (ECF No. 26.)

## IV.    Plaintiffs' counsel's hourly rate is reasonable.

Plaintiffs' counsel's requested hourly rates, which are in line with the hourly rates they charge and are less than those traditionally charged by plaintiff civil rights attorneys in the local market, are reasonable. (Attorney Declarations, **Ex. 2**.) "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos*, 713 F. 2d at 555; *accord Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995) ("Hourly rates must reflect the 'prevailing market rates in the relevant community'" (quoting *Blum*, 465 U.S. at 895). Furthermore, "[t]he 'local market rate' is usually the state or city in which counsel practices." *Ctr. For Biological Diversity v. U.S. Fish & Wildlife*, 703 F. Supp. 2d 1243, 1249 (D. Colo. 2010) (citation omitted). In determining the reasonableness of hourly rates, the Court "must look to 'what the evidence shows the [local] market commands for civil rights or analogous litigation.'" *Burch v. La Petite Academy, Inc.*, 10 Fed. Appx. 753, 755 (10th Cir. 2001) (quoting *Case v. Unified School Dist. No. 233*, 157 F. 3d 1243, 1255 (10th Cir. 1998)). The Court

can also consider the quality of counsel's performance in setting the hourly rate. *Ellis v. University of Kan. Med. Ctr.*, 163 F. 3d 1186, 1203 (10th Cir. 1999).

In this case, Plaintiffs' counsel's rates are not only reasonable but are less than what the market commands for plaintiff-side civil rights litigation in the Denver metropolitan area. In late 2018, Judge Domenico approved partner rates at $540-$590 per hour, associate rates at $350 per hour, paralegal work at $175 per hour, and legal assistant work at $120 per hour. *Stroup and Lee v. United Airlines*, ECF No. 232, No. 15-cv-01389-DDD-STV (D. Colo. Dec. 5, 2018). In 2020, Chief Judge Tymkovich approved partner rates at $650-$600 per hour, associate rates at $350-$375 per hour, and paralegal work at $150-$175 per hour. *O'Neal v. Bd. of Cty. Comm'rs of Cty. of Fremont,* ECF No. 199, No. 16-CV-01005-TMT-KLM (June 6, 2020).

Moreover, when compared with the rates charged by commercial litigators, and approved by District of Colorado courts in other cases, Plaintiffs' counsel's rates are more than reasonable.[3] In *Nero v. Am. Family Mut. Ins. Co.*, a case where a plaintiff class asserting coverage and bad faith issues was dismissed under Rule 12(b)(6), the court approved a $500 billing rate for a commercial defense litigator at Faegre Baker Daniels. 2013 WL 5323191, at *9 (D. Colo. Sept. 23, 2013). In *Biax Corp v. NVIDIA Corp.*, the court approved an hourly rate in the $700 range for a senior partner with approximately 35 years of experience, an hourly rate in the $600 range for a partner with only 15 years of experience, an hourly rate of $510 for associates with 11 years of experience, and an hourly rate of $490-$450 for associates with 6-7 years of experience. No. 09-cv-1257-PAB-

---

[3] Defense counsel, Greenberg Traurig LLP, charges hourly rates much higher than those charged by Plaintiffs' counsel. Staci Zaretsky, *The Biglaw Firms With The Highest Partner Billing Rates (2015)*, ABOVE THE LAW (Jan. 6, 2015, 1:01 PM), *available at* https://abovethelaw.com/2015/01/the-biglaw-firms-with-the-highest-partner-billing-rates-2015/2/.

MEH, 2013 WL 4051908, at *6 (D. Colo. Aug. 12, 2013), *reversed on other grounds*, 626 F. App'x 968 (Fed. Cir. 2015). Commercial litigation is analogous to civil rights litigation and no credence should be given to the notion that legal work required in civil rights litigation is "of a different level of complexity or difficulty to that of commercial litigation." *Ryals v. City of Englewood*, 2014 WL 2566288, at *6 (D. Colo. June 6, 2014). Plaintiffs' counsel's rates are reasonable as compared with those of other attorneys in the community.

Lastly, "[e]xperience measured by years of practice is not the only indicator of value. The quality of one's work and its contribution to the result obtained obviously must be considered." *Ryals*, 2014 WL 2566288, at *9 (citing *Ramos*, 713 F.2d at 555). Plaintiffs' counsel's work in this case resulted in a quick and favorable result for their clients in a very public, politically charged, and legally complicated case.

Because Plaintiffs' counsel's rates are consistent with each attorney's experience and ability and are in-line with, if not less than, the average rates for Denver-area civil rights and other civil litigation attorneys of a similar level of effectiveness and experience, they are reasonable.

## V.     Plaintiffs' costs are recoverable.

As mentioned, under the ADA, prevailing parties may recover "a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205. Section 504 allows prevailing parties to recover "a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b).

Plaintiffs incurred $402 in docket fees, $244 in service expenses, and $289.90 for the transcript of the TRO hearing, all of which is recoverable to prevailing parties under Section 12205 of the ADA and Section 794a(b). *See*, *e.g.*, *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1281 (D. Kan. 2016) (awarding filing fees and service expenses under Section

12205); *Am. Home Assur. Co. v. Weaver Aggregate Transport, Inc.*, 89 F. Supp. 3d 1294, 1309 (M.D. Fla. 2015) (awarding cost of hearing transcript). The docket, filing, and service fees are routine expenses in litigation, and the transcript was obtained to prepare for the then-scheduled preliminary injunction hearing. Receipts reflecting these costs are attached as **Exhibit 3**.

Plaintiffs' expert fees for Dr. David Beuther, M.D., are also recoverable.[4] Courts have interpreted "litigation expenses" within Section 12205 of the ADA to include reasonable expert witness fees. *Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002); *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, No. 09-cv-02757-WYD-KMT, 2014 WL 793363, at *4 (D. Colo. 2014) (citing *Lovell*, *supra*, and *Hall v. Claussen*, 6 Fed. App'x 665, 682 (10th Cir. 2001)); *Jones v. Eagle-North Hills Shopping Centre, L.P.*, 478 F. Supp. 2d 1231, 1329 (E.D. Okla. 2007); *see also* James C. Harrington, *The ADA and Section 1983: Walking Hand in Hand*, Review of Litigation, 19 REVLITIG 435, *462 (2000) (quoting legislative history of Section 12205 as intending to include expert fees). Testimony from Dr. Beuther, a leading pulmonologist who is intimately familiar with literature and science associated with COVID-19, and who treats patients with COVID-19 and other pulmonary conditions, was critical to Plaintiffs' case, especially given the need to prove imminent and irreparable harm to the District and its students with underlying health conditions. Dr. Beuther provided a sworn declaration in support of Plaintiffs' Motion for Temporary Restraining Order and testified in court, subject to cross-examination, in support of the District's motion.[5] Dr. Beuther was able to provide thorough and critical testimony, and review

---

[4] Dr. Beuther's fee invoice is enclosed with his declaration, attached hereto as **Exhibit 4**.

[5] Dr. Lindsey Fish also gave critical expert testimony in support of Plaintiffs' Motion for a TRO, but Dr. Fish did not charge and was not provided fees or expenses for her participation in this case.

and rebut the expert opinions of Defendants' expert, Dr. Thompson, in fewer than 20 total hours, which is incredibly efficient given the time demands and factual complexity of this case. He charged $400 per hour, which is consistent with rates charged by other doctor experts with similar training and experience (Beuther Aff., Ex. 4, ¶ 7), and is consistent with hourly rates for medical experts that courts have awarded in costs to prevailing parties. *See, e.g.*, *G.C. v. S. Wash. Cnty. Sch. Dist. 833*, No. 17-CV-3680 (DSD/TNL), 2019 WL 586676, at *104 (D. Minn. Feb. 13, 2019) (awarding medical expert fees to doctors charging $400 and $475 per hour); *A.S. by Svagdis v. Sec'y of Health & Hum. Sers.*, No. 15-520V, 2020 WL 3969874, at *5-6 (Fed. Cl. June 4, 2020) (awarding expert fees for immunologist charging $450 per hour).

## CONCLUSION

WHEREFORE, Plaintiff Douglas County School District RE-1 respectfully requests that this Court grant this Motion and enter an award attorney's fees in the amount of **$87,942** and costs of **$8,302.90**.

Respectfully submitted this 3rd day of December 2021.

s/Elliott V. Hood
Elliott V. Hood, Esq.
John F. Peters, Esq.
CAPLAN AND EARNEST LLC
3107 Iris Avenue, Suite 100
Boulder, Colorado 80301
303-443-8010
ehood@celaw.com; jpeters@celaw.com
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Kelly Dunnaway, Deputy County Attorney
Office of the County Attorney
Douglas County, Colorado
kdunnawa@douglas.co.us

Shelley Thompson, Esq.
April Hendricks, Esq.
Burns Figa & Will, P.C.
sthompson@bfwlaw.com
ahendricks@bfwlaw.com

Christopher J. Neumann, Esq.
Robert S. Fine, Esq.
Robert S. Galbo, Esq.
Elisa H. Baca, Esq.
Greenberg Traurig, LLP
neumannc@gtlaw.com
finer@gtlaw.com
galbor@gtlaw.com
bacae@gtlaw.com

Attorneys for Defendants

*s/Shelley McKinstry*
Shelley McKinstry