UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 21-cv-02818-JLK**

DOUGLAS COUNTY SCHOOL DISTRICT RE-1,
C.B., by and through his parent and next friend, E.B.,
A.R., by and through his parent and next friend, L.R.,
J.G., by and through his parent and next friend, K.G.,
B.A., by and through her parent and next friend, J.A.,
M.M., by and through her parent and next friend, K.M.,
D.B., by and through his parent and next friend, J.B.,
R.P., by and through her parent and next friend, B.H.,
D.W., by and through his parent and next friend, G.W.,
A.L., by and through his guardian and next friend, C.L.,

**Plaintiffs**,

v.

DOUGLAS COUNTY HEALTH DEPARTMENT,
DOUGLAS COUNTY BOARD OF HEALTH,

**Defendants**.

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

Defendants Douglas County Health Department (the "Health Department") and Douglas County Board of Health (the "Board of Health") (collectively, the "Department") by and through their undersigned counsel Greenberg Traurig, LLP submit the following Response to Plaintiffs' Motion for Attorney's Fees and Costs (the "Motion"), and in support state as follows:

**INTRODUCTION**

Douglas County School District RE-1 ("School District") and the individual student plaintiffs ("Individual Plaintiffs") (collectively, "Plaintiffs") are not entitled to recover their

attorneys' fees and costs because they are not the prevailing party in this action. Plaintiffs sought a mask mandate—an order without exceptions that all individuals over two years old wear a face mask when indoors in schools within the School District. However, the School District has abandoned its mask mandate policy, and no longer seeks or supports this relief. The parties jointly stipulated for dismissal of this case as moot before a trial on the merits of Plaintiffs' claims, and Plaintiffs have not won the relief they sought in their Complaint. For this reason, Plaintiffs' motion should be denied.

## **FACTUAL BACKGROUND**

On August 31, 2021 (the "August 31 Order"), the Tri-County Health Department ("Tri-County") issued a public health order requiring that children ages 2-18 wear masks while at school. The School District developed a mask mandate policy adopting the August 31 Order. However, the Douglas County Board of County Commissioners disagreed with this policy and decided to form its own Health Department and to withdraw from Tri-County.

On October 8, 2021, the Department enacted a Public Health Order that permitted individuals, including students in the School District, to request exemption from requirements to wear face coverings if wearing a face covering caused the individual to suffer a negative impact to his or her physical or mental health. *See* **Ex. A**, 10/8/2021 Public Health Order (the "October 8 Order"). The October 8 Order also prohibited the School District from requiring a student to quarantine because of exposure to COVID-19 unless the exposure was associated with a known outbreak or otherwise required by state and federal law. *Id.*

On October 20, 2021, Plaintiffs filed a complaint alleging that the October 8 Order conflicted with the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the

Rehabilitation Act of 1973 ("Section 504"), and shortly thereafter, in order to maintain the status quo pending a trial on the merits, on October 26, 2021, this Court issued a temporary restraining order ("TRO") prohibiting enforcement of the October 8 Order as it pertained to the School District.

In the interim, a week later on November 2, 2021, the Douglas County Board of Education ("Board of Education") held an election to replace four of seven director positions. A slate of so-called "Kids First" candidates, including Mike Peterson, Becky Myers, Christy Williams and Kaylee Windegar, ran against two incumbents and two new candidates calling themselves the "CommUNITY Matters" candidates.[1] Each of the Kids First candidates campaigned expressly in support of the policy position that parents should decide whether their children wear face masks at school, and each of the CommUNITY Matters candidates campaigned in support of the converse policy position that face masks must be mandated without exception in schools.[2] After the polls closed, it became clear that the newly-elected directors, upon taking the oath of office on December 3, 2021, would implement new School District mask and quarantine policies similar to those set forth in the October 8 Order allowing exceptions that would grant parents the choice as to whether their children should wear masks or quarantine.[3] As soon-to-be president of the Board of Education, Mike Peterson, explained, the

---

[1] *See* Jessica Gibbs, *Douglas County's conservative challengers likely to win school board race*, The Colorado Sun (Nov. 2, 2021) (accessed at, https://coloradosun.com/2021/11/02/douglas-county-school-board-election-results-2021/).

[2] *See Colorado Community Media, Election 2021 Q&As: Douglas County school board* (Oct. 7, 2021) (accessed at, https://coloradocommunitymedia.com/stories/election-2021-qampas-douglas-county-school-board,383119/p/stories/election-2021-douglas-county-voters-guide,383148).

[3] *See* Ivan Rodriguez, *Douglas County School Board members speak out after election night victory*, The Denver Channel.com (Nov. 3, 2021) (accessed at, https://www.thedenverchannel.com/news/local-news/douglas-county-school-board-members-speak-out-after-election-night-victory).

newly-elected Board of Education's intention would be "to bring back choice for parents relative to their students and choice to teachers to make their own decisions, and that goes for masking and for vaccinations." *Id.*

Following the election, on November 12, 2021, the Department issued a revised Public Health Order, that largely mirrored the October 8 Order. *See* **Ex. B**, 11/12/2021 Public Health Order (the "November 12 Order"). But in order to eliminate the further needless expenditure of resources on this lawsuit, and in anticipation of the Board of Education issuing new masking and quarantining policies consistent with the October 8 Order, the Department drafted the November 12 Order to exempt the School District from its purview.

On November 19, 2021, with the basis for the instant action now mooted, the parties jointly stipulated to voluntarily dismiss Plaintiffs' lawsuit with prejudice.

As expected, on December 7, 2021, at its first meeting the newly-constituted Board of Education entered its first resolution honoring the campaign promises of the Kids First candidates stating, in part, that: "[t]he Board recommends, regardless of vaccination status, personal and parent choice with respect to whether or not children should wear face coverings while at school, while also allowing for appropriate and necessary accommodation of students with disabilities as required by the ADA and Section 504." *See* **Ex. C**, Resolution. To achieve this policy goal, the Board of Education abandoned previous School District policies requiring universal mandatory masking of students and staff, and required that exemptions be allowed in any instances where masking was to be implemented. *Id.*

On December 8, 2021, to announce this acquiescence to the policies incorporated by the Department in its October 8 and November 12 Orders, the School District's Superintendent,

Corey Wise, published a letter to all School District families stating that: "[E]ffective immediately, DCSD's mask requirement is no longer in effect. DCSD will honor personal and parent choice with regard to mask-wearing at school." See **Ex. D**, Wise Letter.

Thus, the School District has now come full-circle and has adopted the very policies that Plaintiffs sought to proscribe by commencing this lawsuit.

## LEGAL STANDARD

Under the "American Rule," parties are ordinarily required to bear their own attorneys' fees, and courts follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority. *See Key Tronic Corp. v. U.S.*, 511 U.S. 809, 809 (1994). Pursuant to the ADA, "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, ***may allow*** the ***prevailing party***, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . .." 42 U.S.C. § 12205 (emphasis added). To qualify as a prevailing party, a plaintiff must obtain at least some relief on the merits of his claim. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). In short, a plaintiff "prevails" when actual relief on the merits of his claim "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.*

With respect to a TRO, a TRO alone does not constitute prevailing on the merits where the TRO did no more than preserve the status quo. *See Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223 (7th Cir. 1995); *see also Bly v. McLeod*, 605 F.2d 134, 137 (4th Cir. 1979) (holding that party obtaining TRO was not a "prevailing party" because the particular TRO in question only preserved the status quo); *Paragould Music Co. v. City Paragould*, 738 F.2d 973,

974 (8th Cir. 1984) (same). There must be a judicially-sanctioned alteration in the legal relationship between the parties before a plaintiff can be deemed a prevailing party entitled to attorney fees. *Kansas Jud. Watch v. Stout*, 653 F.3d 1230 (10th Cir. 2011). A preliminary injunction that "does not provide a plaintiff with relief on the merits of her claim cannot serve as the basis for prevailing party status." *Biodiversity Conservation All. v. Stem*, 519 F.3d 1226, 1232 (10th Cir. 2008). The United States Supreme Court has held that "[t]he touchstone of the prevailing party inquiry is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 75 (2007).

## ARGUMENT

As of December 7, 2021, face coverings for students are optional in the School District because the Board of Education passed a Resolution prohibiting the School District from instating universal masking or COVID-19 vaccination or quarantine policies. *See* **Ex. C**, Resolution. This outcome aligns with the Department's policies that Plaintiffs challenged in this action. Plaintiffs thus have not achieved the purpose of their lawsuit nor any lasting success on the merits, and therefore are not a prevailing party.

In the Court's order granting Plaintiffs' request for a TRO, the Court ordered that the TRO would expire on November 8, 2021, and that the Court would later hold a hearing regarding a preliminary injunction. The parties never reached the stage of a preliminary injunction hearing because, understanding that the November 2, 2021 Board of Education election results would likely be dispositive of the outcome of this litigation, the parties agreed to extend the preliminary injunction hearing to allow them to discuss whether there would be a

continued need for litigation in the wake of the election. After the newly-elected board members who ran as a slate opposing face mask mandates announced that they intended to withdraw any School District policies mandating face masks, the Department modified its October 8 Order to make clear it would not apply to schools and recommended that the Board of Education adopt new policies abandoning mask mandates. *See* **Ex. B,** November 12 Order, at 4. In response, the School District directed Plaintiffs to voluntarily dismiss this action and the Board of Education promptly issued its first resolution abandoning mask mandates.

Under these circumstances, Plaintiffs cannot be considered a "prevailing party" because they did not fulfill the purpose of their lawsuit—which was to require universal masking in schools and to implement quarantines consistent with CDPHE and Tri-County guidance. *See* ECF 1, at 9; Mot., at 9 (arguing just days before the newly-elected Board of Education's first meeting that plaintiffs had won relief allowing the District to "return to managing communicable diseases, namely COVID-19, under its Policy JLCC, requiring face coverings and limited quarantining consistent with [Tri-County] and [CDPHE] guidance."). Moreover, obtaining a 14-day TRO[4] pending a preliminary injunction hearing is insufficient to warrant prevailing party status because this relief only preserved the status quo and did not decide the merits of the case. Finally, even if Plaintiffs' legal efforts served as a catalyst of change within the Department— which it did not—such a showing is not enough to render Plaintiffs a prevailing party.[5] For these reasons, the Court should deny Plaintiffs' request that the Department pay its attorneys'

---

[4] The TRO was extended once under Rule 65(b)(2) for an additional 14 days.
[5] The "catalyst theory," which posits that a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct, is not a permissible basis for the award of attorney's fees under the ADA. *See Buckhannon Bd. and Care Home, Inc. v. W. Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 598 (2001).

fees and costs.

### 1. Plaintiffs Are Not A "Prevailing Party" Because They Did Not Achieve Any of The Relief Sought In Their Complaint.

Plaintiffs cannot be considered a "prevailing party" in this action because they did not achieve any lasting relief that they sought in their Complaint. In their Motion, Plaintiffs rely primarily on *Kansas Judicial Watch*, 653 F.3d 1230 (10th Cir. 2011), to support the contention that they are entitled to recover their attorneys' fees and costs. But this reliance is misplaced because the plaintiffs in *Kansas Judicial Watch* achieved the permanent and substantial relief they sought in their complaint, whereas the Plaintiffs here did not. In *Kansas Judicial Watch*, a group of judicial candidates seeking to be popularly elected challenged Kansas's Code of Judicial Conduct (the "Code") that prohibited judicial candidates from making certain kinds of pledges and commitments and from personally soliciting support for their campaigns. *Id.* at 1232. The judicial candidates obtained a preliminary injunction, and the district court found each of the pledges, commitments, and solicitation clauses set forth in the Code unconstitutional on their face. *Id.* at 1233. Approximately one month later, the Kansas Supreme Court eliminated the solicitation clause and dramatically narrowed the pledges and the commitments clauses. *Id.* at 1234.

The district court refused to award the judicial candidates their attorneys' fees, but the Tenth Circuit reversed this judgment and remanded the issue for further proceedings, confirming that "the critical inquiry is whether 'the plaintiff has succeeded on *any significant issue* in litigation which achieved some of the benefit the parties sought in bringing suit.'" *Id.* at 1240 (emphasis in original). Recognizing that the *Kansas Judicial Watch* plaintiffs had achieved the relief they sought by winning the preliminary injunction and ultimate policy changes enacted by

8

the Kansas Supreme Court—allowing them to make certain pledges, commitments and solicitations—the Tenth Circuit held the judicial candidates were "prevailing parties" within the meaning of 42 U.S.C. § 1988 because they "materially altered the legal relationship between the parties" by winning their sought-after relief.  *Id.*

Unlike the judicial candidates in *Kansas Judicial Watch* who caused permanent change in the Kansas Supreme Court's Code of Judicial Conduct, Plaintiffs here did not effectuate any of their intended results or achieve the relief they sought on the merits of their claims.  Plaintiffs did not merely seek a TRO exempting the School District from the October 8 Order for 14 days; they sought "immediate and permanent relief against this illegal DCHD PHO and with it the ability to require universal masking in schools and to implement quarantines consistent with CDPHE and TCHD guidance."  *See* ECF 1, at 9.  But Plaintiffs did not obtain permanent relief from the Court, and they quickly abandoned the policies their lawsuit sought to achieve.

Following the TRO hearing and election of the Board of Education, the Department enacted the November 12 Order which virtually mirrors the October 8 Order.  *Compare* **Ex. A** with **Ex. B**.  The School District, through the Board of Education, then voluntarily loosened its own face covering and quarantine requirements by Resolution on December 7, 2021.  *See* **Ex. C**, Resolution.  Although the November 12 Order exempts the School District from the challenged October 8 Order, the exemption is meaningless because the School District's Resolution aligns with the October 8 Order by requiring that "[u]nless otherwise required by federal, state, or local law and/or public health order, there shall be no District policy requiring universal mandatory masking of students or staff." *Id.*  Thus, the opposite relief from what Plaintiffs sought is now in effect within the School District.  Having acquiesced in this outcome, Plaintiffs did not succeed

9

on any significant issue raised in their Complaint and have not achieved any of the lasting benefit they sought in bringing suit. Consequently, under the *Kansas Judicial Watch* test, Plaintiffs are not the prevailing party and are not entitled to recovery their attorneys' fees and costs.

### 2. The Court's TRO Only Preserved The Status Quo Pending a Preliminary Injunction Hearing And, Thus, Plaintiffs Are Not Entitled to Attorneys' Fees and Costs.

By obtaining TRO pending a hearing on a preliminary injunction, Plaintiffs accomplished nothing more than temporarily preserving the status quo before voluntarily dismissing this lawsuit as moot. The Tenth Circuit addressed a similar situation in *Biodiversity,* a case in which the plaintiff obtained a preliminary injunction and subsequently dismissed its case as moot and the court did not declare it a prevailing party. *See Biodiversity,* 519 F.3d at 1226. In *Biodiversity*, the plaintiff Biodiversity Conservation Alliance ("BCA") obtained a preliminary injunction in its action challenging a project that included a sale by United States Forest Service ("Forest Service") of several thousand acres of timber in the Black Hills National Forest. *Id.* After concluding that there would be no significant environmental impact from the Cement Project in the Black Hills, the Forest Service authorized the timber sale. *Id.* BCA filed suit claiming that the Forest Service's actions with regard to the Cement Project violated the National Environmental Policy Act ("NEPA") and the Administrative Procedures Act ("APA") because the Forest Service failed to evaluate a reasonable range of alternatives and failed to sufficiently consider the direct, indirect, and cumulative impacts of the Cement Project. *Id.* at 1228. BCA moved for a preliminary injunction to halt the imminent timber sale, and the Court granted the request partially because "the equities tip[ped] heavily towards [BCA]" and that

BCA would suffer irreparable injury "due to the possibility of species loss." *Id.* The district court determined that BCA was a prevailing party and awarded it $175,569.24 in attorney's fees because (1) the Forest Service represented that the project had been permanently withdrawn and would never be revived; and (2) the district court claimed BCA had obtained affirmative relief by obtaining a preliminary injunction against the Forest Service, which put a stop to the imminent sale of timber on Forest Service lands. *Id.* at 1229.

The Tenth Circuit reversed, explaining that neither reason was sufficient to support a finding that BCA was a "prevailing party." *Id.* As to the first point, the Tenth Circuit held that BCA was not the prevailing party because the law requires "more than a mere judicial statement favoring one party;" instead, the court must "lend judicial teeth to the merits of the case," and the district court's order dismissing the case as moot gave BCA "no rights to enforce the merits of the decision." *Id.* at 1230. As to the second point, the Tenth Circuit held that simply obtaining a preliminary injunction is insufficient to establish prevailing party status absent a showing that BCA obtained relief on the merits. *Id.* at 1232. It went on to hold that "[t]he injunction did not prevent the Forest Service from continuing to meet and plan in regards to the Cement Project," and thus the preliminary injunction did not serve to make BCA a "prevailing party." *Id.*

Similar to *Biodiversity*, Plaintiffs dismissed their case as moot, they did not obtain a judgment on the merits, and the Court did not "lend judicial teeth" to the issue of whether the School District could require universal masking in schools or implement certain quarantine requirements for students. Plaintiffs did not even accomplish as much as BCA did in *Biodiversity* because Plaintiffs did not obtain a preliminary injunction (BCA succeeded in

11

obtaining a preliminary injunction pending a determination on the merits). Rather, Plaintiffs only obtained a 14-day TRO and did not even reach the preliminary injunction hearing before voluntarily dismissing the action with prejudice.

What's more, the School District has since changed its position and is no longer interested in the relief it sought in the lawsuit. Within six weeks after Plaintiffs dismissed their Complaint, the Board of Education issued new science-backed guidelines for COVID-19 guidance in the School District beginning in January 2022. *See* **Ex. E**, Douglas County Covid Guidance: January 2022. The School District also adopted a "Who Needs to Quarantine?" flowchart for students, teachers, and staff in the school setting. *See* **Ex. F**, Who Needs to Quarantine? Flowchart. Both the Covid Guidance and the Quarantine Flowchart provide detailed instructions about how the School District should combat COVID-19 in schools and, notably, neither requires universal masking or Tri-County's quarantine procedures. Thus, Plaintiffs not only fell short of succeeding on the merits of their Complaint; Plaintiffs don't even want the relief they originally sought.

Finally, the court in *Biodiversity* refused to declare BCA a prevailing party because, although BCA obtained a preliminary injunction, the district court did not make a determination on the merits that the Cement Project was in violation of NEPA or the APA. Similarly, the Court's order granting a TRO did not make a lasting determination on the merits as to whether the October 8 Order violated the ADA or Section 504. As this Court explained in ruling on the motion for TRO, at the preliminary injunction hearing Defendants would "be given an additional opportunity to oppose issuance of a preliminary injunction," and the Court would "reconsider the matters before [it]." Order Granting Mot. for TRO, at 12 (Oct. 26, 2021). Under

12

*Biodiversity*, a plaintiff must show something more than a "judicial statement favoring one party" or obtaining the temporary relief of a TRO to be entitled to recover attorneys' fees and costs under 42 U.S.C.A. § 12205. *Biodiversity*, 519 F.3d at 1230. Absent a showing that Plaintiffs achieved their requested relief on the merits, they cannot be a "prevailing party."

    3.  **Obtaining A TRO Just Prior To Case Becoming Moot Is Not Grounds for Attorneys' Fees.**

Finally, a party who obtains a restraining order just prior to a case becoming moot is not a "prevailing party" for purposes of recovering her attorneys' fees. *See Libby v. Illinois High School Assoc.*, 921 F.2d 96 (7th Cir. 1990). In *Libby*, the Seventh Circuit addressed the question "whether a party who obtains a temporary restraining order just prior to a case becoming moot can nonetheless be a 'prevailing party' for purposes of an award of attorney's fees." *Id.* at 97. The plaintiff Tanya Libby ("Libby"), a female high school student soccer player, brought a civil rights suit for injunctive and declaratory relief challenging rules prohibiting her from playing soccer on the boys' team because her high school did not have a girls' soccer team. *Id.* Several TROs were entered in Libby's favor, requiring the high school to allow Libby to participate in an Illinois soccer tournament as a member of her high school's boys' team, and the district court held that Libby had a likelihood of success on the merits of her claim. *Id.* at 99.

The TROs remained in effect while the court considered her motion for a preliminary injunction. *Id.* at 98. The next day, with Libby as a member of the boys' soccer team, the team lost in the opening round of the tournament, and the motion for a preliminary injunction became moot. *Id.* By the following spring, Libby's high school fielded two girls' soccer teams, one of which Libby played on, and her complaint became moot. *Id.* The Seventh Circuit affirmed the district court's denial of fees in *Libby* because the district court had not ruled on the merits of the

13

claim in granting Libby's request for the TRO.

Here, Plaintiffs circumstances are nearly identical to those in *Libby*. Plaintiffs obtained a TRO pending a hearing on a requested preliminary injunction and, before that hearing could occur, the relief Plaintiffs sought became moot. And like *Libby*, a change in circumstances following the Court's entry of a TRO, and before the parties had an opportunity to argue a preliminary injunction, rendered this lawsuit moot. Similar to Libby's high school soccer team losing in the first round of the playoffs, the prospective Board of Education candidates who campaigned on the promise to oppose the October 8 Order lost their bid to become directors on the Board of Education. And similar to the high school in *Libby* that subsequently created girls' soccer teams following the lawsuit, the Board of Education passed a Resolution that prohibits the School District from instating universal masking or COVID-19 vaccination or quarantine policies. As a result, Plaintiffs did not accomplish any relief sufficient to be the "prevailing party" and thus are not entitled to recovery its attorneys' fees and costs from the Department.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that the Court deny Plaintiffs' Motion for Attorneys' Fees and Costs for the reasons set forth above, and for such further and other relief as the Court deems just and proper.

Respectfully submitted this 21st day of January 2022.

/s/ *Christopher J. Neumann*
Christopher J. Neumann
GREENBERGTRAURIG, LLP
1144 15th Street, Suite 3300
Denver, CO 80202
(303) 572-6500
neumannc@gtlaw.com

Robert S. Fine
Robert S. Galbo
Elisa H. Baca
GREENBERG TRAURIG LLP
333 South East 2nd Avenue, Suite 4400
Miami, FL 33131
(305) 579-0826
finer@gtlaw.com
galbor@gtlaw.com
bacae@gtlaw.com

Kelly Dunnaway
DOUGLAS COUNTY ATTORNEY'S OFFICE
100 Third Street
Castle Rock, CO 80104
(303) 660-7414
kdunnawa@douglas.co.us

*Counsel for Defendants*

15

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 21st day of January 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF with service to the following counsel of record:

John F. Peters
Elliot V. Hood
CAPLAN & EARNEST LLC
3107 Iris Avenue, Suite 100
Boulder, CO 80301
(303) 443-8010
jpeters@celaw.com
ehood@celaw.com

*Counsel for Plaintiffs*

                                            */s/ Christopher J. Neumann*
                                            Christopher J. Neumann