IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02818-JLK

DOUGLAS COUNTY SCHOOL DISTRICT RE-1,
C.B., by and through his parent and next friend, E.B.,
A.R., by and through his parent and next friend, L.R.,
J.G., by and through his parent and next friend, K.G.,
B.A., by and through her parent and next friend, J.A.,
M.M., by and through her parent and next friend, K.M.,
D.B., by and through his parent and next friend, J.B.,
R.P., by and through her parent and next friend, B.H.,
D.W., by and through his parent and next friend, G.W.,
A.L., by and through his guardian and next friend, C.L.,

    Plaintiffs,

v.

DOUGLAS COUNTY HEALTH DEPARTMENT,
DOUGLAS COUNTY BOARD OF HEALTH,

    Defendants.

---

**MEMORANDUM OPINION AWARDING ATTORNEY FEES AND COSTS**

---

Kane, J.

On December 3, 2021, Plaintiff Douglas County School District RE-1 (the "School District") filed a Motion for Attorney's Fees and Costs (ECF No. 45).[1] The Response in Opposition to the Motion (ECF No. 50) filed by Defendants Douglas County Health Department and Douglas County Board of Health contests Plaintiff's status as the prevailing party in this litigation but does not address the reasonableness of the requested fees. I find Plaintiff has

---

[1] Douglas County School District RE-1 is the only plaintiff entitled to a fee award because it agreed to pay the costs and fees of litigation on behalf of all plaintiffs. *See* Mot. for Attorney's Fees at 3.

1

prevailed for purposes of the relevant fee-shifting statutes. For the reasons that follow, I award the School District reasonable attorney fees and costs in the total amount of $95,134.40.[2]

## I. BACKGROUND

At the start of the 2021-22 school year, Colorado was entering the fifth wave of the COVID-19 pandemic. The School District recommended that all individuals, regardless of vaccination status, wear a mask indoors while in public places. Undergirding this recommendation was the School District's "Policy JLCC," which directed it to manage communicable diseases pursuant to guidance from either the Tri-County Health Department (the "TCHD") or the Colorado Department of Public Health and Environment (the "CDPHE"). *See* Policy JLCC at 1, ECF No. 3-17. In accordance with Policy JLCC, the School District also followed TCHD and CDPHE guidance on the implementation of quarantines. *See, e.g.*, CDPHE,

---

[2] The fee provisions at issue in this case should have been expressed as "attorney fees," rather than "attorney's fees." This correction may be regarded as excessively Pecksniffian because of the ubiquitous misuse of the possessive noun "attorney's." When in the phrase "attorney fees," the word "attorney" appears as an adjective modifying the word "fees." Such misuse, however, reflects and perhaps causes a serious cognitive error producing bad law. Specifically, as stated in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, fee-shifting statutes such as the ones applying here
> were not designed as a form of economic relief to improve the financial lot of attorneys . . . . Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws.

478 U.S. 546, 565 (1986). In sum, the fee and the claim belong to the litigant and not to the litigator. *See, e.g.*, S. Rep. No. 94-1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910 ("In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate . . . fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court."). If the opposite were true, then a denial of a motion for attorney fees would mean the attorney is entitled to nothing—a result neither intended nor one lawyers would devoutly wish. In this Opinion, I will quote the misuse as submitted, but will not use it in content.

*Practical Guide for Operationalizing CDC's School Guidance* (Aug. 1, 2021), https://covid19.colorado.gov/practical-guide-for-operationalizing-cdc-school-guidance ("In classroom settings, CDPHE recommends quarantine . . . for students, teachers, and staff who don't meet vaccination requirements . . . and were within six feet for 15 minutes or more of an infected individual if either the infected individual or the contact were unmasked during the exposure.").

When the highly contagious Delta variant of COVID-19 began surging in Colorado, the TCHD issued a public health order that required all individuals in its jurisdiction aged two years and older to wear masks in any indoor setting, with limited exceptions for medical necessity. *See* TCHD, *Public Health Order Requiring Facial Coverings for All Individuals Aged 2 Years and Older in Schools and Child Care Settings*, 3 (Aug. 31, 2021), https://www.tchd.org/DocumentCenter/View/9457. A week later, the Douglas County Board of County Commissioners voted to withdraw from the Tri-County Health Department—a public health department that had encompassed Douglas County and two others since 1966—and to create the Douglas County Health Department (the "DCHD"). By mid-September, the Board of County Commissioners established the Douglas County Board of Health, and on October 8, 2021, the DCHD issued its first public health order (the "Public Health Order"). DCHD, *Public Health Order Allowing Exemptions from Facial Coverings and Preventing Quarantining of Asymptomatic Individuals* (October 8, 2021), ECF No. 3-1. The Public Health Order was applicable countywide. Of concern to the School District, the Order allowed parents to exempt their children from the TCHD mask requirement without proof of medical necessity, and it vastly curtailed the School District's ability to utilize quarantines to curb the spread of the disease.[3]

---

[3] The Public Health Order prohibited the School District from imposing a quarantine on an

On October 20, 2021, the School District and nine School District students with disabilities ("Student Plaintiffs," and collectively "Plaintiffs") filed a Complaint asserting the Public Health Order violated their civil rights under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. In bringing this lawsuit, Plaintiffs sought declaratory and injunctive relief, contending the Public Health Order discriminated against students with disabilities because it prevented the School District from granting the reasonable accommodations necessary to provide Student Plaintiffs with meaningful access to the School District's programs and services in violation of the ADA and Section 504. Plaintiffs moved for a temporary restraining order and preliminary injunction to restrict Defendants from enforcing the Public Health Order throughout Douglas County. *See* Mot. for Temp. Restraining Order at 38, ECF No. 3. They asked that the Public Health Order be enjoined "immediately." *Id.* at 37.

Defendants received a copy of the pleadings and Plaintiffs' Motion for a Temporary Restraining Order or Preliminary Injunction the day they were filed with the court. Courts are permitted to issue temporary restraining orders without notice to the adverse party through an *ex parte* proceeding, *see* Fed. R. Civ. P. 65(b), but I declined to do so in this case.[4] Instead, a hearing was held on October 25 and 26, 2021. Defendants filed a written response to the Motion and participated in the hearing. Defendants cross-examined Plaintiffs' six witnesses and

---

individual who had been "expos[ed] to a known COVID-19 positive case unless the exposure [wa]s associated with a known Outbreak . . . ." Public Health Order at 3. There were also limits to the duration of any quarantine imposed. *Id.*

[4] "When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2951 (3d ed. 2021).

presented testimony from three witnesses of their own. At the conclusion of the hearing, I issued a temporary restraining order after finding "Plaintiffs can likely establish that the October 8, 2021 Public Health Order is preempted by Title II of the ADA and Section 504 of the Rehabilitation Act, and that the effect of the Order is to illegally deprive Student Plaintiffs of equal access to the School District's services to the fullest extent possible." Temp. Restraining Order at 8, ECF No. 26. The scope of the Temporary Restraining Order was narrower than Plaintiffs requested: rather than applying to the entire County, it enjoined Defendants from enforcing the Public Health Order only as it pertained to the School District. *Id.* at 12.

The parties later agreed to extend the Temporary Restraining Order to November 22, 2021. *See* Defs.' Mot. to Continue at 2, ECF No. 31. In their request for a continuance of the preliminary injunction hearing that had been scheduled for November 8, 2021, Defendants stated their desire to combine the preliminary injunction hearing with a trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). Defendants also expressed that they were "keenly aware of the gravity of a federal court order finding their [Public Health Order] problematic," and they were engaged in "preliminary discussions about withdrawing the [Public Health Order]" which would likely render the case moot. *Id.* at 2-3. According to Defendants, the primary cause for delay was that state laws only permitted the Douglas County Board of Health to withdraw the Public Health Order during a public meeting, and the next such meeting was not scheduled until November 10, 2021. *Id.* at 2. Defendants referenced the election of four new members to the Douglas County School Board on November 2, 2021, but failed to explain the relevance of that election to the imminent preliminary injunction hearing. *Id.* I granted the continuance and converted the preliminary injunction hearing to a status conference.

The case did not proceed to a preliminary injunction hearing because Defendants issued a new public health order consistent with the terms of the Temporary Restraining Order. Issued on November 12, 2021, the new order "exempt[ed] the Douglas County School District from [its] provisions." *See* Joint Stipulation of Dismissal at 1, ECF No. 43. As a result, Plaintiffs agreed to dismiss the case. The School District then filed the present motion, asserting that it is the prevailing party because the Temporary Restraining Order "fulfilled the purpose of this lawsuit" by granting partial relief on the merits and by compelling Defendants to issue the modified public health order. Mot. for Attorney's Fees at 2. Defendants disagree, arguing the Temporary Restraining Order "does not constitute prevailing on the merits where [it] did no more than preserve the status quo." Resp. to Mot. for Attorney's Fees at 5, ECF No. 50.

## II. LEGAL STANDARD

"In any action or administrative proceeding commenced pursuant to [the ADA], the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205. Likewise, "[i]n any action or proceeding to enforce or charge a violation of a provision of [Section 504], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a. To be eligible for a fee award under the ADA or Section 504, a plaintiff must first cross the "statutory threshold" of prevailing party status. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Once that threshold has been crossed, "the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award *vel non*." *Texas State Teachers Ass'n v. Garland Independent School District (TSTA)*, 489 U.S. 782, 793 (1989).

### III. ANALYSIS

On October 26, 2021, I issued the Temporary Restraining Order that granted Plaintiffs the relief they sought in their motion. The Order included an unambiguous decree of Plaintiffs' likelihood of success on the merits and enjoined Defendants from enforcing the Public Health Order within the School District. When Defendants amended the Public Health Order on November 12, 2021, by permanently removing the School District from its application, Plaintiffs received the precise relief they sought and agreed to dismiss the case as moot.[5] Under these circumstances, Plaintiffs are the prevailing party, and an award of reasonable attorney fees and costs is appropriate. The fees and costs requested by the School District are reasonable, with the exception of all fees related to the preparation of Plaintiffs' engagement agreement. I therefore grant the motion in part.

*A. Prevailing Party*

"The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *TSTA*, 489 U.S. at 792–93. To qualify as the prevailing party, a plaintiff is neither required to litigate a case to final judgment nor demonstrate success on every claim. *See Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (describing circumstances in which a "plaintiff is deemed to have prevailed despite the absence of a formal judgment"); *Hensley*, 461 U.S. at 431 (addressing "proper standard for setting a fee award where the plaintiff has achieved only limited success").

---

[5] Despite the case being dismissed as moot, this court retains jurisdiction to rule on a motion for attorney fees and costs. *Dahlem v. Board of Education*, 901 F.2d 1508, 1511 (10th Cir. 1990).

While a dismissal for mootness does not preclude a finding that a plaintiff has prevailed, *see Dahlem*, 901 F.2d at 1512, a defendant's voluntary change in conduct *alone* "lacks the necessary judicial *imprimatur*," even if the change is compelled by the lawsuit and accomplishes precisely what the plaintiffs sought to achieve. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605, 610 (2001) (dispensing with the catalyst theory as a permissible basis for awarding attorney fees).

In *Kansas Judicial Watch v. Stout*, the Tenth Circuit provided clear guidelines for determining whether a plaintiff who obtains a preliminary injunction is eligible for an award of attorney fees as the prevailing party when events outside the plaintiff's control moot the case. 653 F.3d 1230 (10th Cir. 2011). In doing so, it stated that a preliminary injunction "is a form of court-ordered relief. . . . [that] carries all the 'judicial imprimatur' necessary" to confer prevailing party status. *Kansas Judicial Watch*, 653 F.3d at 1237 (quoting *Watson v. County of Riverside*, 300 F. 3d 1092, 1096 (9th Cir. 2002)).[6] Like the preliminary injunction in *Kansas Judicial Watch*, the Temporary Restraining Order in this case carries the necessary judicial imprimatur to confer prevailing party status because it was not the product of an *ex parte* hearing.[7]

---

[6] Although *Kansas Judicial Watch* conducted the prevailing party analysis in the context of a fee request made pursuant to 42 U.S.C. § 1988, the analysis is the same for requests made pursuant to § 12205 of the ADA. *See Buckhannon*, 532 U.S. at 602–03 (applying § 1988 precedent to analysis of request for attorney fees under the ADA). The language authorizing attorney fees in 29 U.S.C. § 794a is similar to that of § 12205, so I consider the analysis to be appropriate for fee requests made under the ADA and Section 504. *See id.* at 603 (recognizing the phrase "prevailing party" as a term of art); *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 8 (1st Cir. 2011) ("The concepts that shape the term [prevailing party] apply broadly to the entire universe of federal fee-shifting statutes.").

[7] Federal Rule of Civil Procedure 65(b) applies to temporary restraining orders specifically, but it discusses only those issued "without notice." Rule 65 does not address temporary restraining orders issued after notice and a hearing. At the start of the hearing on October 25, I explained it was my practice to require that notice be given to the opposing party as well as an opportunity to participate in the temporary restraining order hearing whenever circumstances permit. That practice made those particular provisions of Rule 65(b) inapplicable to the Temporary

The Temporary Restraining Order in this case was indisputably issued after Defendants received notice and participated in a hearing. Defendants received a copy of the Motion for a Temporary Restraining Order the day it was filed with the court. Counsel for Defendants entered their appearance the next day. Defendants responded to the Motion with a thorough and well-reasoned brief, along with four exhibits. At the start of the hearing, I explained that it is my practice to ensure notice is given to the adverse party as well as an opportunity to participate in a temporary restraining order hearing whenever circumstances permit. I then acknowledged that circumstances so permitted in this case. The hearing lasted most of the day on October 25, and was continued to the next day.

I therefore consider whether there is any meaningful difference between a preliminary injunction and a temporary restraining order that is not issued on an *ex parte* basis. A temporary restraining order issued after notice and a hearing possesses two characteristics that distinguish it from a preliminary injunction: It is shorter in duration, *see* Fed. R. Civ. P. 65(b)(2), and it is generally not appealable, *see Tooele County v. United States*, 820 F.3d 1183, 1185 (10th Cir. 2016).[8] These distinguishing factors are insignificant in the prevailing party analysis. First, there is no requirement in the statutes or the controlling precedent that the injunctive relief be of any minimum duration to confer prevailing party status. Second, unless the adverse party consents to an extension, a temporary restraining order converts to an appealable preliminary injunction once

---

Restraining Order I issued after notice and a hearing. Authority for such a practice is found in Rule 83(b). *See also supra* note 4.

[8] Another distinguishing factor is that a temporary restraining order hearing cannot be combined with a trial on the merits whereas a preliminary injunction can, *see* Fed. R. Civ. P. 65(a)(2), but I do not mention this distinction above because the applicable cases only discuss preliminary injunctions issued after a hearing that was not combined with a trial on the merits. *See Sole v. Wyner*, 551 U.S. 74, 86 (2007); *Kansas Judicial Watch*, 653 F.3d 1230; *Dahlem*, 901 F.2d 1508.

it is extended by the court past the statutory limit of 28 days. *Sampson v. Murray*, 415 U.S. 61, 86 (1974).

Meanwhile, the standards for obtaining a temporary restraining order are the same as those for a preliminary injunction. *See Winnebago Tribe of Nebraska v. Stovall*, 205 F. Supp. 2d 1217, 1221 (D. Kan. 2002), *aff'd*, 341 F.3d 1202 (10th Cir. 2003). For both forms of temporary injunctive relief, the movant must establish that: "(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). Thus, I find no meaningful distinction between a preliminary injunction and the Temporary Restraining Order in this case. I therefore look to the guidelines provided by the Tenth Circuit in *Kansas Judicial Watch*.

The plaintiffs in *Kansas Judicial Watch* challenged provisions of the Kansas Code of Judicial Conduct which limited campaign activity by judicial candidates. The district court granted a preliminary injunction. While the injunction was on appeal, the Kansas Supreme Court amended the code, revising the challenged provisions. The case was dismissed as moot and the district court denied the plaintiffs' motion for attorney fees after finding that the legal relationship between the parties had not been materially altered. The Tenth Circuit reversed, holding that a preliminary injunction can serve as the basis for prevailing party status if it provides "at least some relief on the merits of the plaintiff's claim(s)." *Id.* at 1238. To do so, the injunction must (a) provide the type of relief sought in a complaint and (b) include "an unambiguous indication of probable success" following a "serious examination of the plaintiff's likelihood of success on the merits." *Id.* The Court further explained that even if a preliminary

injunction satisfies both relief-on-the-merits prongs, the plaintiff has not prevailed if the injunction is later undone by an adverse decision on the merits. *Id.*; *see also Sole*, 551 U.S. at 86 ("A plaintiff who secures a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against her, has won a battle but lost the war." (internal alterations and quotation marks omitted) (quoting *Watson*, 300 F.3d at 1096)).

Applying the *Kansas Judicial Watch* analysis to these circumstances, I first note that the Temporary Restraining Order was not undone by an adverse decision on the merits. Instead, the case was rendered moot when, "[o]n November 12, 2021, the Douglas County Board of Health issued an order amending and superseding its October 8, 2021 public health order . . . [by] exempting the Douglas County School District from the provisions of the superseding order." Joint Stipulation of Dismissal at 1. That superseding order provided Plaintiffs the permanent relief they sought by bringing suit.

I next consider whether the Temporary Restraining Order provided "at least some relief on the merits" of the Plaintiffs' claim. To make that determination, I must assess whether the Order (a) provided the type of relief sought in the Complaint and (b) included "an unambiguous indication of probable success" following a "serious examination of the plaintiff's likelihood of success on the merits." *Kansas Judicial Watch*, 653 F.3d at 1238. It did both.

In their Complaint, Plaintiffs sought a declaratory judgment stating the October 8 Public Health Order violated the ADA and Section 504 and was preempted by those laws, and they sought to enjoin Defendants from enforcing the Public Health Order both temporarily and permanently. The Temporary Restraining Order prohibited enforcement of the Public Health Order from October 26 until November 19, when the case was dismissed as moot. Thus, Plaintiffs received the precise form of temporary injunctive relief sought in the Complaint. While

11

they did not receive a permanent injunction, Defendants' actions in modifying the problematic Public Health Order to exclude the School District made a permanent injunction unnecessary. Although no declaratory judgment was issued, the School District was not required to litigate the case to completion to cross the prevailing party threshold. *See Hewitt*, 482 U.S. at 761.

Defendants argue that *Kansas Judicial Watch* is inapplicable because the relief afforded by the Temporary Restraining Order was not permanent or substantial. Resp. to Mot. for Attorney's Fees at 8-9. But nothing in that case required injunctive relief to be permanent. Indeed, by its very nature a preliminary injunction is not permanent. Further, the substantial nature of Plaintiffs' relief is beyond cavil. Plaintiffs sought the "ability to require universal masking in schools, except for limited medically necessary exceptions, and the ability [to] implement quarantines consistent with CDPHE and TCHD guidance." Compl. at 4. That is precisely what they were granted for the duration of the Temporary Restraining Order, and their ability to adopt appropriate mask and quarantine protocols was reinforced—and rendered permanent—through the November 12, 2021 public health order.[9]

In addition to granting Plaintiffs the type of relief sought in their Complaint, the Temporary Restraining Order also included an unequivocal indication that Plaintiffs were likely to succeed in this litigation. In my Order, I explained that the ADA and Section 504 required the School District to provide reasonable accommodations to students with disabilities. I considered

---

[9] Defendants also make the clever but benumbing argument that Plaintiffs' relief was not lasting because Plaintiffs "quickly abandoned the policies their lawsuit sought to achieve." Resp. to Mot. for Attorney's Fees at 9. By this, Defendants refer to the December 7, 2021 Resolution of the Douglas County Board of Education which loosened the mask and quarantine requirements applicable to the School District following the election of four new board members. The prevailing party analysis is focused on the actions of the court during the pendency of the case and the "judicial imprimatur" of those actions. What happens to the parties or the controversy post dismissal is irrelevant.

that Plaintiffs had "presented ample credible evidence that disabled students face a much greater risk of harm upon contraction of COVID-19 such that meaningful participation at school is illusory" and I concluded "that their exclusion from participation is the direct result of the October 8, 2021 Public Health Order." Temp. Restraining Order at 8-9. Because these statements were made after an earnest examination of the claims, this second prong of the relief-on-the-merits inquiry is also in the School District's favor.

Defendants lean heavily on the Tenth Circuit's denial of attorney fees to the beneficiary of a preliminary injunction in *Biodiversity Conservation All. v. Stem*, 519 F.3d 1226 (10th Cir. 2008). In *Biodiversity*, a case over which I presided at the district-court level, a conservation organization challenged the portion of a project proposed by the U.S. Forest Service—the "Cement Project"—that involved a timber sale, alleging violations of the National Environmental Policy Act, the Administrative Procedure Act, and the National Forest Management Act. The organization was granted a preliminary injunction largely due to the risk of irreparable injury from permanent species loss. While discovery was ongoing, a forest fire burned several thousand acres of the forest at issue in the suit, impacting the viability of the timber sale. Also, new Forest Service regulations required a reassessment of any proposed use of the forest. I dismissed the case as moot after the Forest Service assured "that the Cement Project had been withdrawn and would not be resuscitated." *Id.* at 1228. I granted the plaintiff's motion for attorney fees, but the Tenth Circuit reversed the fee award because "[a] preliminary injunction that does not provide a plaintiff with relief on the merits of her claim cannot serve as the basis for prevailing party status." *Id.* at 1232.

*Biodiversity* is unhelpful because the injunction in that case was granted after application of a modified preliminary injunction test, which relaxed the requirement that movants show a

likelihood of success on the merits.[10] The order therefore lacked "an unambiguous indication of probable success" following a "serious examination of the plaintiff's likelihood of success on the merits." *Kansas Judicial Watch*, 653 F.3d at 1238.

Substantively, the Temporary Restraining Order in the case at bar was not merely a preservation of the status quo, but rather an order *pendente lite* that materially altered the legal relationship of the parties by temporarily granting Plaintiffs precisely the relief requested. Following clear Tenth Circuit guidance, I hold that the School District is a prevailing party in this case and, as such, an award of attorney fees is appropriate.

B. Amount of Fees

A fee award must be reasonable. *Delaware Valley*, 478 U.S. at 561-62. It is the plaintiff's burden to establish the reasonableness of the hours and the rates claimed. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). If plaintiffs carry their burden, "the resulting product is presumed to be a reasonable fee." *Id.* (quoting *Cooper v. Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990)).

The starting point for determining the amount of a reasonable fee award is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This is known as the lodestar amount. *Robinson*, 160 F.3d at 1281. A district court may adjust the lodestar amount based on the degree of success. *See Farrar v. Hobby, Jr.*, 506 U.S. 103, 114-15 (1992). "The quality of the lawyer's performance in the case should also

---

[10] The Tenth Circuit has since found that modified test impermissible in light of the Supreme Court's ruling in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008). *See Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016) ("Under *Winter*'s rationale, any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible.").

be considered in placing a value on [legal] services." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).

Here, the School District seeks an award of $87,942.00 in attorney fees and $8,302.90 in costs. Mot. for Attorney's Fees at 17. To justify these amounts, the School District submits declarations from all attorneys who worked on the case and billing records. The records include hours billed by five associate attorneys and one paralegal. Attorney Invoice at 11, ECF No. 47-1. As mentioned above, Defendants do not address the reasonableness of the fees requested in their response to the motion, relying entirely on their contention that Plaintiffs did not prevail. The amounts alleged are deemed admitted. Nevertheless, I undertake an independent analysis of the School District's request because it is "central to the awarding of attorney's fees" in civil rights litigation "that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989).

I turn first to the hourly rates. The rate of the two associate attorneys primarily responsible for litigation—Mr. Peters and Mr. Hood—was $205 per hour. Attorney Invoice at 11. Another attorney billed more than forty hours at a rate of $120 per hour while he awaited bar admission and he maintained that rate for all work performed in the month of October, following his admission. I agree with the School District that the rates "are less than those traditionally charged by plaintiff civil rights attorneys in the local market." Mot. for Attorney's Fees at 13. In other cases within this district, attorneys with similar levels of experience as Mr. Peters and Mr. Hood were awarded hourly rates between $295 and $425 for their successful efforts litigating civil cases. *See Stocks v. Crowfoot*, No. 18-cv-02334-CMA-MEH (D. Colo. Oct. 29, 2021) ($295); *Civil Rights Educ. and Enf't Center v. U.S. Dep't of Homeland Security*, No. 18-cv-

00302-JLK (D. Colo. Sept. 7, 2021) ($300 and $320); *Jordan v. Shrader*, No. 18-cv-01225-MSK-NYW, 2020 WL 6392435, at *1 (D. Colo. Nov. 1, 2020) ($395); *O'Neal v. Bd. Of Cnty. Comm'rs of Cnty. of Fremont*, No. 16-cv-01005-TMT-KLM (D. Colo. July 30, 2020) ($350); *Snyder v. ACORD Corp.*, No. 14-cv-01736-JLK, 2019 WL 319407, at *8 (D. Colo. Jan. 24, 2019), *aff'd*, 811 F. App'x 447 (10th Cir. 2020) ($425); *Kurlander v. Kroenke Arena Co., LLC*, No. 16-cv-02754-WYD-NYW (D. Colo. Apr. 13, 2018) ($410).

The caliber of legal advocacy by Plaintiffs' counsel in this case was high, further justifying the rates charged. *See Sheets v. Salt Lake County,* 45 F.3d 1383, 1391 (10th Cir. 1995) ("[T]he district court is in a unique position to determine an appropriate fee" as it is familiar with the quality of the attorneys' work.). The sole paralegal assigned to this case billed $125 per hour which is below rates awarded in this district. *See Stenson v. Edmonds*, No. 18-cv-1968-JLK-STV (D. Colo. May 21, 2021) ($125); *Edwards v. Edwards*, No. 20-cv-02843-CMA-SKC, 2021 WL 130690, at *2 (D. Colo. Jan. 14, 2021) ($180); *Jordan v. Shrader*, No. 18-cv-01225-MSK-NYW, 2020 WL 6392435, at *1 (D. Colo. Nov. 1, 2020) ($160). For those reasons, I conclude the attorney and paralegal rates requested are patently reasonable.

I next consider the reasonableness of the number of hours billed by Plaintiffs' law firm, including work performed by attorneys and support staff. The Tenth Circuit has suggested several factors to consider in determining the reasonableness of hours expended, including: "(1) whether the tasks being billed 'would normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses necessitated by the maneuvering of the other side,' and (6) 'potential duplication of services' by multiple lawyers." *Robinson*, 160 F.3d at 1281 (quoting *Ramos*, 713 F.2d at 554). I must "carefully scrutinize" the reasonableness of the hours reported

16

"much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done." *Ramos*, 713 F.2d at 555.

The number of hours billed for the individual tasks was reasonable given the number of plaintiffs (10 total), the novelty of the issues presented, and counsels' decision not to bill for time spent on the fee motion. I do find that there was some duplication of services where multiple attorneys were involved in drafting the Complaint and Motion for a Temporary Restraining Order. Even so, the abbreviated timeline and the relative lack of experience by the two associate attorneys who skillfully managed the case made some duplication prudent. *See Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1258 (D. Colo. 2013) (denouncing an "over-reliance on partners, rather than lower-cost associates"). The reasonable rates charged remove any concerns of unfairness.

The one troublesome aspect of the billing records is that the law firm appears to have billed for the preparation of a fee agreement. According to Colorado Rule of Professional Conduct 1.5(b), a lawyer must communicate in writing "the basis or rate of the fee and expenses for which [a new] client will be responsible." Additionally, "[f]ees are not earned until the lawyer confers a benefit on the client or performs a legal service for the client." Colo. RPC 1.5(f). As such, the preparation of an engagement letter is a lawyer's professional responsibility and not a legal service for which he or she may bill a client.

The billing records submitted with the School District's motion show the following entries on October 11, 2021:

17

| Staff | Description | Hours | Rate | Amount Charged |
|---|---|---|---|---|
| EVH | Conferred . . . regarding strategy for matter; conferred separately with [others] regarding same; continued to prepare TRO and complaint and research authority to support same; *finalized retention agreement and emailed to clients;* provided outline of points and sample declarations to experts | 8.70 | 205.00 | $1,783.50 |
| SM | Prepared first drafts of summons and civil case cover sheet; prepared first draft of expert retention letter to Dr. Beuther; organized expert declarations . . .; organized client file; *prepared first draft of revised engagement letter to School District and individual parents;* prepared affidavit template | 3.5 | 125.00 | $437.50 |

*See* Attorney Invoice at 2-3, ECF No. 47-1 (emphasis added). It is impossible to accurately account for the portion of time spent on the preparation of the legal fee agreement due to the inclusion of these tasks among several others. The lack of specificity in these entries is also problematic. Attorneys are required to "submit[] meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998); *see also Ramos*, 713 F.2d at 553. Because the relevant billing entries were not sufficiently meticulous and included work that does not qualify as a "legal service," I find it appropriate to reduce the two charges identified above by fifty percent. Accordingly, I reduce the overall amount of attorney fees requested by $1,110.50.

To conclude the analysis on the reasonableness of the attorney fees, I address the degree of success obtained. While Plaintiffs received neither a declaratory judgment nor a permanent injunction, their primary purpose in bringing this lawsuit was to obtain a form of judicial protection that enabled the School District to comply with the ADA and Section 504 in the midst of the ongoing COVID-19 pandemic. That mission was accomplished temporarily through the

Temporary Restraining Order which prohibited Defendants from enforcing the Public Health Order against the School District, and it was accomplished permanently through Defendants' decision to modify the Public Health Order on account of "the gravity of a federal court order finding their [Public Health Order] problematic." Defs.' Mot. to Continue at 2. In addition, the public purposes served through this litigation were significant. The Student Plaintiffs' interests in defending their right not to be excluded from participation in school activities and to be free from discrimination reverberate in Douglas County and beyond. I see no reason to limit the fee award on the basis of Plaintiffs' degree of success.

Finally, I address the issue of costs. The School District seeks $8,302.90 for costs associated with this case. *See* 42 U.S.C. § 12205 (prevailing parties may recover "litigation expenses[] and costs"). The most significant cost is the expert fee for Dr. David A. Beuther: $7,367.00. Dr. Beuther is a Board-Certified specialist in pulmonary diseases and the Chief Medical Information Officer at National Jewish Health. He was uniquely qualified to provide expert testimony. He prepared a 15-page report that provided compelling information based on his expertise that was directly relevant to this case, and he testified as an expert witness on the first day of the temporary restraining order hearing, which required his availability for a full day. His fees for these services were reasonable, and the additional costs requested are supported by adequate documentation.

## IV. CONCLUSION

For the reasons provided above, Plaintiff Douglas County School District RE-1's Motion for Attorney's Fees and Costs (ECF No. 45) is GRANTED IN PART and DENIED IN PART. The Motion is granted in that the School District is awarded attorney fees in the amount of $86,831.50 and costs in the amount of $8,302.90. The School District's Motion for Leave to File ECF No. 46 With Redactions (ECF No. 47), regarding an exhibit attached to the fee motion, is GRANTED.

DATED this 28th day of February, 2022.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE